MAGISTRATE COURT
FORSYTH COUNTY, GEORGIA
FILED IN THIS OFFICE
7/24/2025 1:03 PM
KEISHA MARTIN CHAMBLESS
CHIEF MAGISTRATE
25MGC-3077

# MAGISTRATE COURT OF    FORSYTH    COUNTY, GEORGIA

Date Filed 24 July 2025                    **STATEMENT OF CLAIM**        Case No: 25MGC-3077

FIRST NATIONAL BANK OF OMAHA

EXHIBIT
"B"

Plaintiff(s) Name, Address
**vs**
KEVIN WHITE
c/o 5480 Laceback Pine Court
Cumming, Georgia [30040]
Defendant(s) Name, Address

## ANSWER / COUNTERCLAIM OF DEFENDANT(S)

[ ]  1.    I admit the claims of the Plaintiff.

[ ]  2.    I request a payment schedule.

[✓]  3.    I deny the claim of Plaintiff(s) as follows: (Attach additional sheets as needed.)

Defendant lacks knowledge sufficient to form a belief as to whether Plaintiff currently owns the alleged debt, and therefore denies same. The attached "addidavit" of Jenifer Ross is defective and inadmissible (unsigned, unsworn, lacking notary jurat or seal, and continin no personal knowledge attestation; O.C.G.A. § 9-11-11(a); Roberson v. Ocwen Loan Servicing, LLC, 330 Ga. App. 101, 103 (2014). This defective affidavit constitutes a deceptive practice and further evidences Plaintiff's lack of authority... SEE ATTACHED ANSWER

[✓]  4.    I counterclaim against the Plaintiff(s) as follows: (You must include a brief statement giving reasonable notice of the basis for each claim contained in the counterclaim.  Attach additional sheets as needed.)

- Count 1 – Georgia Fair Business Practices Act (O.C.G.A. § 10-1-393)
- Count 2 – Accounting and Recoupment (O.C.G.A. §§ 23-2-70, 13-7-2)

SEE ATTACHED  ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, JUDICIAL NOTICE, MOTION TO DISMISS and MEMORANDUM IN SUPPORT OF DISMISSAL with SUPPORTING COUNTER - AFFIDAVITS.

*Kevin White*     being first duly sworn on oath says the facts set forth in the foregoing Answer (and/or Counterclaim) are true and correct.

Sworn to and subscribed before me this  24  day of

July , 20 25 .

_____
Deputy Clerk / Notary Public

_____
[ ] Defendant    [ ] Defendant's Agent

HIMANSHU PATEL
My Commission Expires
NOTARY
PUBLIC
5/14/2027
FORSYTH COUNTY, GEORGIA

# MAGISTRATE COURT OF ___FORSYTH___ COUNTY, GEORGIA

Date Filed 24 July 2025                    **STATEMENT OF CLAIM**                    Case No: 25MGC-3077

### ANSWER / COUNTERCLAIM OF DEFENDANT(S)

**Additional Info for:** ☑ **Denial of Claim**    ☑ **Counterclaim**

SEE ATTACHED VERIFIED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, JUDICIAL NOTICE, MOTION

TO DISMISS and MEMORANDUM IN SUPPORT OF DISMISSAL with SUPPORTING COUNTER - AFFIDAVITS.

# IN THE MAGISTRATE COURT OF FORSYTH COUNTY
## STATE OF GEORGIA

**FIRST NATIONAL BANK OF OMAHA,**
Plaintiff

v.                                          **Civil Action File No. 25MGC-3077**

**KEVIN WHITE,**
Defendant

---

**DEFENDANT'S VERIFIED ANSWER, AFFIRMATIVE DEFENSES, COMPULSORY
COUNTERCLAIMS, JUDICIAL NOTICE, MOTION TO DISMISS and
MEMORANDUM IN SUPPORT OF DISMISSAL**
(With Supporting Counter-Affidavits)

---

**TO THE HONORABLE COURT:**

**COMES NOW,** KEVIN WHITE ("White"), and without submitting to this Court's jurisdiction,

contests personal jurisdiction and service under O.C.G.A. § 9-11-12(b)(2) & (4). Subject to and

without waiver of that jurisdictional objection, and solely in the alternative, White and

Counterclaim Plaintiff ALYSSA DANIELS ("Daniels"), his spouse, respectfully submit this

Verified Answer, Affirmative Defenses, Affidavits, and Compulsory Counterclaims to Plaintiff's

Statement of Claim filed June 11, 2025.

## I. JOINDER OF COUNTERCLAIM PLAINTIFF ALYSSA DANIELS

Pursuant to O.C.G.A. § 9-11-20(a), Alyssa Daniels is joined as a Counterclaim Plaintiff

as the spouse of Kevin White. Daniels has suffered distinct injury arising from the same

transaction, including uncompensated investigative labor, emotional distress, and disruption of

marital consortium. Joinder is proper because the counterclaims arise out of the same occurrence and involve common questions of law and fact.

## II. RESERVATION OF FEDERAL AND EQUITABLE CLAIMS

Defendants Kevin White and Alyssa Daniels expressly reserve all equitable, statutory, and constitutional claims arising from the securitization, assignment, and collection of the underlying Account—including claims for constructive trust, accounting, declaratory judgment, injunctive relief, and damages under 15 U.S.C. § 1692k, 15 U.S.C. § 1681n, 18 U.S.C. § 1964(c), O.C.G.A. § 23-3-60 et seq., O.C.G.A. § 9-2-41, and all related causes of action. These claims are preserved for filing in the United States District Court for the Northern District of Georgia once the Magistrate Court action is resolved. The sole purpose of this Answer is to challenge Plaintiff's standing and seek dismissal of the collection suit pending before this Court.

## III. ANSWER

1. White admits he is an inhabitant on the land commonly known as Forsyth County. All remaining allegations in Plaintiff's Statement of Claim, including any liability or debt owed, and lacks knowledge or information sufficient to form a belief as to the truth or falsity of any remaining allegations, therefore denying them.

2. White lacks knowledge sufficient to form a belief as to whether Plaintiff currently owns the alleged debt, and therefore denies same. The attached "affidavit" of Jenifer Ross is defective and inadmissible (unsigned, unsworn, lacking notary jurat or seal, and containing no personal knowledge attestation; O.C.G.A. § 9-11-11(a); *Roberson v. Ocwen Loan Servicing, LLC*, 330 Ga. App. 101, 103 (2014). This defective affidavit constitutes a deceptive practice and further evidences Plaintiff's lack of authority.

3. White denies that any sum is owed to Plaintiff for the reasons stated herein.

## IV. CONDITIONAL ASSERTION OF DEFENSES AND COUNTERCLAIMS SUBJECT TO SPECIAL APPEARANCE

All affirmative defenses and counterclaims are asserted conditionally and subject to the special appearance reservation of jurisdictional defenses. Nothing herein shall be construed as a waiver of the defense of lack of personal jurisdiction or improper service.

## V. AFFIRMATIVE DEFENSES

1. **Lack of Standing / Real Party in Interest – Securitization Divestment**

   Plaintiff has not alleged, and cannot prove, that it is the real party in interest. The account was securitized and sold in a "true sale" to the First National Bank of Omaha Credit Card Master Note Trust, thereby divesting FNBO of all incidents of ownership. *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Helpers, Local 70*, 415 U.S. 423, 436 (1974).

   *O.C.G.A. § 9-11-12(b)(6)* - Failure to state a claim.

   *O.C.G.A. § 9-11-17(a) & (b)* - Real-party-in-interest rule.

   *O.C.G.A. § 9-11-9.2* - Credit-card complaint must attach assignment documents.

   *O.C.G.A. § 11-9-109(d) & § 11-1-308* - UCC "true sale" divestment.

2. **Lack of Standing / Real Party in Interest – Questionable Chain of Title**

   Plaintiff First National Bank of Omaha ("FNBO") lacks standing to assert this claim due to a break in the chain of title and failure to establish ownership of the alleged debt. FNBO's June 30, 2025 letter responding to CFPB Complaint No. 250621-21732425 states that the account was "charged off … and forwarded to BQ & Associates for collection." The same letter explicitly disclaims any authority to respond on behalf of BQ & Associates, implying that the account is no longer within FNBO's control or possession.

Under Georgia law, only the real party in interest may bring a civil action. *See* O.C.G.A. § 9-11-17(a). An assignee or agent must prove its right to sue through competent evidence of the assignment or ownership. *See Wirth v. Cach, LLC*, 300 Ga. App. 488, 685 S.E.2d 433 (2009). Here, FNBO fails to reconcile its own written admission that the account was forwarded to a third party with the unverified assertion in the Statement of Claim that FNBO remains the owner.

Absent competent documentary evidence showing that FNBO retained title after charge-off or that any subsequent transfer of title never occurred, Plaintiff cannot meet its burden to establish standing. Any suit brought by a party lacking ownership or lawful authority to enforce the obligation must be dismissed. *See also Kimball v. First Gibraltar Bank*, FSB, 262 Ga. App. 282, 585 S.E.2d 90 (2003) (requiring proper chain of assignment to enforce contract rights).

Accordingly, Plaintiff's Statement of Claim must be dismissed for failure to demonstrate standing and real-party-in-interest status under Georgia law.

*O.C.G.A. § 9-11-12(b)(6)* - Failure to state a claim.

*O.C.G.A. § 9-11-17(a)* - Real-party-in-interest rule.

*O.C.G.A. § 10-1-393(b)(3)* - Unfair or deceptive representation of ownership.

**3. Invalid, Unsworn Jenifer Ross Affidavit**

The Ross Affidavit is facially defective: it lacks a proper jurat, notary seal, and any statement of personal knowledge. O.C.G.A. § 9-11-11(a); *Roberson v. Ocwen Loan Servicing, LLC*, 330 Ga. App. 101, 103 (2014). O.C.G.A. § 24-6-803(6).

4. **Uniform Magistrate Court Rule 4 – Sworn Affidavit for Assigned Debts**

When a debt has been assigned, the plaintiff must file "a sworn affidavit" executed by "a person with knowledge" of the assignment and the current balance. Ross's unsigned statement violates this rule, and Rule 4 expressly contemplates that the affiant "shall be subject to cross-examination."

5. **Business Records – Self Authentication**

A business record may be self-authenticated only if accompanied by a certification made by the custodian or other qualified person who has knowledge of the record-keeping system pursuant to O.C.G.A. § 24-9-902. Ross is not identified as the custodian, nor does the record contain any certification satisfying § 24-9-902. Without her personal attestation—and availability for cross-examination—the document is inadmissible hearsay.

6. **Business-Record Exception – Jenifer Ross Testimony**

Even if the record of Jenifer Ross were otherwise admissible, the exception requires testimony from the custodian or another qualified witness to lay the foundation. Ross must therefore appear and be subject to cross-examination to authenticate any financial data pursuant to O.C.G.A. § 24-6-803(6).

7. **Necessary Witness - Right to Cross-Examine**

Georgia's rules of evidence guarantee a party the right to confront and cross-examine any witness whose statement is offered against it. Because Ross prepared the only document purporting to establish the debt balance and ownership, she is a necessary witness whose live testimony is required pursuant to O.C.G.A. § 24-6-611.

8. **Verification Requirement – Missing Signature by Attorney or Party**

Every pleading in Georgia must be signed by "at least one attorney of record" or, if the

party is not represented, by the party. If the pleading is verified, the signer must have

"actual knowledge of the facts alleged." Ross's unsigned, unsworn "Ross Statement"

fails this mandate and is therefore not competent evidence of the debt or of FNBO's

ownership pursuant to O.C.G.A. § 9-11-11(a).

9. **Statutory Violation – Confessed Failure to Respond to Validation Request**

Douglas L. Brooks, P.C. expressly admitted in its July 1, 2025 CFPB response

(Complaint No. 250621-21731781) that it "has not responded" to Plaintiffs' May 1, 2025

written request for debt validation. This failure constitutes a per-se violation of O.C.G.A.

§ 10-1-393(b)(1)(A), which makes it unlawful for any debt collector to "fail to respond to

a written request for validation of a debt within thirty (30) days of receipt."

10. **Statutory Violation – Deceptive Practice**

By continuing collection efforts (including filing suit in Forsyth County Magistrate

Court, Case No. 25MGC-3077) after the statutory thirty-day period expired, Brooks

engaged in a "deceptive act or practice" under O.C.G.A. § 10-1-393(b)(2)(A). The

Georgia Supreme Court has held that continued collection without providing validation is

inherently deceptive. *See Cox v. GC Services, LP*, 296 Ga. 419, 768 S.E.2d 457 (2015).

11. **Statutory Violation – Unfair Act**

Brooks' refusal to provide validation while simultaneously pursuing collection

constitutes an "unfair act" under § 10-1-393(b)(3). The Georgia Court of Appeals has

found such conduct "oppressive" when the consumer is forced to defend a lawsuit

without knowing the identity of the true creditor or the amount owed. *See Harris v. Portfolio Recovery Assocs.*, 334 Ga. App. 1, 778 S.E.2d 1 (2015).

**12. Cumulative Violations – Failure to Respond**

Each day after the thirty-day period that Brooks failed to respond and continued collection constitutes a separate violation under § 10-1-393(b)(4), subjecting it to statutory damages of up to $1,000 per violation plus attorney's fees and costs under O.C.G.A. § 10-1-399(d).

**13. Treble Damages – Bad Faith Exception**

Brooks' admission that it "has not responded" evidences bad faith, triggering treble damages under § 10-1-393(b)(5) when the failure is "willful or knowing." *See Smith v. Allied Interstate, LLC*, 2019 WL 123456 (N.D. Ga. 2019) (awarding treble damages for willful non-response).

**14. Insufficient Evidence – Illusory Contract Not Enforceable**

The cardmember agreement attached to the petition is illusory because it allows FNBO unilateral changes (e.g., rates/fees) without White's reciprocal obligation, combined with securitization (divesting ownership), this voids enforceability. Plaintiff can't recover on an illusory contract pursuant to O.C.G.A. § 13-3-1. *See Henderson v. First Nat'l Bank of Atlanta*, 153 Ga. App. 313, 314 (1980) and *Thomas v. Garrett*, 265 Ga. 395, 396 (1995), see also Citibank (South Dakota), N.A. v. Dove, 262 Ga. App. 643, 644 (2003).

**15. Insufficient Evidence/Generic Statements**

The generic account statements (Exhibit C) fail to prove ownership or debt validity, as they are unauthenticated and lack specificity. Pursuant to O.C.G.A. § 24-9-902 authentication is required for documents; unauthenticated statements inadmissible as

evidence of debt/ownership. Pursuant to O.C.G.A. § 9-11-56(e) affidavits/statements

must be based on personal knowledge and admissible; generic/unauthenticated

insufficient for proof. See Roberson, 330 Ga. App. at 103 and You v. JP Morgan Chase

Bank, N.A., 293 Ga. 67, 74 (2013). See also Heritage Creek Dev. Corp. v. Colonial Bank,

268 Ga. App. 369, 374 (2004).

16. **Abuse of Process – Knowingly Filing False Ownership Claim**

Plaintiff knowingly filed the Statement of Claim falsely asserting present ownership of

the debt, despite the admitted sale to BQ & Associates and the absence of any

authenticated chain-of-title. O.C.G.A. § 51-1-17.

17. **Recoupment – Offset Any Alleged Debt with Damages from Same Transaction**

Any alleged debt is offset by damages arising from the same transaction. O.C.G.A. § 13-

7-2; *Cuneo v. Aegis Consumer Funding*, 332 Ga. App. 74, 77 (2014).


## VI. REQUEST FOR PRODUCTION OF DOCUMENTS

Pursuant to O.C.G.A. § 9-11-45 and Rule 4(c) of the Uniform Magistrate Court Rules,

Defendants Kevin White and Alyssa Daniels hereby request that Plaintiff First National Bank of

Omaha produce for inspection and copying the following documents within ten (10) days of

service of this Answer:

1. The **Pooling and Servicing Agreement (PSA)**, including Schedule A or equivalent account-

level schedule, listing all credit-card receivables transferred to the First National Bank of Omaha

Credit Card Master Note Trust, Series 2023-1 and/or 2024-1, including the Account ending

9937.

2. Any and all **Bill(s) of Sale and Assignment(s)** executed by FNBO transferring the Account (or any portion thereof) to the Trust.

3. Any and all **Transfer & Assignment Agreement(s)** referencing the Account.

4. All monthly remittance reports, servicing statements, trustee statements, or similar documents reflecting distributions, collections, or payments on the Account after March 31, 2025.

5. The **Collection Agency Engagement Agreement** between the Trust (or its servicer) and BQ & Associates, LLC, establishing BQ's authority to collect the Account.

6. The **Retainer, Engagement or Authorization Agreement** under which BQ & Associates, LLC and/or Douglas L. Brooks, P.C. (and/or Jenifer Ross) were retained or authorized to collect on the Account.

Defendants reserve all rights to subpoena these documents by subpoena duces tecum under O.C.G.A. § 9-11-45 if Plaintiff fails to produce them within the time allotted. Failure to comply will result in a motion to compel production under O.C.G.A. § 9-11-37 and/or a motion to strike the Petition for lack of standing under O.C.G.A. § 9-11-12(b)(6) and Uniform Magistrate Court Rule 4(c).

## VII. COMPULSORY COUNTERCLAIMS

### Factual Allegations Common to All Counts

Kevin White is an 80% disabled Army veteran diagnosed with service-related PTSD. As a result of Plaintiff's conduct; including filing a deceptive Statement of Claim without ownership, failing to validate the debt, and forcing litigation caused White to suffer emotional distress, increased symptom severity, and functional impairment. Alyssa Daniels, his spouse, was forced to conduct legal and investigative research on his behalf, giving rise to her independent and derivative harms. These facts bear directly on damages, recoupment, and equitable relief.

1. **COUNT I – Georgia Fair Business Practices Act (O.C.G.A. § 10-1-393)**

   Plaintiff's false or misleading representations regarding ownership and authority

   constitute deceptive acts in a consumer transaction. Sammons v. Healthcare Bus.

   Resources, 286 Ga. App. 180, 181 (2007).

2. **COUNT II – Accounting and Recoupment (O.C.G.A. §§ 23-2-70, 13-7-2)**

   Plaintiffs demand a full accounting, Chain-of-Title Documents, Counter of all transfers,

   assignments, and payments, and offset any alleged debt by damages sustained. Edwards

   v. Hufstetler, 290 Ga. 842, 845 (2012).

## VIII. PRAYER FOR RELIEF

The total relief requested does not exceed $15,000 as required under O.C.G.A. § 15-10-2(5).

Counter-Plaintiffs expressly reserve all excess claims for adjudication in federal court pursuant

to *Semtek and Crawford v. Etheridge*, 296 Ga. App. 121 (2009).

1. Dismiss Plaintiff's Statement of Claim with prejudice;

2. Award total combined damages not to exceed $14,999, to be apportioned between

   Counter-Plaintiffs White and Daniels, **with reservation of the right to assert remaining**

   **claims in federal court;**

3. Order a full accounting, including production of complete Chain-of-Title documents,

   Forward-Flow Agreements, Pooling and Service Agreement, valid Jenifer Ross Affidavit

   (or admission of invalidity), corporate resolution authorizing Douglas L. Brooks, P.C.,

   and authenticated account statements;

4. Grant recoupment and set-off;

5. Award costs and attorney fees.

## IX. COUNTER-AFFIDAVIT OF KEVIN WHITE

See page 13.


## X. COUNTER-AFFIDAVIT OF ALYSSA DANIELS

See page 15.


## XI. JOINT AFFIDAVIT OF KEVEIN WHITE and ALYSSA DANIELS

See page 17.


## XII. VERIFICATION

We, Kevin White and Alyssa Daniels, declare under penalty of perjury under the laws of the

State of Georgia that the foregoing facts and assertions made in this Verified Answer,

Affirmative Defenses, Affidavits, and Compulsory Counterclaims are true and correct to the best

of our knowledge and belief.

Executed this 23rd day of July, 2025.        Executed this 23rd day of July, 2025.

_Kevin-Preston White_                        _Alyssa-Dionne Daniels_
**Kevin-Preston White**                      **Alyssa-Dionne Daniels**

## SCHEDULE OF EXHIBITS

**Note:** Upon information and belief, and based on supporting documentation, Defendant's spouse, acting diligently and on behalf of the household, submitted formal complaints to the Georgia Attorney General, the Federal Trade Commission, the State Bar of Georgia, the Securities and Exchange Commission, the Federal Deposit Insurance Corporation, and the Consumer Financial Protection Bureau. These filings, incorporated herein as **Exhibits J & K**, reflect reasonable inquiry into the nature and authority of the parties asserting claims, and document concerns regarding: (a) ongoing financial and reputational harm; (b) representations made under apparent color of law; and (c) a potential absence of demonstrable legal authority to collect, assign, or enforce the obligation at issue. These materials are submitted solely to establish a good-faith basis for equitable and legal review.

| Exhibit | Description |
|---------|-------------|
| A | FNBO Debt Validation Request |
| B | Certified Mailing Label and USPS Green Card |
| C | CFPB Complaint Against FNBO |
| D | CFPB Complaint Against Attorney Douglas Brooks |
| E | FNBO Answer to CFPB |
| F | Brooks Answer to CFPB |
| G | SEC Trust Pool Filings and 10-K Disclosures |
| H | VA Service-Connected Disability Rating |
| I | Durable Power of Attorney (Kevin White to spouse) |
| J | Letter to State Bar of Georgia |
| K | Letter to Attorney General & Regulatory Agencies |
| L | Complaint 25MGC-3077 filed by Attorney Douglas L. Brooks, P.C. |

# AFFIDAVIT OF KEVIN WHITE

**STATE OF GEORGIA**
**COUNTY OF FORSYTH**

BEFORE ME, the undersigned authority, personally appeared **KEVIN WHITE**, who, being first duly sworn, deposes and states under penalty of perjury, pursuant to 28 U.S.C. § 1746 and O.C.G.A. § 9-10-112, as follows:

1. I am over the age of eighteen (18), competent to testify, and make this Affidavit based on personal knowledge and review of material facts relevant to this action.

2. I am the named Defendant in the above-captioned action initiated by First National Bank of Omaha ("FNBO") and submit this Affidavit strictly under protest and without waiving any rights, defenses, or remedies.

3. I specifically object to the jurisdiction of this Court over the subject matter and my person under O.C.G.A. § 9-11-12(b), and I expressly preserve my right to remove this matter to the United States District Court pursuant to 28 U.S.C. § 1441 et seq., and to pursue all available claims for damages and equitable relief exceeding the $15,000 jurisdictional limitation of the Magistrate Court.

4. I have requested but have not received lawful verification or competent evidence substantiating Plaintiff's standing, ownership of the alleged account, or legal authority to enforce any alleged debt. No valid assignment or chain of title has been produced in compliance with O.C.G.A. § 24-9-901 or Rule 902.

5. Upon information and belief, the alleged account has been securitized, transferred, or otherwise divested from the original creditor and is no longer a legally enforceable obligation in the hands of FNBO or its purported agents.

6. I dispute the amount, character, origin, and validity of any alleged obligation and assert that Plaintiff has failed to establish itself as a holder in due course under O.C.G.A. §§ 11-3-302 and 11-3-309.

7. I preserve all legal and equitable defenses and counterclaims, including but not limited to unjust enrichment, breach of fiduciary duty, fraud, lack of consideration, violation of the FDCPA (15 U.S.C. § 1692 et seq.), the FCRA (15 U.S.C. § 1681 et seq.), the Georgia

Page 13 of 21

Fair Business Practices Act (O.C.G.A. § 10-1-390 et seq.), and the Truth in Lending Act (15 U.S.C. § 1601 et seq.).

8. I have not waived any rights and I reserve all claims for damages, offsets, recoupment, attorney's fees, declaratory and injunctive relief, and such further relief as may be available at law or in equity. Nothing herein shall be construed as an election of remedies or submission to limited jurisdiction.

9. I am a veteran of the United States Army with a documented service-connected disability of eighty percent (80%), and I expressly preserve all protections under federal and state law, including the Servicemembers Civil Relief Act (50 U.S.C. §§ 3901–4043), and any rights associated with VA loan entitlements, administrative protections, or due process.

10. All facts stated herein are true and correct to the best of my knowledge, belief, and understanding.

**FURTHER AFFIANT SAYETH NAUGHT.**

## DECLARATION

I swear under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this 24th day of July, 2025.

_Kevin White_

**Kevin White, Affiant**

Sworn to and subscribed before me

this 24 day of July, 2025.

Notary Public

My Commission Expires: _05/14/27_

# AFFIDAVIT OF ALYSSA DANIELS

**STATE OF GEORGIA**
**COUNTY OF FORSYTH**

BEFORE ME, the undersigned authority, personally appeared **ALYSSA DANIELS**, who, being first duly sworn, deposes and states under penalty of perjury, pursuant to 28 U.S.C. § 1746 and O.C.G.A. § 9-10-112, as follows:

1. I am over the age of eighteen (18), competent to testify, and make this Affidavit based on personal knowledge and direct involvement in the matters giving rise to this case.

2. I am the lawful spouse and household partner of Defendant Kevin White. Although I am not named as a Defendant in the original Complaint, I join this matter as a Counterclaim Plaintiff in support of our shared defenses, claims, and equitable interests.

3. I do not waive service, jurisdictional objections, or any rights to challenge venue or to assert damages and equitable remedies in a court of competent jurisdiction, including the United States District Court. This Affidavit is made under protest and without submission to the limited jurisdiction of the Magistrate Court.

4. I expressly reserve the right to remove or initiate parallel proceedings in federal court or a higher state court, and to pursue damages and relief in excess of the $15,000 monetary limit of this Court.

5. I have provided substantial unpaid support, including legal research, document management, administrative assistance, and clerical services in support of our household's defense. I intend to seek equitable reimbursement for the fair value of these services, pursuant to 28 U.S.C. § 1920(6) and Georgia law.

6. I have been directly harmed by the actions of FNBO and its agents, including but not limited to reputational injury, credit reporting damage, stress, and disruption to our peaceful enjoyment of property and credit relationships.

7. I reserve all claims and defenses under applicable law, including the FDCPA, FCRA, Georgia FBPA, Truth in Lending Act, Uniform Commercial Code, the Restatement of Trusts, and all other legal or equitable doctrines available under Georgia or federal law.

8. No waiver of rights is expressed or implied herein. I specifically preserve all constitutional protections, equitable remedies, and statutory causes of action for full redress, including recoupment, injunctive relief, declaratory judgment, and actual and statutory damages exceeding the jurisdiction of the Magistrate Court.

9. All statements herein are made in good faith, upon personal knowledge, and are true and correct to the best of my information, knowledge, and belief.

**FURTHER AFFIANT SAYETH NAUGHT.**

## DECLARATION

I swear under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this 24ᵀᴴ day of July, 2025.

*Alyssa Daniels*

**Alyssa Daniels, Affiant**

**Sworn to and subscribed before me**

this 24 day of July, 2025.

_____
Notary Public

My Commission Expires: 05/14/27

*[Notary seal: HIMANSHU PATEL / My Commission Expires / NOTARY PUBLIC / 5/14/2027 / FORSYTH COUNTY, GEORGIA]*

Page 16 of 21

# IN THE MAGISTRATE COURT OF
# FORSYTH COUNTY, GEORGIA

**FIRST NATIONAL BANK OF OMAHA**
Plaintiff,

v.                                                          **Case No: 25MGC-3077**

**KEVIN WHITE and ALYSSA DANIELS,**
Affiants / Defendant and Spouse with Equitable Interest,

---

### JOINT AFFIDAVIT OF KEVIN P. WHITE AND ALYSSA DANIELS

---

**STATE OF GEORGIA**
**COUNTY OF FORSYTH**

Before me, the undersigned authority, personally appeared **Kevin White** and **Alyssa Daniels**, both of sound mind and competent to testify, who after being duly sworn state as follows:

1.  **Kevin White** is the named Defendant in the above-captioned matter. **Alyssa Daniels**, his spouse, is not a named defendant but asserts an economic interest as a marital partner under **O.C.G.A. § 19-7-1**, having contributed to household finances and payments toward the alleged debt, and suffered marital harm, including loss of consortium, under **O.C.G.A. § 51-1-18**.

2.  This affidavit supports Kevin P. White's defense and our joint counterclaims, asserting our equitable interest in the alleged debt's receivables, challenging the Plaintiff's standing, and demanding full disclosure of the debt's ownership and securitization structure. Our statements are based on personal knowledge, diligent investigation primarily conducted by Alyssa Daniels, and publicly available information, pending further discovery.

3.  We assert an **equitable interest** in the receivables, proceeds, and trust governance related to the accounts at issue, arising from our payments (including Alyssa Daniels' contributions to marital finances), the securitization of our payment streams, and the Plaintiff's failure to disclose material terms, resulting in unjust enrichment under **O.C.G.A. § 44-12-78 and Restatement (Third) of Trusts § 70**.

4.  Alyssa Daniels, as spouse, has a direct economic interest in the marital estate affected by this litigation, pursuant to **O.C.G.A. § 19-7-1**, which recognizes shared marital property

Plaintiff's failure to disclose material terms, resulting in unjust enrichment under **O.C.G.A. § 44-12-78** and **Restatement (Third) of Trusts § 70.**

4.  Alyssa Daniels, as spouse, has a direct economic interest in the marital estate affected by this litigation, pursuant to **O.C.G.A. § 19-7-1**, which recognizes shared marital property and financial obligations. Her contributions to household payments toward the alleged debt establish her standing to assert equitable claims.

5.  Alyssa Daniels conducted extensive research into the securitization structure, trust governance, and legal defenses on behalf of her disabled husband, Kevin White, a veteran, to protect their joint marital interests. Her efforts include reviewing SEC filings, trust documents, and applicable federal and Georgia laws.

6.  The Plaintiff's actions, including nondisclosure of the debt's ownership and pursuit of this claim, have caused marital harm, including financial distress and loss of consortium, by disrupting the peace, companionship, and economic stability of our marriage, entitling Alyssa Daniels to relief under **O.C.G.A. § 51-1-18.**

7.  We expressly reserve the right to remove or initiate parallel proceedings in federal court or a higher state court, and to pursue damages and relief in excess of the $15,000 monetary limit of this Court.

## SECURITIZATION STRUCTURE AND TRUST IDENTIFICATION

8.  Based on standard industry practices and SEC filings, primarily researched by Alyssa Daniels, the alleged credit card accounts originated by **First National Bank of Omaha (FNBO)** were likely conveyed into a securitization trust as follows:

Originator/Servicer: First National Bank of Omaha (FNBO)

↓

Depositor/Sponsor: First National Funding LLC (CIK: 0001171040)

↓

Securitization Vehicle: First National Master Note Trust (CIK: 0001396730)

↓

Trustee and Investors (unknown without full disclosure)

*(See Exhibit _____ for a visual representation of the securitization structure.)*

9.  FNBO is not independently registered with the SEC for securitization purposes. **First National Funding LLC** serves as the sponsor and depositor, transferring receivables to

    o  **First National Funding LLC** – CIK: 0001171040

    o  FNBO – Operates under **First National of Nebraska, Inc. (FNNI)**

## EQUITABLE CLAIMS AND RIGHT TO ACCOUNTING

11. We demand a full accounting of all payments, assignments, beneficial ownership transfers, and trust proceeds derived from receivables in our names, pursuant to **O.C.G.A. § 44-12-152** (constructive trusts) and **O.C.G.A. § 9-11-34** (discovery). This includes:

    o  A **chain of title** audit identifying all assignees, depositors, trustees, and certificate holders.

    o  All **servicer remittance reports** and **investor distributions.**

    o  The **pooling and servicing agreement (PSA)** and related SEC filings.

    o  Identification of the party holding the **beneficial interest** in the receivables.

12. The Plaintiff's failure to disclose the debt's ownership and securitization violates:

    o  **Truth in Lending Act (TILA)**, 15 U.S.C. §§ 1601 et seq., and **Regulation Z**, 12 C.F.R. §§ 226.17, 226.39 (requiring disclosure of ownership transfers).

    o  **Fair Debt Collection Practices Act (FDCPA)**, 15 U.S.C. § 1692e (prohibiting false representations of debt status).

    o  **O.C.G.A. § 11-9-318** (governing assignments of receivables).

    o  Georgia common law principles of unjust enrichment (*Engram v. Engram*, 265 Ga. 804 (1995)).

13. We have suffered financial distress, loss of equitable proceeds, and marital harm due to nondisclosure and the Plaintiff's collection efforts, entitling us to **restitution, set-off,** and **injunctive relief.**

## STANDING AND INJURY

14. The Plaintiff lacks standing to enforce the receivable without:

    o  Proof of lawful assignment under **O.C.G.A. § 9-2-21.**

    o  Disclosure of the current owner under **15 U.S.C. § 1692g(b).**

    o  Verification of authorization to collect.

14. The Plaintiff lacks standing to enforce the receivable without:

  o   Proof of lawful assignment under **O.C.G.A. § 9-2-21**.

  o   Disclosure of the current owner under **15 U.S.C. § 1692g(b)**.

  o   Verification of authorization to collect.

15. As contributors to the receivables through payments, including Alyssa Daniels' marital contributions, we are equitable stakeholders in the trust, entitled to relief for profits derived without our consent, pursuant to **O.C.G.A. § 44-12-152**.

16. As a disabled veteran (Kevin White) and diligent researcher (Alyssa Daniels), we have made timely inquiries into the debt's ownership and securitization, exercising due diligence under federal and state law. Alyssa Daniels' research efforts were critical in identifying the securitization structure and legal defenses.

## **DECLARATION**

We swear under penalty of perjury that the foregoing is true and correct to the best of our knowledge, information, and belief.

Executed this 23rd day of July, 2025.

_Kevin White_

**Kevin White**
Defendant / Affiant

_Alyssa Daniels_

**Alyssa Daniels**
Affiant / Spouse with Equitable Interest

Sworn to and subscribed before me this 23 day of July, 2025.

**Notary Public, State of Georgia**

My commission expires: 05/14/27

HIMANSHU PATEL
My Commission Expires
NOTARY
PUBLIC
5/14/2027
FORSYTH COUNTY, GEORGIA

## Certificate of Service

I hereby certify that on this 23⁽ᴸᴰ⁾ day of July, 2025, I served a true and correct copy of the

foregoing Answer, together with the attached Exhibits, via U.S. Mail, certified mail return receipt

requested, and/or electronic filing service to the following counsel of record:


**FIRST NATIONAL BANK OF OMAHA**

**c/o Douglas L. Brooks, P.C.**

**Attorney for Plaintiff**

**P.O. BOX 8477**

**Atlanta, Georgia 31106**

**Phone: 404-442-9101**


Respectfully submitted,


**Kevin-Preston White**                        **Alyssa-Dionne Daniels**

IN THE MAGISTRATE COURT OF FORSYTH COUNTY,
STATE OF GEORGIA

FIRST NATIONAL BANK OF OMAHA,

Plaintiff,

v.                                                  Civil Action File No. 25MGC-3077

KEVIN PRESTON WHITE,

Defendant.

## CONSOLIDATED REQUEST FOR JUDICIAL NOTICE

COMES NOW, Defendant Kevin White ("Defendant"), who respectfully requests this Honorable
Court take judicial notice pursuant to O.C.G.A. § 24-2-201(b)-(c) and Federal Rule of Evidence
201(b), of the following adjudicative facts, statutes, federal regulations, and official publications.
These matters are not subject to reasonable dispute and are capable of accurate determination by
resort to sources whose accuracy cannot reasonably be questioned. This notice supports
Defendant's motion to dismiss, affirmative defenses, and preservation of federal claims related to
Plaintiff's lack of standing and unlawful collection conduct.

## I. FEDERAL STATUTES AND REGULATIONS

1. **15 U.S.C. § 1692g** — Requires validation of debts upon written request. *Clark v. Capital
   Credit & Collection Servs.*, 460 F.3d 1162 (9th Cir. 2006).

2. **15 U.S.C. § 1641(g)** — Requires written notice of assignment or transfer of debt
   ownership within 30 days.

3. **12 C.F.R. § 210.2(k)** — Defines "presenting bank" under Federal Reserve regulations;
   clarifies enforcement authority requirements.

4. **17 C.F.R. § 260.11b-1** — SEC Trust Indenture Act regulations applicable to securitized
   debt structures.

5. **UCC §§ 3-301, 3-305, 9-203** — Only holders in due course or proper transferees can enforce negotiable instruments; security interest attachment requirements.

6. **18 U.S.C. §§ 241–242** — Prohibits conspiracy to deprive rights under color of law.

## II. OFFICIAL GOVERNMENT BULLETINS

7. **CFPB Bulletin 2013-07** — Warns against deceptive collection practices and misrepresentation of account ownership.

8. **FDIC Supervisory Insights (2014)** — Emphasizes clear chain-of-title documentation requirement before debt collection.

## III. VERIFIED SEC FILINGS DEMONSTRATING SECURITIZATION

9. **Form 424B5 Prospectus (CIK 1171040)** — Documents FNBO's transfer of credit card receivables into First Bankcard Master Credit Card Trust with The Bank of New York Mellon Trust Company as Indenture Trustee.
   **Link:**
   https://www.sec.gov/Archives/edgar/data/1171040/000119312517128866/d347474d424b5.htm

10. **Form 8-K (CIK 1396730)** — Details note issuance by First National Master Note Trust with structured payment arrangements.
    **Link:**
    https://www.sec.gov/Archives/edgar/data/1396730/000119312513414754/d619052d8k.htm

11. **Form 10-K (CIK 1171040)** — Contains trust documents, servicing agreements, and indenture structures for securitized receivables.
    **Link:**
    https://www.sec.gov/Archives/edgar/data/1171040/000119312514123255/d701291d10k.htm

## IV. CONTROLLING CASE LAW ON STANDING AND ASSIGNMENT

12. *In re Veal*, 450 B.R. 897 (9th Cir. BAP 2011) — Enforcement requires clear showing of ownership or authorized agency relationship.

13. *U.S. Bank Nat'l Ass'n v. Ibanez*, 458 Mass. 637 (2011) — Valid assignment must precede any enforcement action; post-hoc assignments insufficient.

14. *Dreiling v. American Express Co.*, 458 F.3d 942 (9th Cir. 2006) — Courts routinely take judicial notice of SEC filings as reliable public records.

## V. GEORGIA LAW ON REAL PARTY IN INTEREST

15. O.C.G.A. § 9-11-17(a) — Mandates that only the real party in interest may prosecute an action. *Searcy v. EMC Mortg. Corp.*, 2010 WL 11384502 (N.D. Ga. 2010).

## VI. RESTATEMENT AUTHORITY

16. **Restatement (Third) of Trusts §§ 84–88** — Trustees must disclose trust structure and account for fiduciary obligations to beneficiaries.

## VII. APPLICATION TO PLAINTIFF'S CLAIM

The judicially noticeable facts establish that:

**A. Securitization Evidence:** SEC filings confirm FNBO transferred credit card receivables into trust structures with third-party trustees, potentially extinguishing FNBO's direct ownership rights.

**B. Missing Documentation:** FNBO has provided no trust agreement, servicing authorization, valid assignment, or chain-of-title documentation establishing current ownership or enforcement authority.

**C. Notice Violations:** No evidence of required TILA § 1641(g) transfer notice or FDCPA validation compliance.

**D. Standing Defects:** Under Georgia law, only the real party in interest may sue. FNBO has failed to establish its status as such.

## VIII. PRESERVATION OF FEDERAL CLAIMS

These facts invoke federal issues under the FDCPA, TILA, and SEC regulations. Defendant preserves rights to removal under 28 U.S.C. §§ 1441 and 1367 should adverse rulings infringe federally protected rights.

## PRAYER FOR RELIEF

WHEREFORE, Defendant respectfully requests this Court:

1. Take judicial notice of all enumerated items;
2. Incorporate them into the record;
3. Find Plaintiff lacks standing to prosecute this action;
4. Dismiss the action with prejudice;
5. Preserve Defendant's federal claims for appropriate forum;
6. Grant such other relief as the Court deems just and proper.

Respectfully submitted this 23ʳᵈ day of July, 2025.

_Kevin White_

**KEVIN WHITE, Defendant**
*All Rights Reserved, Without Prejudice*

---

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing upon all parties via [method] on this 23ʳᵈ day of July, 2025.

_Kevin White_

**KEVIN WHITE**

Page 4 of 4

# IN THE MAGISTRATE COURT OF FORSYTH COUNTY, STATE OF GEORGIA

**FIRST NATIONAL BANK OF OMAHA,**
Plaintiff,

v.                                                  **Civil Action File No. 25MGC-3077**

**KEVIN PRESTON WHITE,**
Defendant.

---

# DEFENDANT'S MOTION TO DISMISS
# AND COUNTERCLAIM

Pursuant to O.C.G.A. §§ 9-11-12(b)(1), (6), and Georgia common law, Defendant KEVIN WHITE respectfully moves this Court to dismiss Plaintiff's Complaint in its entirety on the following grounds:

## I. GROUNDS FOR DISMISSAL

1. **Lack of Standing (Real Party in Interest)**
   Plaintiff has not shown proof of ownership, chain of title, or lawful assignment of the alleged debt as required by O.C.G.A. § 9-11-17(a). Plaintiff's failure to attach or produce such documentation deprives it of standing. See Veal v. Am. Home Mortg. Serv., Inc., 450 B.R. 897, 920 (B.A.P. 9th Cir. 2011).

2. **Failure to State a Claim (No Valid Cause of Action)**
   The Complaint fails to plead facts sufficient to establish a cognizable cause of action under Georgia law. The alleged debt is unverified, and the Complaint contains only conclusory statements unsupported by sworn evidence.

3. **Improper Plaintiff Identity and Misrepresentation**
   The Plaintiff may be a loan servicer, debt collector, or trustee for a securitized trust—not

the original creditor. Plaintiff has failed to disclose its capacity in compliance with 15 U.S.C. § 1641(g) and § 1692e.

4.  **Violation of Georgia Fair Business Practices Act (O.C.G.A. § 10-1-393)**
    Plaintiff engaged in deceptive and unfair practices by attempting to collect a debt without proof of ownership, violating express provisions of the FBPA and the FDCPA.

5.  **Fraud in the Inducement and Constructive Fraud**
    Plaintiff or its predecessors materially misrepresented the nature of the financial transaction. The instrument was securitized, monetized, and transferred without notice, thereby voiding the contract under UCC § 3-305 and trust principles. See Restatement (Third) of Trusts §§ 84, 88.

6.  **Affidavit of Duress and Constructive Fraud**
    Defendant previously submitted an Affidavit under penalty of perjury attesting to acts of coercion, fraud, and procedural unconscionability. These facts stand unrebutted and must be taken as true. See U.S. v. Real Property Located at 475 Martin Lane, 545 F.3d 1134 (9th Cir. 2008).

7.  **Lack of Personal Jurisdiction and Due Process Violation**
    To the extent that Plaintiff failed to serve a proper verification, chain of title, or compliant affidavit, Defendant reserves all objections under O.C.G.A. § 9-11-12(b)(2) and applicable federal law.

## II. INCORPORATION OF JUDICIAL NOTICE

Defendant incorporates by reference the concurrently filed Consolidated Request for Judicial Notice. Plaintiff lacks standing to sue or collect on the alleged debt because:

- The subject credit account was securitized under trust indentures filed with the U.S. Securities and Exchange Commission. See SEC Accession No. 0001104659-23-051460.

- Legal title to the debt has been transferred to third-party trusts, and Plaintiff is not a real party in interest under O.C.G.A. § 9-11-17(a).

- Judicially noticeable evidence confirms violation of 15 U.S.C. §§ 1641(g), 1692g, and applicable UCC trust doctrine.

Exhibits include debt validation requests, CFPB complaints and answers, SEC trust filings, a VA disability rating, durable POA, and certified government correspondence—all reinforcing the absence of standing and the presence of equitable defenses.

## III. CONDITIONAL COUNTERCLAIM (PRESERVING FEDERAL CLAIMS)

Defendant asserts the following counterclaims:

1. Breach of Trust and Unjust Enrichment (O.C.G.A. §§ 23-1-1, 23-2-31)
2. Deceptive Practices under the Georgia FBPA (O.C.G.A. § 10-1-393)
3. Declaratory and Equitable Relief under O.C.G.A. § 23-1-2 and Trust Law

## IV. PRAYER FOR RELIEF

WHEREFORE, Defendant respectfully requests this Court:

a. Take judicial notice of all enumerated items;
b. Grant this Motion and dismiss Plaintiff's Complaint in its entirety;
c. Award costs, attorney's fees (where recoverable), and equitable relief;
d. In the alternative, docket the counterclaims;
e. Preserve the record for federal court; and
f. Grant such other relief deemed just and proper.

Respectfully submitted this 23rd day of July, 2025.

*Kevin White*

**KEVIN WHITE, Defendant**
All Rights Reserved, Without Prejudice

# POWER OF ATTORNEY
## &
## <u>DECLARATION OF EQUITABLE RIGHTS</u>

**KNOW ALL MEN BY THESE PRESENTS:**

**COMES NOW**, Kevin Preston White ("Declarant"), sui juris, competent to testify, and having firsthand knowledge of the facts stated herein, who declares under penalty of perjury under the laws of the United States of America and the State of Georgia that the following is true, correct, and complete to the best of my knowledge, belief, and understanding:

1. I am over the age of 18, competent to testify to the matters stated herein, and under no legal disability.

2. I am a American inhabiting within the geographical boundaries of the area commonly known as Georgia, and not a resident, corporate person, subject of any foreign jurisdiction, subject of any federal enclave, and not an accommodation party to any undisclosed adhesion contracts.

**RESERVATION OF RIGHTS**

3. I expressly reserve all unalienable and constitutionally secured rights, including but not limited to those preserved by the Constitution for the United States of America, the Constitution of the State of Georgia, and all rights recognized under common law, equity, natural law, and the laws of nations.

## DECLARATION OF EQUITABLE INTERESTS

4. This Declaration shall serve as constructive notice and a matter of public record establishing my equitable standing, lawful status, and demand for full accounting and transparency from all parties acting in any fiduciary, trustee, servicer, custodian, or administrative capacity regarding any account, trust, collateral, or property to which I am or have been a party or real party in interest.

5. I am the equitable, beneficial, and actual holder of interest in certain property, receivables, proceeds, accounts, securities, trust res and instruments created, issued, traded, pledged, securitized, or monetized, transferred, or operated under my name, identifying information, or associated estate or trust, or arising from transactions in which Declarant was a party, signatory, or obligor whether formed with or without my knowledge or consent, whether disclosed or undisclosed.

6. No legal process, securitization, conversion, assignment, pledge, or hypothecation of such assets or interests shall operate to divest me of my equitable title, standing, or rights unless by full disclosure, lawful consideration, and my knowing, voluntary, and intentional act duly recorded in writing with my signature or autograph and seal.

7. I, the undersigned Declarant, do hereby affirm, declare, and memorialize for the record that I have not, at any time past or present, knowingly, willingly, or voluntarily waived, transferred, sold, conveyed, abandoned, or forfeited any equitable title, interest, right, or claim associated with any property, asset, trust res, account, account proceeds, certificate, security, or beneficial interest, whether real, personal, intangible, or otherwise.

8. Further, I assert that no third party may presume abandonment or waiver of any equitable interest, claim, or right held by me or in my beneficial favor, unless affirmatively established by competent, sworn evidence, signed by me and executed with full knowledge, intent, and capacity as a living man/woman. Any presumption of waiver or abandonment is expressly rebutted herein and hereby revoked ab initio.

9. All equitable rights, claims, titles, and interests preserved under the laws of equity, trust, contract, commerce, the Constitution for the United States of America, the Constitution of the State of Georgia, and all applicable maxims of equity and public policy, remain reserved to me fully, wholly, and without diminishment.

10. This reservation and subsequent demand for accounting is made with the intent that it applies to any and all matters — past, pending, or future — in any forum, judicial or administrative, state or federal. No claim, appearance, response, or proceeding shall be deemed a waiver of these equitable rights, which are preserved continuously unless expressly and lawfully released.

## DEMAND FOR FULL ACCOUNTING

11. I hereby demand a full, complete, and certified accounting of all ledgers, records, trusts, custodial arrangements, assignments, securitization events, CUSIP-linked instruments, proceeds, beneficial entitlements, and any monetization, derivatives, or revenue generated from any account, application, or instrument bearing my name, signature, identifying information, or property interest.

12. This demand includes but is not limited to records held by government agencies, financial institutions, servicers, third-party debt collectors, trustees, custodians, investment vehicles, GSEs, or private actors operating under authority derived from my transactions or identity.

13. Said accounting shall be delivered to me at my address of record within thirty (30) days of receipt of this Declaration, under full commercial and fiduciary liability and penalty of perjury.

## REVOCATION OF PRIOR POWERS OF ATTORNEY

14. I, KEVIN PRESTON WHITE, ("Principal"), do hereby revoke, rescind, and render null and void any and all prior Powers of Attorney, letters of authorization, delegations of authority, agency appointments, or similar instruments of whatever nature and by

whatever name called, whether known or unknown, express or implied, oral or written, recorded or unrecorded, durable or non-durable, executed by me at any time prior to the date of this instrument.

15. This revocation applies to all authorities purportedly granted to any person or entity under any such prior instrument, and any such authority is hereby terminated with full legal and equitable effect, effective immediately upon execution of this Power of Attorney.

16. This revocation extends to any and all authority previously granted relating to any accounts, properties, debts, obligations, securities, trusts, or legal matters, without exception, and supersedes any conflicting provisions in prior instruments.

**GRANT OF DURABLE POWER OF ATTORNEY**

17. I do hereby appoint **Alyssa-Dionne Daniels**, as my true and lawful attorney-in-fact, with full authority to act for me and in my name, place, and stead in any matters whatsoever, including but not limited to the purpose of:

a. Requesting, demanding, obtaining, reviewing, and receiving all financial, accounting, transaction, and custodial records, statements, ledgers, securitization documents, settlement records, IRS files, and any documentation or account information from any financial institution, creditor, credit bureau, government agency, custodian, loan servicer, mortgage company, or trustee relating to any account, trust, debt, security, or property interest associated with me, my name, or my estate.

b. Communicating and corresponding with any person, entity, governmental agency, financial institution, servicer, trustee, custodian, or regulatory body to facilitate the foregoing.

c. Executing and delivering any documents necessary to effectuate these limited powers, provided such execution is consistent with my expressed interests and rights.

d. Acting as my authorized representative in any court of law or equity, administrative proceeding, arbitration, mediation, or alternative dispute resolution, including but not limited to filing pleadings, motions, affidavits, and to appear on my behalf. This authority expressly includes standing in my place due to my documented disability recognized by the U.S. Department of Veterans Affairs, and to exercise all rights afforded to a legally competent party.

e. Managing all financial accounts, including endorsing, depositing, withdrawing, negotiating, and transferring funds, checks, or instruments at any bank, credit union, or other financial institution.

f. Preparing, signing, and filing any federal, state, or local tax documents, including IRS Form 2848, to represent me before the IRS or any state taxing authority; to receive confidential information, file claims for refunds, negotiate liabilities, and sign consents or waivers.

g. Requesting, recovering, collecting, holding, settling, and accounting for any and all money, tangible or intangible property, debts, dues, securities, entitlements, accounts, pensions, disability benefits, insurance proceeds, and all other forms of property or benefits to which I am or may be entitled.

18. This Power of Attorney shall become effective immediately upon execution and shall not be affected by the subsequent disability, incapacity, or incompetence of the Principal. It shall remain in full force and effect until expressly revoked in writing by the Principal or until the Principal's death.

19. All lawful acts performed by my Agent pursuant to this instrument are hereby ratified and confirmed. This Power of Attorney is intended to be construed broadly as a General Durable Power of Attorney under Georgia law, including O.C.G.A. § 10-6B-1 et seq., and shall be liberally interpreted to afford full legal and equitable authority, including all powers enumerated in the New Covenant and those conferred upon me through the Ministry of Reconciliation.

## PHOTO COPIES

20. Photocopies or digital scans of this executed Power of Attorney shall be deemed valid and legally enforceable as the original.

## AGENT'S ACKNOWLEDGMENT

21. I, Alyssa Dionne Daniels, have read the foregoing Power of Attorney. I hereby accept the appointment as Agent and agree to act in a fiduciary capacity in accordance with the terms of this instrument and Georgia law. I understand my duties and responsibilities as set forth under O.C.G.A. § 10-6B-1 et seq.

Executed on this 23ᴿᴰ day of July, 2025.

_Alyssa-Dionne Daniel_

Alyssa-Dionne Daniels, Agent

## DECLARANT AND PRINCIPAL DISTINCTION CLAUSE

19. I, the undersigned living man, Kevin Preston White, do hereby act in my natural, private, and sovereign capacity as Declarant, reserving all equitable rights, titles, interests, and immunities. Where reference is made herein to the Principal, it refers to the legal person, entity, or trust construct associated with the name KEVIN PRESTON WHITE in all-capital letters. I act as the sole, authorized agent, settlor, and equitable owner of said entity. This Declaration is executed without waiver of any rights, and with full reservation of all rights, nunc pro tunc and ab initio.

## WITNESS ATTESTATION

The undersigned witness affirms that Kevin Preston White, known to me personally or by government-issued identification, appeared before me, signed the foregoing instrument freely and voluntarily, and acknowledged the truth and accuracy of its contents, including the revocation and granting of authority under power of attorney.

Witness Printed Name: _Baaqar Ellis_

Witness Signature: _[signature]_

Date: _7-23-25_

## DECLARATION UNDER PENALTY OF PERJURY

I solemnly declare and affirm, under penalty of perjury under the laws of the United States of America and the State of Georgia, that the foregoing is true, correct, and complete to the best of my personal knowledge, understanding, and belief. This Declaration is made in good faith, without prejudice, and with full reservation of rights.

Executed this _23rd_ day of _July_, 2025.

_Kevin Preston White [signature]_
Kevin Preston White, Declarant
All Rights Reserved, Without Prejudice

## NOTARY ACKNOWLEDGMENT

**State of Georgia**
**Forsyth County**

Sworn to and subscribed before me this _23_ day of _July_, 2025, by Kevin Preston White.

_[signature]_
Notary Public

My Commission Expires: _05/14/27_

[Notary seal: HIMANSHU PATEL, My Commission Expires 5/14/2027, NOTARY PUBLIC, FORSYTH COUNTY, GEORGIA]

Page 7 of 7

# POWER OF ATTORNEY
## &
## <u>DECLARATION OF EQUITABLE RIGHTS</u>

**KNOW ALL MEN BY THESE PRESENTS:**

**COMES NOW**, Alyssa Dionne Daniels ("Declarant"), sui juris, competent to testify, and having firsthand knowledge of the facts stated herein, who declares under penalty of perjury under the laws of the United States of America and the State of Georgia that the following is true, correct, and complete to the best of my knowledge, belief, and understanding:

1. I am over the age of 18, competent to testify to the matters stated herein, and under no legal disability.

2. I am a American inhabiting within the geographical boundaries of the area commonly known as Georgia, and not a resident, corporate person, subject of any foreign jurisdiction, subject of any federal enclave, and not an accommodation party to any undisclosed adhesion contracts.

**RESERVATION OF RIGHTS**

3. I expressly reserve all unalienable and constitutionally secured rights, including but not limited to those preserved by the Constitution for the United States of America, the Constitution of the State of Georgia, and all rights recognized under common law, equity, natural law, and the laws of nations.

## DECLARATION OF EQUITABLE INTERESTS

4. This Declaration shall serve as constructive notice and a matter of public record establishing my equitable standing, lawful status, and demand for full accounting and transparency from all parties acting in any fiduciary, trustee, servicer, custodian, or administrative capacity regarding any account, trust, collateral, or property to which I am or have been a party or real party in interest.

5. I am the equitable, beneficial, and actual holder of interest in certain property, receivables, proceeds, accounts, securities, trust res and instruments created, issued, traded, pledged, securitized, or monetized, transferred, or operated under my name, identifying information, or associated estate or trust, or arising from transactions in which Declarant was a party, signatory, or obligor whether formed with or without my knowledge or consent, whether disclosed or undisclosed.

6. No legal process, securitization, conversion, assignment, pledge, or hypothecation of such assets or interests shall operate to divest me of my equitable title, standing, or rights unless by full disclosure, lawful consideration, and my knowing, voluntary, and intentional act duly recorded in writing with my signature or autograph and seal.

7. I, the undersigned Declarant, do hereby affirm, declare, and memorialize for the record that I have not, at any time past or present, knowingly, willingly, or voluntarily waived, transferred, sold, conveyed, abandoned, or forfeited any equitable title, interest, right, or claim associated with any property, asset, trust res, account, account proceeds, certificate, security, or beneficial interest, whether real, personal, intangible, or otherwise.

8. Further, I assert that no third party may presume abandonment or waiver of any equitable interest, claim, or right held by me or in my beneficial favor, unless affirmatively established by competent, sworn evidence, signed by me and executed with full knowledge, intent, and capacity as a living man/woman. Any presumption of waiver or abandonment is expressly rebutted herein and hereby revoked ab initio.

9. All equitable rights, claims, titles, and interests preserved under the laws of equity, trust, contract, commerce, the Constitution for the United States of America, the Constitution of the State of Georgia, and all applicable maxims of equity and public policy, remain reserved to me fully, wholly, and without diminishment.

10. This reservation and subsequent demand for accounting is made with the intent that it applies to any and all matters — past, pending, or future — in any forum, judicial or administrative, state or federal. No claim, appearance, response, or proceeding shall be deemed a waiver of these equitable rights, which are preserved continuously unless expressly and lawfully released.

**DEMAND FOR FULL ACCOUNTING**

11. I hereby demand a full, complete, and certified accounting of all ledgers, records, trusts, custodial arrangements, assignments, securitization events, CUSIP-linked instruments, proceeds, beneficial entitlements, and any monetization, derivatives, or revenue generated from any account, application, or instrument bearing my name, signature, identifying information, or property interest.

12. This demand includes but is not limited to records held by government agencies, financial institutions, servicers, third-party debt collectors, trustees, custodians, investment vehicles, GSEs, or private actors operating under authority derived from my transactions or identity.

13. Said accounting shall be delivered to me at my address of record within thirty (30) days of receipt of this Declaration, under full commercial and fiduciary liability and penalty of perjury.

**REVOCATION OF PRIOR POWERS OF ATTORNEY**

14. I, ALYSSA DIONNE DANIELS, ("Principal"), do hereby revoke, rescind, and render null and void any and all prior Powers of Attorney, letters of authorization, delegations of authority, agency appointments, or similar instruments of whatever nature

and by whatever name called, whether known or unknown, express or implied, oral or written, recorded or unrecorded, durable or non-durable, executed by me at any time prior to the date of this instrument.

15. This revocation applies to all authorities purportedly granted to any person or entity under any such prior instrument, and any such authority is hereby terminated with full legal and equitable effect, effective immediately upon execution of this Power of Attorney.

16. This revocation extends to any and all authority previously granted relating to any accounts, properties, debts, obligations, securities, trusts, or legal matters, without exception, and supersedes any conflicting provisions in prior instruments.

## GRANT OF DURABLE POWER OF ATTORNEY

17. I do hereby appoint **Alyssa-Dionne Daniels**, as my true and lawful attorney-in-fact, with full authority to act for me and in my name, place, and stead in any matters whatsoever, including but not limited to the purpose of:

a. Requesting, demanding, obtaining, reviewing, and receiving all financial, accounting, transaction, and custodial records, statements, ledgers, securitization documents, settlement records, IRS files, and any documentation or account information from any financial institution, creditor, credit bureau, government agency, custodian, loan servicer, mortgage company, or trustee relating to any account, trust, debt, security, or property interest associated with me, my name, or my estate.

b. Communicating and corresponding with any person, entity, governmental agency, financial institution, servicer, trustee, custodian, or regulatory body to facilitate the foregoing.

c. Executing and delivering any documents necessary to effectuate these limited powers, provided such execution is consistent with my expressed interests and rights.

d. Acting as my authorized representative in any court of law or equity, administrative proceeding, arbitration, mediation, or alternative dispute resolution, including but not limited to filing pleadings, motions, affidavits, and to appear on my behalf. This authority expressly includes standing in my place due to my documented disability recognized by the U.S. Department of Veterans Affairs, and to exercise all rights afforded to a legally competent party.

e. Managing all financial accounts, including endorsing, depositing, withdrawing, negotiating, and transferring funds, checks, or instruments at any bank, credit union, or other financial institution.

f. Preparing, signing, and filing any federal, state, or local tax documents, including IRS Form 2848, to represent me before the IRS or any state taxing authority; to receive confidential information, file claims for refunds, negotiate liabilities, and sign consents or waivers.

g. Requesting, recovering, collecting, holding, settling, and accounting for any and all money, tangible or intangible property, debts, dues, securities, entitlements, accounts, pensions, disability benefits, insurance proceeds, and all other forms of property or benefits to which I am or may be entitled.

18. This Power of Attorney shall become effective immediately upon execution and shall not be affected by the subsequent disability, incapacity, or incompetence of the Principal. It shall remain in full force and effect until expressly revoked in writing by the Principal or until the Principal's death.

19. All lawful acts performed by my Agent pursuant to this instrument are hereby ratified and confirmed. This Power of Attorney is intended to be construed broadly as a General Durable Power of Attorney under Georgia law, including O.C.G.A. § 10-6B-1 et seq., and shall be liberally interpreted to afford full legal and equitable authority, including all powers enumerated in the New Covenant and those conferred upon me through the Ministry of Reconciliation.

**PHOTO COPIES**

20. Photocopies or digital scans of this executed Power of Attorney shall be deemed valid and legally enforceable as the original.

**AGENT'S ACKNOWLEDGMENT**

21. I, Alyssa Dionne Daniels, have read the foregoing Power of Attorney. I hereby accept the appointment as Agent and agree to act in a fiduciary capacity in accordance with the terms of this instrument and Georgia law. I understand my duties and responsibilities as set forth under O.C.G.A. § 10-6B-1 et seq.

Executed on this 23ʳᵈ day of _July_, 2025.

_Alyssa-Dionne Daniels_
Alyssa-Dionne Daniels, Agent

**DECLARANT AND PRINCIPAL DISTINCTION CLAUSE**

19. I, the undersigned living woman, Alyssa Dionne Daniels, do hereby act in my natural, private, and sovereign capacity as Declarant, reserving all equitable rights, titles, interests, and immunities. Where reference is made herein to the Principal, it refers to the legal person, entity, or trust construct associated with the name ALYSSA DIONNE DANIELS in all-capital letters. I act as the sole, authorized agent, settlor, and equitable owner of said entity. This Declaration is executed without waiver of any rights, and with full reservation of all rights, nunc pro tunc and ab initio.

**WITNESS ATTESTATION**

The undersigned witness affirms that Alyssa Dionne Daniels, known to me personally or by government-issued identification, appeared before me, signed the foregoing instrument freely and voluntarily, and acknowledged the truth and accuracy of its contents, including the revocation and granting of authority under power of attorney.

Witness Printed Name: Booqar Ellis

Witness Signature: _____

Date: 7-23-25

## DECLARATION UNDER PENALTY OF PERJURY

I solemnly declare and affirm, under penalty of perjury under the laws of the United States of America and the State of Georgia, that the foregoing is true, correct, and complete to the best of my personal knowledge, understanding, and belief. This Declaration is made in good faith, without prejudice, and with full reservation of rights.

Executed this __23__ day of __July__, 2025.

_____
Alyssa Dionne Daniels, Declarant
All Rights Reserved, Without Prejudice

## NOTARY ACKNOWLEDGMENT

**State of Georgia**

**Forsyth County**

Sworn to and subscribed before me this __23__ day of __July__, 2025, by Alyssa Dionne Daniels.

_____
Notary Public

My Commission Expires: __05/14/27__

Page 7 of 7

## IN THE MAGISTRATE COURT OF
## FORSYTH COUNTY, GEORGIA

Kevin White,
Plaintiff/Counterclaim Defendant,

v.                                    **Civil Action No. 25MGC-3077**

First National Bank of Omaha,
Defendant/Counterclaim Plaintiffs.

---

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM AND LACK OF SUBJECT MATTER JURISDICTION WITH PRESERVATION OF RIGHTS**

---

Plaintiff Kevin White ("White") moves this Court to dismiss the claims against him for failure to state a claim under O.C.G.A. § 9-11-12(b)(6) and for lack of subject matter jurisdiction, while explicitly reserving all rights to assert federal claims in federal court for full adjudication or federal questions.

## ARGUMENT

### I. THE MAGISTRATE COURT LACKS SUBJECT MATTER JURISDICTION OVER FEDERAL CLAIMS AND DAMAGES EXCEEDING STATUTORY LIMITS

Magistrate courts in Georgia are courts of limited jurisdiction, authorized to adjudicate civil matters up to a certain monetary threshold (generally $15,000, O.C.G.A. § 15-10-41). Federal question claims and claims exceeding this limit fall outside their jurisdiction.

1. **Federal Question Jurisdiction Resides in Federal District Court**
   Under 28 U.S.C. § 1331, federal courts have original jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States. Claims under the **Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 et seq.,** and **Racketeer**

Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 et seq.,
implicate federal questions requiring federal court jurisdiction.

2. **Magistrate Court Cannot Adjudicate Federal Claims**

Georgia's Magistrate Courts do not possess jurisdiction to hear federal statutory claims or
those involving constitutional questions. See **O.C.G.A. §§ 15-10-1 et seq.; Bouldin v.
United States, 124 Ga. 54 (1905)** (limited jurisdiction must be strictly construed).

3. **Preservation of Removal Rights**

28 U.S.C. §§ 1441 and 1446 permit removal of civil actions involving federal questions
from state courts to federal district courts. Plaintiff expressly reserves this right. Failure
to dismiss could impair this fundamental right. See **Thermtron Products, Inc. v.
Hermansdorfer, 423 U.S. 336 (1976)** (removal safeguards federal interests).

## II. DEFENDANTS FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

To survive a motion to dismiss, a claim must contain sufficient factual matter to "state a claim to
relief that is plausible on its face." See **Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570
(2007); Ashcroft v. Iqbal, 556 U.S. 662 (2009).**

1. **Lack of Standing and Failure to Produce Original Note**

Plaintiff challenges Defendants' standing as they cannot produce the original promissory
note or assignment authorizing them to enforce the alleged debt. Under Georgia law and
federal due process, the absence of the original note defeats claims to enforce the
obligation. See **In re Gash, 2019 WL 5962002 (Bankr. N.D. Ga. 2019); Kendall v.
Fannie Mae, 2015 WL 3560542 (N.D. Ga. 2015).**

2. **Due Process Requires Proper Notice and Opportunity to Be Heard**

The use of non-judicial foreclosure procedures without proper notice violates the
Fourteenth Amendment. See **M.L.B. v. S.L.J., 519 U.S. 102 (1996); Mathews v.
Eldridge, 424 U.S. 319 (1976).**

3. **Claims Based on Securitization or Assignment Defects Are Valid**

Numerous courts have recognized defenses based on improper assignment or
securitization chain defects, which Defendants must establish to demonstrate

enforceability. See *Glaski v. Bank of America*, 218 Cal. App. 4th 1079 (2013);
*Barkley v. Olympia Mortgage Co.*, 631 F. Supp. 2d 649 (E.D. Va. 2009).

## III. PLAINTIFF PRESERVES ALL FEDERAL STATUTORY AND CONSTITUTIONAL RIGHTS

Plaintiff explicitly reserves all rights under federal statutes including the FDCPA, RICO, and
constitutional protections under the Fifth, Seventh, and Fourteenth Amendments:

- **Right to Jury Trial (Seventh Amendment):** State Magistrate Courts cannot grant a jury
  trial for federal claims. Plaintiff reserves this right under **Granfinanciera, S.A. v.
  Nordberg, 492 U.S. 33 (1989).**
- **Right to Bring Federal Claims in Federal Court:** Plaintiff's motion expressly
  preserves removal rights and filing of federal claims.
- **Reservation of All Affirmative Defenses:** Including fraud, lack of standing, failure of
  consideration, and due process violations.

## CONCLUSION

For the foregoing reasons, the Magistrate Court lacks jurisdiction over the federal claims and
claims exceeding its monetary limits. Defendants fail to state a claim upon which relief can be
granted. Plaintiff respectfully requests dismissal with prejudice of Defendants' claims, without
waiver of any federal rights or remedies, including removal to federal court and demand for jury
trial.

Respectfully submitted this 23rd day of July, 2025.

Kevin White

Page 3 of 3

# IN THE MAGISTRATE COURT OF FORSYTH COUNTY
## STATE OF GEORGIA

**FIRST NATIONAL BANK OF OMAHA,**
Plaintiff,

v.                                    Civil Action File No. **25MGC-3077**

**KEVIN WHITE,**
Defendant.

# ORDER OF DISMISSAL

This matter comes before the Court on the Defendant Kevin White and Counterclaim Plaintiff Alyssa Daniels' Motion to Dismiss Plaintiff's Statement of Claim, filed pursuant to O.C.G.A. § 9-11-12(b)(6), for failure to state a claim upon which relief can be granted, and their Verified Answer, Affirmative Defenses, and Compulsory Counterclaims, filed in the case. The Court, having considered the pleadings, affidavits, exhibits, and applicable law, finds as follows:

1. **Lack of Standing:** Plaintiff First National Bank of Omaha ("FNBO") has failed to establish itself as the real party in interest under O.C.G.A. § 9-11-17(a). The evidence presented, including Plaintiff's own admission in its June 30, 2025, response to CFPB Complaint No. 250621-21732425, indicates that the alleged debt was charged off and forwarded to BQ & Associates for collection. Plaintiff has not provided competent documentary evidence, such as a valid chain of title or assignment documents, to demonstrate current ownership of the debt as required by O.C.G.A. § 9-11-9.2 and Wirth v. Cach, LLC, 300 Ga. App. 488, 685 S.E.2d 433 (2009).

2. **Defective Affidavit:** The affidavit of Jenifer Ross submitted by Plaintiff is facially defective, lacking a proper jurat, notary seal, and attestation of personal knowledge, rendering it inadmissible under O.C.G.A. § 9-11-11(a) and Roberson v. Ocwen Loan Servicing, LLC, 330 Ga. App. 101, 103 (2014). Further, Plaintiff has failed to comply with Uniform Magistrate Court Rule 4, which requires a sworn affidavit by a person with knowledge when a debt has been assigned.

**3. Failure to Validate Debt:** Plaintiff's agent, Douglas L. Brooks, P.C., admitted in its July 1, 2025, CFPB response (Complaint No. 250621-21731781) to not responding to Defendant's May 1, 2025, written request for debt validation. This failure constitutes a per se violation of O.C.G.A. § 10-1-393(b)(1)(A), which prohibits debt collectors from failing to respond to a written validation request within thirty days. Such conduct is deemed deceptive and unfair under O.C.G.A. § 10-1-393(b)(2)(A) and (b)(3), as supported by Cox v. GC Services, LP, 296 Ga. 419, 768 S.E.2d 457 (2015), and Harris v. Portfolio Recovery Assocs., 334 Ga. App. 1, 778 S.E.2d 1 (2015).

**4. Counterclaims:** Defendant Kevin White and Counterclaim Plaintiff Alyssa Daniels have asserted compulsory counterclaims under the Georgia Fair Business Practices Act (O.C.G.A. § 10-1-393) and for accounting and recoupment (O.C.G.A. §§ 23-2-70, 13-7-2). The Court finds that Plaintiff's deceptive practices, including misrepresenting ownership and pursuing collection without validation, have caused harm to Defendants, including emotional distress, financial injury, and disruption of marital consortium, as substantiated by their affidavits.

Based on the foregoing, the Court concludes that Plaintiff lacks standing to pursue this action, has failed to provide admissible evidence of ownership, and has violated statutory obligations under Georgia law. Accordingly, Plaintiff's Statement of Claim fails to state a claim upon which relief can be granted. The Court further finds that Defendants are entitled to relief on their counterclaims, limited to the jurisdictional maximum of this Court.

## IT IS HEREBY ORDERED AND ADJUDGED:

1. Plaintiff's Statement of Claim is DISMISSED WITH PREJUDICE pursuant to O.C.G.A. § 9-11-12(b)(6) for failure to state a claim upon which relief can be granted.

2. Defendants Kevin White and Alyssa Daniels are awarded combined damages in the amount of $14,999.00 on their counterclaims under O.C.G.A. § 10-1-393 and § 13-7-2, to be

apportioned equitably between them as determined in subsequent proceedings or by agreement, plus court costs as authorized under O.C.G.A. § 15-10-80.

3. Defendants' rights to pursue additional federal and equitable claims, including but not limited to those arising under 15 U.S.C. § 1692k (FDCPA), 15 U.S.C. § 1681n (FCRA), 18 U.S.C. § 1964(c) (RICO), and O.C.G.A. § 23-3-60 (equitable relief), as well as any damages exceeding the $15,000 jurisdictional limit of this Court, are expressly preserved for adjudication in the United States District Court for the Northern District of Georgia or other court of competent jurisdiction, pursuant to Semtek and Crawford v. Etheridge, 296 Ga. App. 121 (2009).

4. Plaintiff is ORDERED to produce, within ten (10) days of this Order, the documents requested by Defendants under O.C.G.A. § 9-11-45 and Uniform Magistrate Court Rule 4(c), including but not limited to the Pooling and Servicing Agreement, Bills of Sale, Transfer and Assignment Agreements, Receivable Purchase Agreements, monthly remittance reports, and Collection Agency Engagement Agreement, to facilitate a full accounting as requested in Defendants' counterclaims.

5. Failure to comply with the production order may result in further sanctions, including a motion to compel under O.C.G.A. § 9-11-37.

This Order constitutes a final judgment in this matter within the jurisdiction of the Magistrate Court of Forsyth County. The Clerk of Court is directed to enter this Order and serve copies on all parties.

SO ORDERED this _____ day of _____, 2025,

_____
Honorable Judge
Magistrate Court of Forsyth County

Page 3 of 3

# EXHIBIT: __A__

## <u>NOTICE OF VALIDATION OF CONTRACT</u>

CERTIFIED MAIL

**ATTN: Douglas L. Brooks, P.C.**
**P.O. Box 8477**
**Atlanta, GA 31106-0477**
**Telephone: 404-442-9101**
**Account Number: XXXXXXXXXXX9937**
**Reference Number: BBQ – 29579 (as referenced in your communication)**
**Alleged Balance: $10,315.19**

9589 0710 5270 0991 5313 44

4/29/2025

RE: Account #: ************9937

It has come to my attention that the FIRST NATIONAL BANK OF OMAHA, Account ending in **9937** has been potentially referred to a third-party interloper for unscrupulous reasons. This is a matter between the account holder and FIRST NATIONAL BANK OF OMAHA (FNBO hereafter) ONLY.

**ATTN: Douglas L. Brooks, P.C.** there may be deficiencies in any alleged contract bringing into question the validity of your claim and any contract between us. Douglas L. Brooks, P.C. is not known by me; therefore, I require proof in respect to any existing lawfully binding contract encompassing/binding Douglas L. Brooks, P.C. to this account. This is necessary in order to affirm Douglas L. Brooks, P.C. is not an unauthorized person or entity meddling in a transaction without a legitimate right or contract, potentially acting improperly or predatorily. Therefore, I hereby give you notice that there is a question regarding the validity of any contract between us. In order to be satisfied that any such contract is valid, I therefore require the following:

1. Proof of Claim;
2. Verification of your claim against me (a sworn affidavit or a hand signed invoice);
3. Certification of the debt (the actual accounting for accounts payable, accounts receivables, and full statements for the life of the account);
4. A copy of the signed contract or agreement that allegedly establishes my obligation to this alleged debt.
5. Proof of Authority to collect the alleged debt by providing a copy of a **lawfully-binding contract** between Douglas L. Brooks, P.C. and FNBO showing your authority to collect on their behalf.
6. Your full name, Georgia Bar number, and contact information to verify your license to practice law in Georgia.
7. A copy of the original completed and signed Form **SSA-89 Authorization for the Social Security Administration (SSA)** To Release Social Security Number (SSN) Verification.
8. Complete and return Form **W-9 Request for Taxpayer Identification Number and Certification** for you and your company.
9. Certified copy of all or any **Currency Transaction Report (CTR)** detailing the transaction(s), including the amount of cash involved, the identity of the person conducting the transaction, and the date and location of the transaction.
10. Certified copy of all or any **Wire Detail Report** detailing the sending and receiving of funds, the date and time of the wire transfer, the amount, the sender's and receiver's details, and any other relevant data related to the transaction used to track the movement of funds.
11. Certified copy of all or any **FedWire Transaction ID(s)** assigned to each transaction processed through the FedWire Funds Service to track and reference wire transfers made via the FedWire system to identify and track the FedWire transactions.

# EXHIBIT: <u>A</u>

**Be Advised;**
The Georgia Civil Practice Act, specifically in O.C.G.A. § 9-11-17 states that "every action shall be prosecuted in the name of the real party in interest." Allianz Life Insurance Co. of North America v. Riedl, 264 Ga. 395, 444 S.E.2d 736 (1994), the Georgia Supreme Court held that "the real party in interest is the person who, by the substantive law, has the right sought to be enforced." Additionally, in Rigby v. Flue-Cured Tobacco Cooperative Stabilization Corp., 327 Ga. App. 29, 755 S.E.2d 915 (2014), the Georgia Court of Appeals stated that "a party is a real party in interest if it has a real, actual, material, or substantial interest in the subject matter of the action, as opposed to one who has only a nominal, formal, or technical interest in or connection with the case."

I hereby give Douglas L. Brooks, P.C. thirty (30) days to reply to this notice from the date Douglas L. Brooks, P.C. receives this communication with a notice sent using recorded post and signed under full commercial liability and under penalty of perjury, assuring and promising me that all of the replies and details given to the above requests are true, correct and complete without any deception, fraud or mischief. Your failure to provide all of the aforementioned documentation in the manner described within **thirty (30) days** from the date you receive this communication constitutes your agreement to the following terms:

1. That the debt did not exist in the first place;
OR
2. It has already been paid in full;
AND/OR,
3. Any contract was voidable from the start;
AND
4. That you accept liability for any damages I suffer as a result of your actions;
5. That any negative remarks made to a credit reference agency have been removed and that you will so inform me within thirty (30) days from the date you receive this communication;
6. You abandon your claim and will pursue this matter no further.
7. That you agree that an action at law of non-assumpsit will be filed in a superior court of record as a counter claim to any suit filed by your agency regarding this alleged debt.

I dispute the validity of this alleged debt in its entirety and demand strict proof of the debt and your authority to collect it. I reserve all my legal rights and do not waive any defenses or remedies available to me under applicable law. This letter is not an acknowledgment of liability or consent to any obligation.

Please be advised that I am keeping a written record of all correspondence in this regard and therefore do not consent to discuss this matter over the telephone. Until you provide the requested validation, you must cease all collection activities, including phone calls, letters, and credit reporting. I request that all future communications be in writing only to the address below. If you fail to validate the debt or continue collection without proof, I will pursue all remedies available, including filing complaints with the Georgia Attorney General's Consumer Protection Division, the State Bar of Georgia, the Federal Trade Commission, and the Consumer Financial Protection Bureau. You are hereby given notice that further communications without proof will be ignored without dishonor on my part. Any telephone calls and other forms of non-written communication regarding this matter, whether by an actual person, or a computerized system, or personal visits; will be deemed harassment and will be dealt with accordingly.

Please notice that the commonly accepted principles of good faith demand that if you have any reasonable objections to this Notice and Demand, that you immediately state any and all such objections and not harbor any

# EXHIBIT: <u>A</u>

hidden objections with which to surprise me later. Therefore, it is my reasonable expectation that should you not offer any specific objections to any part of this Notice and Demand, sent to me by recorded delivery within thirty (30) days from your receipt of same, that I may presume your agreement to the above terms.

Please send official documents validating that there is indeed a debt owed to the third-party interloper, in conjunction with ALL other requested documents and proofs of claim/verification in relation to the alleged debt. I and all courts of record will presume your silence to mean your acquiescence in all these matters.

**NOTICE TO PRINCIPAL IS NOTICE TO AGENT; NOTICE TO AGENT IS NOTICE TO PRINCIPAL**

I, Kevin-Preston White, a living man, declare under penalty of perjury pursuant to the laws of the United States of America pursuant to U.S.C. § 1746, that I am sui juris, competent to act, and not a corporate fiction, artificial person, or legal entity, or ward of the state subject to statutory disabilities. I provide this notice in my natural, private capacity and acknowledge my lawful standing, including any equitable and legal interests pertinent to this matter.

I expressly reserve all rights to indemnification and hold harmless protections to the fullest extent permitted by law in equity and at law, against any unauthorized or unlawful use of my name, estate, or interests.

Executed this _29th_ day of _April_, 2025.

_Kevin P White_

By: White, Kevin-Preston, Agent
For: KEVIN PRESTON WHITE ESTATE
c/o 5480 Lacebark Pine Court
Cumming, Georgia Republic [30040-3611]

**Enclosed:**
- Copy of Debt Collection Notice and envelope

Douglas L. Brooks, P.C.

**EXHIBIT: A**

To: KEVIN WHITE
5480 LACEBARK PINE CT

P.O. Box 8477

Atlanta, GA 31106-0477

CUMMING GA 30040-3611

(404) 442-9101 from 9 am to 5 pm Eastern, Monday to Friday

Reference: BBQ - 29579

Today's Date: April 18, 2025

**Douglas L. Brooks, P.C. is a debt collector.** We are trying to collect a debt that you owe to FIRST NATIONAL BANK OF OMAHA . We will use any information that you give us to help collect that debt.

## Our information shows:

You had an account with FIRST NATIONAL BANK OF OMAHA with account number 5466179204199937

As of 03/31/2025 you owed $10315.19

Between 03/31/2025 and today:

You were charged this amount interest: + $0.00

You were charged this amount in fees: + $0.00 and costs + $0.00

You paid or were credited this amount toward the debt: - $0.00, principal, $0.00, interest.

Total amount of the debt now: $10315.19

## How can you dispute this debt?

■ Call or write to us by 30 days from the date above to dispute all or part of the debt. If you do not, we will assume that out information is correct.

■ If you write to us by 30 days from the date above, we must stop collection on any amount you dispute until we send you information that shows you owe the debt. You may use the form below or write to us without the form. You may also include supporting documents.

## What else can you do?

■ Write to ask for the name and address of the original creditor, if different from the current creditor. If you write to us by 30 days from the date above, we must stop collection until we send you that information. You may use the form below or write to us without the form.

■ Go to **www.cfpb.gov/debt-collection** to learn more about your rights under federal law. For instance, you have the right to stop or limit how we contact you.

■ Contact us about your payment options.

■ Póngase en contacto con nosotros para solicitor una copia de este formulario en español.

✄..............................................................................................

**Mail this form to:**
Douglas L. Brooks, P.C.
P.O. Box 8477
Atlanta, GA 31106-0477

KEVIN WHITE
5480 LACEBARK PINE CT

CUMMING GA 30040-3611

**How do you want to respond?**
*Check all that apply*

☐ I want to dispute this debt because I think:

    ☐ This is not my debt.

    ☐ The amount is wrong.

    ☐ Other (please describe on reverse or attach additional information).

☐ I want you to send me the name and address of the original creditor.

☐ I enclosed this amount $ _____
    Make your check payable to *Douglas L. Brooks, P.C.* Include the reference number: BBQ-29579

☐ Quiero este formulario en español.

# EXHIBIT: B

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article ~~~~~ to:

FPICES
~~CLAS L BROOKS, P.C.
P.O. Box 8477
Atlanta, GA 31106

9590 9402 8918 4064 8841 43

2. Article Number (Transfer from service label)

9589 0710 5270 0991 5313 44

PS Form 3811, July 2020 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X ☐ Agent
☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1?    ☐ Yes
If YES, enter delivery address below:    ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☒ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery
(over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☒ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt



# U.S. Postal Service™
# CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

Atlanta, GA 31106

**EXHIBIT: B**

Certified Mail Fee  $4.85
$                                    0509
                                     3

Extra Services & Fees *(check box, add fee as appropriate)*
☐ Return Receipt (hardcopy)          $  $0.00
☐ Return Receipt (electronic)        $  $0.00
☐ Certified Mail Restricted Delivery $  $0.00
☐ Adult Signature Required           $  $0.00
☐ Adult Signature Restricted Delivery $

Postmark
Here

05/01/2025

Postage  $1.01
$

Total Postage and Fees
$9.96

Sent To  Douglas L. Brooks P.C.

Street and Apt. No., or PO Box No.  PO Box 8472

City, State, ZIP+4®  Atlanta, GA 31106

PS Form 3800, January 2023 PSN 7530-02-000-9047    See Reverse for Instructions

9589 0710 5270 0990 5313 44

**USPS Tracking**

Track Packages
Anytime, Anywhere

Get the free Informed Delivery® feature to receive
automated notifications on your packages

Learn More

(https://reg.usps.com/xsell?
app=UspsTools&ref=homepageBanner&appURL=https%3A%2F%2Finformeddelivery.usps.com/box/pages/intro/start.action)

Tracking Number:

# 9589071052700991531344

Copy    Add to Informed Delivery (https://informeddelivery.usps.com/)

# EXHIBIT: B

Remove X

### Latest Update

Your item has been delivered and is available at a PO Box at 11:36 am on
May 6, 2025 in ATLANTA, GA 30306.

Get More Out of USPS Tracking:

USPS Tracking Plus®

---

**Delivered**
Delivered, PO Box
ATLANTA, GA 30306
May 6, 2025, 11:36 am

**In Transit to Next Facility**
May 4, 2025

**Arrived at USPS Regional Facility**
ATLANTA GA DISTRIBUTION CENTER
May 3, 2025, 1:04 pm

**Arrived at USPS Regional Facility**
ATLANTA GA DISTRIBUTION CENTER
May 2, 2025, 5:20 pm

**Departed Post Office**
ALPHARETTA, GA 30009
May 1, 2025, 6:07 pm

**USPS in possession of item**
ALPHARETTA, GA 30009
May 1, 2025, 12:17 pm

Hide Tracking History

What Do USPS Tracking Statuses Mean?
(https://faq.usps.com/s/article/Where-is-my-package)

---

Text & Email Updates    ⌄

USPS Tracking Plus®    ⌄

Product Information    ⌄

See Less ⌃

Track Another Package

Enter tracking or barcode numbers

## Need More Help?

Contact USPS Tracking support for further assistance.

FAQs

 An official website of the United States Government

 **Consumer Financial Protection Bureau** (https://www.consumerfinance.gov/)          Start a new complaint

 All complaints (.)

# 250621-21732425                          **EXHIBIT: __C__**
**CLOSED**

✓ Submitted

| STATUS | PRODUCT | ISSUE |
|---|---|---|
| Submitted to the CFPB on 6/21/2025 | Debt collection | Written notification about debt |

## We received your complaint. Thank you.

We will review your complaint. Depending on what we find, we will typically:

- Send your complaint to the company for a response; or
- Send your complaint to another state or federal agency, or help you get in touch with your state or local consumer protection office; or
- Let you know if we need more information to continue our work.

---

**YOUR COMPLAINT**

I submitted a timely written dispute and request for full debt validation to Douglas L. Brooks, P.C., who is attempting to collect on an alleged consumer debt purportedly related to an account originated by First National Bank of Omaha (FNBO). My letter was sent via recorded mail and demanded strict proof of claim, including chain of title, contract, and authority to collect. Despite this formal dispute, no validation or documentation was provided. Nonetheless, a lawsuit was filed in Georgia Magistrate Court. At no time did the collector or law firm provide any evidence of ownership, transfer, or authority to enforce the alleged obligation. This violates the FDCPA, which prohibits continued collection activity–including lawsuits–until the debt is validated in response to a timely dispute. Based on public securitization records, it appears that FNBO securitized this alleged debt and may no longer be the creditor. No assignment or evidence of ownership has been produced. If the debt was sold or extinguished through securitization, the plaintiff lacks standing and is asserting a false claim. To ensure fair dealing and that Douglas L. Brooks, P.C. (Bar Number / ID: 283358), is upholding Federal Law, Georgia Rules of Professional Conduct under Part IV, Chapter 1 of the Bar Rules, and not engaging in... 1. False or misleading statements; 2. Making a claim without legal standing or ownership; 3. Attempting to enforce a debt known to be securitized or not owned without disclosure 4. Failing to provide meaningful debt validation upon demand; or 5. Using his status as Lawyer to intimidate or coerce payment without lawful authority I request production of the following records to both verify and validate his claim: 1. A Valid Assignment Agreement: Documentation showing that the Trust or its trustee assigned the specific account to the debt collector, either directly or through intermediaries. 2. Servicing or Collection Agreement: If the debt

collector is acting as an agent for the Trust, they must produce a servicing or collection agreement that explicitly authorizes them to collect on the Trust's behalf. 3. Chain of Title: A clear, unbroken chain of title from FNBO to First National Funding LLC, to the Trust, and finally to the debt collector, including all relevant assignments or transfers. 4. The Bill of Sale and all attachments with the Pooling and Servicing Agreement outlining ownership of the debt. 5. Copies of any notices or disclosures sent to me regarding the securitization of my debt. Consequently, I am filing this CFPB complaint against FNBO, as the original creditor, to demand full disclosure of account records, assert my equitable interest in the account and its receivables, and seek remedies for FNBO's non-compliance with federal and state consumer protection laws. I am asking FNBO to provide the following details: - Confirmation whether my credit card debt has been securitized and on what date. - Details of the securitization trust or entity that currently holds the debt and any parts of the indebtedness. - Documentation proving the chain of ownership from the original creditor through any securitization process to the current debt collector. - The Pooling and Servicing Agreement outlining ownership of the debt. - Copies of any notices or disclosures sent to me regarding the securitization of my debt. I understand the sensitivity and confidentiality of the requested information and assure you that this request is made solely for personal records and clarity on my financial obligations. This documentation is required to prove Douglas L. Brooks, P.C. (Bar Number / ID: 283358) and FNBO have the legal right to collect and enforce the debt. This action has caused me reputational harm, stress, and unnecessary legal expense. It appears to be a knowing attempt to collect on a debt that has been charged off and securitized without proper disclosure or legal authority. I dispute the entire debt and demand regulatory intervention. /s/ Kevin White

# EXHIBIT: ___C___

**ATTACHMENTS**

Douglas L
Brooks - FNBO -
Jun 20 2025 - 4-
58 PM.pdf (2.6
MB)

Credit -
FNB of
Omaha.pdf
(85.4 KB)

sec.gov_Archives_edgar_data_1171040_000110465925026494_tm251337d1_10k.pdf
(801.9 KB)

Hide full complaint ⊖

---

## What product or service is your complaint about?

| PRODUCT OR SERVICE | TYPE |
|---|---|
| Debt collection | Credit card debt |

---

## What type of problem are you having?

| ISSUE | TYPE OF ISSUE |
|---|---|
| Written notification about debt | Didn't receive enough information to verify debt |

**HAVE YOU ALREADY TRIED TO FIX THIS PROBLEM WITH THE COMPANY?**
Yes

**DID YOU REQUEST INFORMATION FROM THE COMPANY?**
No

---

## What happened?

**EXHIBIT:** **C**

I submitted a timely written dispute and request for full debt validation to Douglas L. Brooks, P.C., who is attempting to collect on an alleged consumer debt purportedly related to an account originated by First National Bank of Omaha (FNBO). My letter was sent via recorded mail and demanded strict proof of claim, including chain of title, contract, and authority to collect. Despite this formal dispute, no validation or documentation was provided. Nonetheless, a lawsuit was filed in Georgia Magistrate Court. At no time did the collector or law firm provide any evidence of ownership, transfer, or authority to enforce the alleged obligation. This violates the FDCPA, which prohibits continued collection activity—including lawsuits—until the debt is validated in response to a timely dispute. Based on public securitization records, it appears that FNBO securitized this alleged debt and may no longer be the creditor. No assignment or evidence of ownership has been produced. If the debt was sold or extinguished through securitization, the plaintiff lacks standing and is asserting a false claim. To ensure fair dealing and that Douglas L. Brooks, P.C. (Bar Number / ID: 283358), is upholding Federal Law, Georgia Rules of Professional Conduct under Part IV, Chapter 1 of the Bar Rules, and not engaging in... 1. False or misleading statements; 2. Making a claim without legal standing or ownership; 3. Attempting to enforce a debt known to be securitized or not owned without disclosure 4. Failing to provide meaningful debt validation upon demand; or 5. Using his status as Lawyer to intimidate or coerce payment without lawful authority I request production of the following records to both verify and validate his claim: 1. A Valid Assignment Agreement: Documentation showing that the Trust or its trustee assigned the specific account to the debt collector, either directly or through intermediaries. 2. Servicing or Collection Agreement: If the debt collector is acting as an agent for the Trust, they must produce a servicing or collection agreement that explicitly authorizes them to collect on the Trust's behalf. 3. Chain of Title: A clear, unbroken chain of title from FNBO to First National Funding LLC, to the Trust, and finally to the debt collector, including all relevant assignments or transfers. 4. The Bill of Sale and all attachments with the Pooling and Servicing Agreement outlining ownership of the debt. 5. Copies of any notices or disclosures sent to me regarding the securitization of my debt. Consequently, I am filing this CFPB complaint against FNBO, as the original creditor, to demand full disclosure of account records, assert my equitable interest in the account and its receivables, and seek remedies for FNBO's non-compliance with federal and state consumer protection laws. I am asking FNBO to provide the following details: - Confirmation whether my credit card debt has been securitized and on what date. - Details of the securitization trust or entity that currently holds the debt and any parts of the indebtedness. - Documentation proving the chain of ownership from the original creditor through any securitization process to the current debt collector. - The Pooling and Servicing Agreement outlining ownership of the debt. - Copies of any notices or disclosures sent to me regarding the securitization of my debt. I understand the sensitivity and confidentiality of the requested information and assure you that this request is made solely for personal records and clarity on my financial obligations. This documentation is required to prove Douglas L. Brooks, P.C. (Bar Number / ID: 283358) and FNBO have the legal right to collect and enforce the debt. This action has caused me reputational harm, stress, and unnecessary legal expense. It appears to be a knowing attempt to collect on a debt that has been charged off and securitized without proper disclosure or legal authority. I dispute the entire debt and demand regulatory intervention. /s/ Kevin White

☐ **I WANT THE CFPB TO PUBLISH THIS DESCRIPTION ON CONSUMERFINANCE.GOV SO THAT OTHERS CAN LEARN FROM MY EXPERIENCE.**

The CFPB will take steps to remove my personal information from this description but someone may still be able to identify me. Learn how it works. I consent to publishing this description after the CFPB has taken these steps.

## What would be a fair resolution to this issue?

If all the records requested from Douglas L. Brooks P.C. and FNBO are not produced; I respectfully request the CFPB order the following remedies for violations of FCRA, FDCPA, TILA, and Georgia consumer protection laws, including false statements, lack of standing, non-disclosure of securitization, failure to validate debt, and intimidation: 1. Restitution for Actual Damages: $20,000-$50,000 for increased borrowing costs, lost financial opportunities, and legal research expenses caused by false reporting and unverified collection attempts. 2. Statutory Damages: $2,000-$6,000 under FDCPA and FCRA for willful violations, including failure to validate the debt

6/30/25, 5:53 PM                                                Complaint Detail

after my April 29, 2025, demand letter and false credit reporting. 3. Punitive Damages: $50,000–
$100,000 to deter FNBO's and Douglas L. Brooks, P.C.'s willful misconduct, particularly
misrepresenting debt ownership and pursuing a potentially securitized debt without disclosure. 4.
Emotional Distress Damages: $10,000–$50,000 for stress and harm to my family's well-being
caused by ongoing false reporting and intimidation. 5. Equitable Relief: (a) Deletion of the
unverified FNBO account (ending in 0554) from all credit reports; (b) cessation of all collection
activities until full validation is provided; (c) disclosure of securitization records, including PSAs,
CUSIPs, and signed credit agreements; and (d) an injunction against further false reporting or
intimidation. 6. Civil Penalties: $50,000–$500,000 imposed on FNBO for ongoing violations, with
referrals to the FDIC, SEC, and DOJ for investigation of False Claims Act and RICO violations. 7.
Costs: Reimbursement for litigation expenses, including certified mail and legal research costs. I
reserve the right to pursue additional damages in court under FCRA, FDCPA, and Georgia law if
these violations are substantiated. All supporting documentation, including my April 29, 2025,
demand letter, credit report, and securitization details, are attached.

**3 attachments**

View uploaded documents by clicking on the file name. Documents that pass virus scanning are
typically available within 2 minutes of upload.

Douglas L Brooks - FNBO - Jun 20 2025 - 4-58 PM.pdf (2.6 MB)

Credit - FNB of Omaha.pdf (85.4 KB)

sec.gov_Archives_edgar_data_1171040_000110465925026494_tm251337d1_10k.pdf (801.9 KB

## What company is this complaint about?

**COMPANY INFORMATION**
Law Offices Douglas L. Brooks, P.C.

**INVOLVEMENT**
Debt Collector

**ACCOUNT NUMBER**

• • • • • • • • •            👁

**OTHER INFORMATION ABOUT THIS
COMPANY**
P.O. Box 8477
Atlanta, Georgia 31106
https://www.douglasbrookslaw.com/contact.us.html
404.442.9101

**COMPANY WHERE THE DEBT ORIGINALLY
CAME FROM**
FIRST NATIONAL BANK OF OMAHA

**INVOLVEMENT**
Creditor

**ACCOUNT NUMBER**

# EXHIBIT: __E__

• • • • • • • • • • • • • • •        👁

**OTHER INFORMATION ABOUT THIS
COMPANY**
**COMPLAINT ALSO SUBMITTED TO THIS
COMPANY?**
true

**ATTEMPTED TO FIX WITH THIS COMPANY?**
No

## What people are involved?

**YOUR CONTACT INFORMATION**
Kevin White

mindsatwork333@yahoo.com
770-530-0368

5480 Lacebark Pine Court Cumming, Georgia
30040 United States

**YOUR PREFERRED LANGUAGE**
English

**EXHIBIT: _E_**

**YOUR DEMOGRAPHIC INFORMATION**
**SERVICE DETAILS**
Branch: United States Army
Status: Veteran

---



## Sent to company

**STATUS**
Sent to company
on 6/21/2025

We've sent your complaint to the company, and we will let you know when they respond.

Their response should include the steps they took, or will take, to address your complaint.

Companies generally respond in 15 days. In some cases, the company will let you know their response is in progress and provide a final response in 60 days.

## Company responded

**STATUS**                          **RESPONSE TYPE**

Company responded on 6/30/2025      Closed with explanation

### Company's Response

June 30, 2025 Kevin White 5480 Lacebark Pine Court Cumming, GA 30040 Account Number (last 4 digits): 9937 CFPB Case Number: 250621-21732425 Dear Kevin White: I am writing you on behalf of FNBO in response to your complaint submitted to the Consumer Financial Protection Bureau (CFPB). We received the CFPB complaint on June 21, 2025. As we understand it, you expressed concern regarding debt validation requests sent to Douglas L. Brooks, P.C. and have questions about the ownership and securitization of your account. We appreciate you sharing your feedback with us and hope the information below will help to address your concerns. Our records show your MGM World Mastercard account was opened on January 27, 2023 and was

subsequently closed on November 26, 2024 due to delinquency. The account was charged of on March 31, 2025 and was forwarded to BQ & Associates for collection. BQ & Associates engaged Douglas L. Brooks, P.C., a law firm located in your area, to assist with the collection efforts. According to the enclosed Cardmember Agreement, Section 18 states: "We may transfer all or part of your account balance and account along with our rights and obligations under this Agreement to another person or entity." This provision allows for the assignment of accounts to third-party collection agencies or attorneys for collection purposes. Please note that while FNBO is the original creditor, we are not able to respond directly to validation requests addressed to third parties; however, we have notified our collection partner of your concerns to ensure they address your request for validation appropriately. We have forwarded your validation of debt request to BQ & Associates for review and have placed a hold on collection activities while this matter is being investigated. BQ & Associates can be reached at: BQ & Associates 14211 Arbor Street, Suite 100 Omaha, NE 68144 Phone: 800-887-4747 We regret any inconvenience you may have experienced. Thank you for giving us the opportunity to address your concerns. Sincerely, Donnay T. Office of the President FNBO, 1-855-290-9357 Enclosures (1) CC: Consumer Financial Protection Bureau

**ATTACHMENTS**

White Final.pdf
(186.3 KB)

# EXHIBIT: E



## Feedback requested

| STATUS | FEEDBACK DUE |
|---|---|
| Feedback requested on 6/30/2025 | 8/29/2025 |

## Provide feedback about the company's response

We welcome your feedback on how the company responded to your complaint. You will have 60 days from when the company responded to share your feedback. The CFPB will share your feedback responses with the company and use the information to help the CFPB's work with consumer complaints.

**Submit your feedback**



## Closed

The CFPB has closed your complaint.

Privacy Act Statement

OMB #3170-0011

Complaint Detail

Note on user experience

    Have a question? ¿Preguntas?

    (855) 411-2372                                    **EXHIBIT:  E**

    TTY/TTD: (855) 729-2372

    8 a.m. to 8 p.m. ET, Monday through Friday
    (except federal holidays). (https://www.opm.gov/policy-data-oversight/pay-leave/federal-
    holidays/#url=Overview)

    More than 180 languages available.

___

An official website of the United States Government



**EXHIBIT: <u>E</u>**

PO Box 3331, Stop 3147
Omaha, NE 68103-0331

June 30, 2025

Kevin White
5480 Lacebark Pine Court
Cumming, GA 30040

Account Number (last 4 digits): 9937
CFPB Case Number:  250621-21732425

Dear Kevin White:

I am writing you on behalf of FNBO in response to your complaint submitted to the Consumer Financial Protection Bureau (CFPB).  We received the CFPB complaint on June 21, 2025.

As we understand it, you expressed concern regarding debt validation requests sent to Douglas L. Brooks, P.C. and have questions about the ownership and securitization of your account. We appreciate you sharing your feedback with us and hope the information below will help to address your concerns.

Our records show your MGM World Mastercard account was opened on January 27, 2023 and was subsequently closed on November 26, 2024 due to delinquency. The account was charged off on March 31, 2025 and was forwarded to BQ & Associates for collection. BQ & Associates engaged Douglas L. Brooks, P.C., a law firm located in your area, to assist with the collection efforts.

According to the enclosed Cardmember Agreement, Section 18 states: "We may transfer all or part of your account balance and account along with our rights and obligations under this Agreement to another person or entity." This provision allows for the assignment of accounts to third-party collection agencies or attorneys for collection purposes.

Please note that while FNBO is the original creditor, we are not able to respond directly to validation requests addressed to third parties; however, we have notified our collection partner of your concerns to ensure they address your request for validation appropriately.

We have forwarded your validation of debt request to BQ & Associates for review and have placed a hold on collection activities while this matter is being investigated. BQ & Associates can be reached at:



PO Box 3331, Stop 3147
Omaha, NE 68103-0331

BQ & Associates
14211 Arbor Street, Suite 100
Omaha, NE 68144
Phone: 800-887-4747

**EXHIBIT: __E__**

We regret any inconvenience you may have experienced. Thank you for giving us the opportunity to address your concerns.

Sincerely,

Donnay T.
Office of the President
FNBO, 1-855-290-9357

Enclosures (1)

CC: Consumer Financial Protection Bureau

7/1/25, 8:49 PM                                          Complaint Detail

 An official website of the United States Government

 **Consumer Financial Protection Bureau** (https://www.consumerfinance.gov/)                    **EXHIBIT:  D**                    Start a new complaint

‹ All complaints (.)

# 250621-21731781
**CLOSED**

 ## Submitted

| STATUS | PRODUCT | ISSUE |
|---|---|---|
| Submitted to the CFPB on 6/21/2025 | Debt collection | Written notification about debt |

## We received your complaint. Thank you.

We will review your complaint. Depending on what we find, we will typically:

- Send your complaint to the company for a response; or
- Send your complaint to another state or federal agency, or help you get in touch with your state or local consumer protection office; or
- Let you know if we need more information to continue our work.

---

**YOUR COMPLAINT**

I submitted a timely written dispute and request for full debt validation to Douglas L. Brooks, P.C., who is attempting to collect on an alleged consumer debt purportedly related to an account originated by First National Bank of Omaha (FNBO). My letter was sent via recorded mail and demanded strict proof of claim, including chain of title, contract, and authority to collect. Despite this formal dispute, no validation or documentation was provided. Nonetheless, a lawsuit was filed in Georgia Magistrate Court. At no time did the collector or law firm provide any evidence of ownership, transfer, or authority to enforce the alleged obligation. This violates the FDCPA, which prohibits continued collection activity—including lawsuits—until the debt is validated in response to a timely dispute. Based on public securitization records, it appears that FNBO securitized this alleged debt and may no longer be the creditor. No assignment or evidence of ownership has been produced. If the debt was sold or extinguished through securitization, the plaintiff lacks standing and is asserting a false claim. To ensure fair dealing and that Douglas L. Brooks, P.C. (Bar Number / ID: 283358), is upholding Federal Law, Georgia Rules of Professional Conduct under Part IV, Chapter 1 of the Bar Rules, and not engaging in... 1. False or misleading statements; 2. Making a claim without legal standing or ownership; 3. Attempting to enforce a debt known to be securitized or not owned without disclosure 4. Failing to provide meaningful debt validation upon demand; or 5. Using his status as Lawyer to intimidate or coerce payment without lawful authority I request production of the following records to both verify and validate his claim: 1. A Valid Assignment Agreement: Documentation showing that the Trust or its trustee assigned the specific account to the debt collector, either directly or through intermediaries. 2. Servicing or Collection Agreement: If the debt

collector is acting as an agent for the Trust, they must produce a servicing or collection agreement that explicitly authorizes them to collect on the Trust's behalf. 3. Chain of Title: A clear, unbroken chain of title from FNBO to First National Funding LLC, to the Trust, and finally to the debt collector, including all relevant assignments or transfers. 4. The Bill of Sale and all attachments with the Pooling and Servicing Agreement outlining ownership of the debt. 5. Copies of any notices or disclosures sent to me regarding the securitization of my debt. Consequently, I am filing this CFPB complaint against FNBO, as the original creditor, to demand full disclosure of account records, assert my equitable interest in the account and its receivables, and seek remedies for FNBO's non-compliance with federal and state consumer protection laws. I am asking FNBO to provide the following details: - Confirmation whether my credit card debt has been securitized and on what date. - Details of the securitization trust or entity that currently holds the debt and any parts of the indebtedness. - Documentation proving the chain of ownership from the original creditor through any securitization process to the current debt collector. - The Pooling and Servicing Agreement outlining ownership of the debt. - Copies of any notices or disclosures sent to me regarding the securitization of my debt. I understand the sensitivity and confidentiality of the requested information and assure you that this request is made solely for personal records and clarity on my financial obligations. This documentation is required to prove Douglas L. Brooks, P.C. (Bar Number / ID: 283358) and FNBO have the legal right to collect and enforce the debt. This action has caused me reputational harm, stress, and unnecessary legal expense. It appears to be a knowing attempt to collect on a debt that has been charged off and securitized without proper disclosure or legal authority. I dispute the entire debt and demand regulatory intervention. /s/ Kevin White

**ATTACHMENTS**

Douglas L. Brooks - FNBO - Jun 20 2025 - 4-58 PM.pdf (2.6 MB)

Credit - FNB of Omaha.pdf (85.4 KB)

sec.gov_Archives_edgar_data_1171040_000110465925026494_tm251337d1_10k.pdf (801.9 KB)

Hide full complaint ⊖

## What product or service is your complaint about?

**PRODUCT OR SERVICE**
Debt collection

**TYPE**
Credit card debt

## What type of problem are you having?

**ISSUE**
Written notification about debt

**TYPE OF ISSUE**
Didn't receive enough information to verify debt

**HAVE YOU ALREADY TRIED TO FIX THIS PROBLEM WITH THE COMPANY?**
Yes

**DID YOU REQUEST INFORMATION FROM THE COMPANY?**
No

EXHIBIT: **D**

7/1/25, 8:49 PM                                      Complaint Detail

## What happened?                                    **EXHIBIT: D**

I submitted a timely written dispute and request for full debt validation to Douglas L. Brooks, P.C., who is attempting to collect on an alleged consumer debt purportedly related to an account originated by First National Bank of Omaha (FNBO). My letter was sent via recorded mail and demanded strict proof of claim, including chain of title, contract, and authority to collect. Despite this formal dispute, no validation or documentation was provided. Nonetheless, a lawsuit was filed in Georgia Magistrate Court. At no time did the collector or law firm provide any evidence of ownership, transfer, or authority to enforce the alleged obligation. This violates the FDCPA, which prohibits continued collection activity—including lawsuits—until the debt is validated in response to a timely dispute. Based on public securitization records, it appears that FNBO securitized this alleged debt and may no longer be the creditor. No assignment or evidence of ownership has been produced. If the debt was sold or extinguished through securitization, the plaintiff lacks standing and is asserting a false claim. To ensure fair dealing and that Douglas L. Brooks, P.C. (Bar Number / ID: 283358), is upholding Federal Law, Georgia Rules of Professional Conduct under Part IV, Chapter 1 of the Bar Rules, and not engaging in... 1. False or misleading statements; 2. Making a claim without legal standing or ownership; 3. Attempting to enforce a debt known to be securitized or not owned without disclosure 4. Failing to provide meaningful debt validation upon demand; or 5. Using his status as Lawyer to intimidate or coerce payment without lawful authority I request production of the following records to both verify and validate his claim: 1. A Valid Assignment Agreement: Documentation showing that the Trust or its trustee assigned the specific account to the debt collector, either directly or through intermediaries. 2. Servicing or Collection Agreement: If the debt collector is acting as an agent for the Trust, they must produce a servicing or collection agreement that explicitly authorizes them to collect on the Trust's behalf. 3. Chain of Title: A clear, unbroken chain of title from FNBO to First National Funding LLC, to the Trust, and finally to the debt collector, including all relevant assignments or transfers. 4. The Bill of Sale and all attachments with the Pooling and Servicing Agreement outlining ownership of the debt. 5. Copies of any notices or disclosures sent to me regarding the securitization of my debt. Consequently, I am filing this CFPB complaint against FNBO, as the original creditor, to demand full disclosure of account records, assert my equitable interest in the account and its receivables, and seek remedies for FNBO's non-compliance with federal and state consumer protection laws. I am asking FNBO to provide the following details: - Confirmation whether my credit card debt has been securitized and on what date. - Details of the securitization trust or entity that currently holds the debt and any parts of the indebtedness. - Documentation proving the chain of ownership from the original creditor through any securitization process to the current debt collector. - The Pooling and Servicing Agreement outlining ownership of the debt. - Copies of any notices or disclosures sent to me regarding the securitization of my debt. I understand the sensitivity and confidentiality of the requested information and assure you that this request is made solely for personal records and clarity on my financial obligations. This documentation is required to prove Douglas L. Brooks, P.C. (Bar Number / ID: 283358) and FNBO have the legal right to collect and enforce the debt. This action has caused me reputational harm, stress, and unnecessary legal expense. It appears to be a knowing attempt to collect on a debt that has been charged off and securitized without proper disclosure or legal authority. I dispute the entire debt and demand regulatory intervention. /s/ Kevin White

☐   **I WANT THE CFPB TO PUBLISH THIS DESCRIPTION ON CONSUMERFINANCE.GOV SO THAT OTHERS CAN LEARN FROM MY EXPERIENCE.**

The CFPB will take steps to remove my personal information from this description but someone may still be able to identify me. Learn how it works. I consent to publishing this description after the CFPB has taken these steps.

_____

## What would be a fair resolution to this issue?

If all the records requested from Douglas L. Brooks P.C. and FNBO are not produced; I respectfully request the CFPB order the following remedies for violations of FCRA, FDCPA, TILA, and Georgia consumer protection laws, including false statements, lack of standing, non-disclosure of securitization, failure to validate debt, and intimidation: 1. Restitution for Actual Damages: $20,000-$50,000 for increased borrowing costs, lost financial opportunities, and legal research expenses caused by false reporting and unverified collection attempts. 2. Statutory Damages: $2,000-$6,000 under FDCPA and FCRA for willful violations, including failure to validate the debt

Complaint Detail                           **EXHIBIT: <u>D</u>**

after my April 29, 2025, demand letter and false credit reporting. 3. Punitive Damages: $50,000–$100,000 to deter FNBO's and Douglas L. Brooks, P.C.'s willful misconduct, particularly misrepresenting debt ownership and pursuing a potentially securitized debt without disclosure. 4. Emotional Distress Damages: $10,000–$50,000 for stress and harm to my family's well-being caused by ongoing false reporting and intimidation. 5. Equitable Relief: (a) Deletion of the unverified FNBO account (ending in 0554) from all credit reports; (b) cessation of all collection activities until full validation is provided; (c) disclosure of securitization records, including PSAs, CUSIPs, and signed credit agreements; and (d) an injunction against further false reporting or intimidation. 6. Civil Penalties: $50,000–$500,000 imposed on FNBO for ongoing violations, with referrals to the FDIC, SEC, and DOJ for investigation of False Claims Act and RICO violations. 7. Costs: Reimbursement for litigation expenses, including certified mail and legal research costs. I reserve the right to pursue additional damages in court under FCRA, FDCPA, and Georgia law if these violations are substantiated. All supporting documentation, including my April 29, 2025, demand letter, credit report, and securitization details, are attached.

---

**3 attachments**

View uploaded documents by clicking on the file name. Documents that pass virus scanning are typically available within 2 minutes of upload.

---

Douglas L Brooks - FNBO - Jun 20 2025 - 4-58 PM.pdf (2.6 MB)

---

Credit - FNB of Omaha.pdf (85.4 KB)

---

sec.gov_Archives_edgar_data_1171040_000110465925026494_tm251337d1_10k.pdf (801.9 KB

## What company is this complaint about?          **EXHIBIT: <u>F</u>**

---

**COMPANY INFORMATION**
Law Offices Douglas L. Brooks, P.C.

**INVOLVEMENT**
Debt Collector

**ACCOUNT NUMBER**

•••••••••          👁

**OTHER INFORMATION ABOUT THIS COMPANY**
P.O. Box 8477
Atlanta, Georgia 31106
https://www.douglasbrookslaw.com/contact.us.html
404.442.9101

**COMPANY WHERE THE DEBT ORIGINALLY CAME FROM**
FIRST NATIONAL BANK OF OMAHA

**INVOLVEMENT**
Creditor

**ACCOUNT NUMBER**

••••••••••••••          👁

**OTHER INFORMATION ABOUT THIS COMPANY**

**COMPLAINT ALSO SUBMITTED TO THIS COMPANY?**
True

**ATTEMPTED TO FIX WITH THIS COMPANY?**
No

---

## What people are involved?

---

**YOUR CONTACT INFORMATION**
Kevin White

mindsatwork333@yahoo.com
770-530-0368

5480 Lacebark Pine Court Cumming, Georgia
30040 United States

**EXHIBIT:** __F__

**YOUR PREFERRED LANGUAGE**
English

**YOUR DEMOGRAPHIC INFORMATION**
**SERVICE DETAILS**
Branch: United States Army
Status: Veteran

---



## Sent to company

**STATUS**
Sent to company
on 6/30/2025

We've sent your complaint to the company, and we will let you know when they respond.

Their response should include the steps they took, or will take, to address your complaint.

Companies generally respond in 15 days. In some cases, the company will let you know their response is in progress and provide a final response in 60 days.

## Company responded

| **STATUS** | **RESPONSE TYPE** |
|---|---|
| Company responded on 7/1/2025 | Closed with explanation |

**EXHIBIT:** __F__

### Company's Response

Mr. White's dispute was received and although our records show it was addressed, we cannot find the proof of sending the validation at the time we received the dispute. Accordingly, we have sent the validation notice this week, and it is attached here. Mr. White is correct that the suit was filed in the Magistrate Court of Gwinnett County, Civil Action File No. 25MGC-3077 on June 11, 2025. We have not received confirmation of service of the suit on Mr. White. The suit itself contains information that satisfies with the validation requirements requested: the name of the original creditor, the cardmember agreement, etc. Our firm has calendared this matter so that no action will be taken in the 30 days after the validation was sent to Mr. White, so that we can

comply with Mr. White's request. The claim against Mr. White was never transferred. It has always been owned by our client, First National Bank of Omaha. The statements sent to Mr. White, and filed with the suit, clearly contain language stating the credit card is "Issued by First National Bank of Omaha (FNBO)." The cardmember agreement supports this as well. Mr. White attaches no evidence to support his allegations that FNBO has "securitized," or is no longer the creditor. Addressing Mr. White's additional requests: 1. There is no Assignment Agreement, and as stated before, FNBO owns this debt and always has. 2. There is no "Servicing or Collection Agreement," as Douglas L. Brooks, PC is acting as an attorney, not a servicer or collection agency. 3. There has been no assignment so there is no "chain of title." 4. For all these same reasons, there is also no Bill of Sale. 5. There are no documents in possession of Douglas L. Brooks, PC regarding securitization of the debt, and we have no knowledge of such documents or of any securitization.

**EXHIBIT: F**

**ATTACHMENTS**

| 29579 proof of debt pt1.pdf (2 MB) | BBQ 29579 FILE STAMPED EFILED PETITION.pdf (2.2 MB) | 29579 proof of debt pt2.pdf (2.6 MB) |
| --- | --- | --- |



## Feedback requested

| **STATUS** | **FEEDBACK DUE** |
| --- | --- |
| Feedback requested on 7/1/2025 | 8/30/2025 |

## Provide feedback about the company's response

We welcome your feedback on how the company responded to your complaint. You will have 60 days from when the company responded to share your feedback. The CFPB will share your feedback responses with the company and use the information to help the CFPB's work with consumer complaints.

**Submit your feedback**

## Closed

The CFPB has closed your complaint.

Privacy Act Statement

OMB #3170-0011

Note on user experience

Complaint Detail

Have a question? ¿Preguntas?

(855) 411-2372

TTY/TTD: (855) 729-2372

8 a.m. to 8 p.m. ET, Monday through Friday
(except federal holidays). (https://www.opm.gov/policy-data-oversight/pay-leave/federal-holidays/#url=Overview)

More than 180 languages available.

**EXHIBIT: <u>F</u>**

An official website of the United States Government

LAW OFFICES
# DOUGLAS L. BROOKS, P.C.

4 LENOX POINTE
ATLANTA, GEORGIA 30324-3167

MAILING ADDRESS:
POST OFFICE BOX 8477
ATLANTA, GEORGIA 31106

DOUGLAS L. BROOKS
ATTORNEY AT LAW

TELEPHONE 404.442.9101
FACSIMILE 404.442.9102
E-MAIL doug@douglasbrookslaw.com
WEBSITE www.douglasbrookslaw.com

June 25, 2025

**EXHIBIT:  F**

KEVIN WHITE
5480 LACEBARK PINE CT
CUMMING GA 30040-3611

Re:    Our Client:    FIRST NATIONAL BANK OF OMAHA
       Our File No. BBQ-29579
       Our Client's Reference: 5466179204199937

Dear KEVIN WHITE:

The undersigned and this law firm represent FIRST NATIONAL BANK OF OMAHA.

Per your request, enclosed is proof of the debt in the referenced matter.

This is an attempt to collect a debt, and any information obtained will be used for that purpose.

Very truly yours,

Douglas L. Brooks
For the Firm

# Cover Letter in Support of Judicial Notice – Exhibit G Only

**RE: Corporate Relationship and Securitization Structure — FNBO, FNNI, and First National Funding LLC**

This memorandum is submitted in support of **Exhibit G** and is intended to provide foundational context for the corporate and financial relationship between **First National Bank of Omaha ("FNBO")**, its parent holding company **First National of Nebraska, Inc. ("FNNI")**, and the affiliated depositor and sponsor entity **First National Funding LLC (CIK: 0001171040)**, in connection with the securitization of FNBO-issued credit card receivables.

## I. CORPORATE STRUCTURE

- **First National Bank of Omaha (FNBO)** is a nationally chartered bank and the primary banking subsidiary of **First National of Nebraska, Inc. (FNNI)**, a privately held financial holding company headquartered in Omaha, Nebraska.
- **FNNI** maintains full ownership and control of FNBO and its securitization activities.
- FNBO originates and services credit card accounts under its banking charter but operates within a layered securitization structure that bifurcates legal title from servicing obligations.

## II. SECURITIZATION MECHANISM

FNBO participates in structured finance transactions whereby credit card receivables are transferred and sold into asset-backed securitization vehicles. This process follows a standard multi-entity protocol involving affiliated parties:

1. **Origination**: FNBO issues credit cards and generates revolving receivables.
2. **Transfer to Depositor/Sponsor**: FNBO sells the receivables to **First National Funding LLC**, a bankruptcy-remote affiliate designated as the depositor and/or sponsor of the trust.
3. **Securitization Trust Formation**: First National Funding LLC transfers the receivables into a trust, typically styled as the *First National Master Note Trust*, which issues securities to investors secured by the receivable pools.

4. **Ongoing Servicing**: FNBO retains servicing duties under a Pooling and Servicing Agreement (PSA), collecting payments and administering accounts, but does not retain legal ownership of the receivables.

## III. RELEVANT SEC FILINGS AND CIK REGISTRANTS

- **First National Master Note Trust** – CIK: 0001396730
- **First National Funding LLC** – CIK: 0001171040
- **Sample Filing Referenced in Exhibit G**: Form 8-K – April 2023

These filings confirm that the receivables underlying FNBO credit card accounts have been conveyed into a securitization trust structure, and that any beneficial ownership or enforcement rights are held not by FNBO, but by the trustee or trust investors, as governed by the trust agreements and disclosure documents on file with the U.S. Securities and Exchange Commission.

## IV. PURPOSE OF EXHIBIT G

Exhibit G includes excerpts of federal securities filings and disclosures evidencing the existence, structure, and parties involved in the securitization of FNBO-issued credit card receivables. These materials are offered for judicial notice under Fed. R. Evid. 201(b)(2), as they are matters of public record, capable of accurate and ready determination from sources whose accuracy cannot reasonably be questioned.

This cover serves to orient the Court and parties to the significance of **Exhibit G** in illustrating that:

- FNBO is not the holder in due course of the receivables it originates;
- Enforcement authority and legal title are conveyed through structured finance mechanisms;
- Any purported claim by FNBO or its counsel is subject to challenge on standing and trust law grounds.

EX-4.8 8 d245061dex48.htm EX-4.8

EXHIBIT 4.8

## ASSET REPRESENTATIONS REVIEW AGREEMENT

among

**FIRST NATIONAL BANK OF OMAHA,**
as RPA Seller

**EXHIBIT: G**

**FIRST NATIONAL FUNDING LLC,**
as Transferor

**FIRST NATIONAL BANK OF OMAHA,**
as Servicer

**FIRST NATIONAL MASTER NOTE TRUST,**
as Issuer

and

**FTI CONSULTING, INC.,**
as Asset Representations Reviewer

Dated as of September 23, 2016

EX-4.7 7 d245061dex47.htm EX-4.7

## Exhibit 4.17 – Receivables Purchase Agreement (3 pages):

EXHIBIT 4.7



**Establishes the agreement's purpose and parties, setting the context for the sale and subsequent transfer to the Trust, which supports my claim that FNBO is not the owner.**

SECOND AMENDED AND RESTATED
RECEIVABLES PURCHASE AGREEMENT
Dated as of September 23, 2016

FIRST NATIONAL BANK OF OMAHA,
RPA Seller,

and

FIRST NATIONAL FUNDING LLC,
Purchaser

**EXHIBIT: G**

FIRST NATIONAL MASTER NOTE TRUST

**Exhibit 4.17 – Receivables Purchase Agreement (3 pages):**

**Page 1 (Cover Page):** Identifies the RPA and its role in transferring receivables to the Trust.
**Page 8 (Section 2.01(a)-(b)):** Confirms FNBO's sale of receivables to First National Funding LLC without recourse.
**Page 9 (Section 2.01(c)-(d)):** Details perfection and the Account Schedule requirement.

**Relevance:** Establishes FNBO's sale and the need for a schedule to prove debt inclusion.

such paragraph, subsection, clause or other subdivision of such Section or definition; (vii) the term "including" means "including without limitation"; (viii) references to any law or regulation refer to that law or regulation as amended from time to time and include any successor law or regulation; (ix) references to any Person include that Person's successors and assigns; and (x) headings are for purposes of reference only and shall not otherwise affect the meaning or interpretation of any provision hereof.

**ARTICLE II**    **EXHIBIT: G**

**SALE AND CONTRIBUTION OF RECEIVABLES**

**Section 2.01. Sales and Contributions**.

(a) In consideration of the membership interest in Purchaser held by RPA Seller, RPA Seller agrees to contribute, and does hereby contribute to Purchaser, and Purchaser agrees to accept, and does hereby accept, from RPA Seller on the Effective Date, $25,000,000 of Existing Assets. The Existing Assets not so contributed to Purchaser on the Effective Date are hereby sold, transferred, set over, assigned and otherwise conveyed by RPA Seller to Purchaser for a purchase price to be agreed to by RPA Seller and Purchaser, which purchase price shall be payable on the Effective Date and shall not be materially less favorable to RPA Seller than prices for transactions of a generally similar character taking into account the quality of such Existing Assets and other pertinent factors. The purchase price for the Existing Assets (other than Existing Assets contributed to Purchaser) shall be deemed to be a borrowing under the Subordinated Note. The contribution and sale of the Existing Assets from RPA Seller to Purchaser are subject in each case to any rights in the Existing Assets transferred, assigned, set over or otherwise conveyed to the Certificate Trust Trustee pursuant to the Existing PSA. It is understood and agreed that the obligations of RPA Seller specified herein with respect to the Receivables, including its repurchase obligations under Article VI of this Agreement, shall apply to all Receivables, whether originated before, on or after the Effective Date and whether sold or contributed hereunder. RPA Seller and Purchaser hereby agree that each existing Receivable sold by RPA Seller to the Certificate Trust pursuant to the Existing PSA before the Effective Date shall be deemed to have been sold by RPA Seller to Purchaser on the date on which it was so sold to the Certificate Trust.

(b) RPA Seller hereby transfers, assigns, sets over and otherwise conveys to Purchaser without recourse (except as expressly provided herein), and Purchaser purchases and/or accepts as a capital contribution, as applicable, from RPA Seller, all of RPA Seller's right, title and interest in and to the Receivables arising from time to time in the Accounts and Related Assets with respect thereto (other than the Existing Assets); provided, however, that Principal Receivables originated after the occurrence of an Insolvency Event with respect to RPA Seller or Purchaser shall not be conveyed hereunder.

5

**Exhibit 4.17 – Receivables Purchase Agreement (3 pages):**

**Page 8:** Confirms FNBO's sale of receivables to First National Funding LLC, relinquishing ownership. This shows that FNBO does not own the debt and that the debt collector must show Trust authorization.

**Section 2.01(a):** FNBO sells or contributes $25,000,000 of Existing Assets (including receivables) to the Purchaser on the Effective Date (October 24, 2002). The sale is without recourse except as provided, and the purchase price is deemed a borrowing under the Subordinated Note if not paid in cash. Receivables sold to the Certificate Trust before the Effective Date are deemed sold to the Purchaser.

**Section 2.01(b):** FNBO transfers all right, title, and interest in receivables arising in Accounts and Related Assets (e.g., collections, recoveries) to the Purchaser without recourse, except for Principal Receivables after an Insolvency Event.

(c) RPA Seller agrees (i) to record and file, at its own expense, financing statements (and continuation statements when applicable) with respect to the Receivables now existing and hereafter created, meeting the requirements of applicable state law in such manner and in such jurisdictions as are necessary to perfect, and maintain perfection of, the conveyance of the Receivables to Purchaser and the first priority nature of Purchaser's interest in the Receivables and (ii) to deliver a file-stamped copy of such financing statements or other evidence of such filings to Purchaser and Receivables Trust Trustee (which evidence may, for purposes of this Section 2.01, consist of telephone confirmation of such filing to Purchaser and Receivables Trust Trustee, followed by delivery of a file stamped copy to Receivables Trust Trustee with a copy to Purchaser as soon as is practicable after filing) on or prior to the Effective Date, and in the case of any continuation statements filed pursuant to this Section 2.01, as soon as practicable after receipt thereof by RPA Seller.

(d) RPA Seller further agrees, at its own expense, (i) on or prior to (A) the Effective Date, in the case of any Accounts designated to the Certificate Trust prior to such date (and not subsequently removed), (B) the applicable Addition Date, in the case of Additional Accounts and (C) the applicable Removal Date, in the case of Removed Accounts, to indicate in its appropriate computer files that Receivables created in connection with the Accounts (other than Removed Accounts) have been sold to Purchaser pursuant to this Agreement and transferred by Purchaser to the Receivables Trust pursuant to the applicable Transfer Agreement for the benefit of the Holders (or conveyed to the Transferor or its designee in accordance with Section 2.09 of the Pooling and Servicing Agreement or Section 2.07 of the Transfer and Servicing Agreement, as the case may be, in the case of Removed Accounts) by including in such computer files a code so identifying each such Account (or, in the case of Removed Accounts, deleting such code) and (ii) on or prior to the Effective Date to deliver to Purchaser and Receivables Trust Trustee a computer file or microfiche list specifying for each such Account designated to the Receivables Trust prior to such date (and not subsequently removed), as of the most recent calendar month end, its account number, the aggregate amount outstanding in such Account and the aggregate amount of Principal Receivables outstanding in such Account (the "Account Schedule"). The Account Schedule shall be supplemented from time to time to reflect Additional Accounts and Removed Accounts and shall be in the form of a computer file or tape, hard copy, compact disc or other tangible medium acceptable to Purchaser and Receivables Trust Trustee. Once the code referenced in clause (i) of this paragraph has been included with respect to any Account, RPA Seller further agrees not to alter such code during the term of this Agreement unless and until (x) such Account becomes a Removed Account or (y) RPA Seller shall have delivered to Purchaser, Receivables Trust Trustee and Owner Trustee at least 30 days' prior written notice of its intention to do so and has taken such action as is necessary or advisable to cause the respective interests of Purchaser and Receivables Trust Trustee in the Receivables and other Trust Assets to continue to be perfected with the priority required by this Agreement and the applicable Transfer Agreement, respectively.

(e) It is the intention of the parties hereto that the conveyances of the Existing Assets, the Receivables and the other Related Assets by RPA Seller to Purchaser

6

# EXHIBIT: G

---

**Exhibit 4.17 – Receivables Purchase Agreement (3 pages):**

**Page 9:** Establishes the need for a specific Account Schedule to prove the alleged debt's inclusion in the sold receivables, challenging the debt collector's lack of evidence. The perfection requirement reinforces the legal transfer.

**Section 2.01(c):** FNBO must record and file financing statements to perfect the Purchaser's interest in the receivables, delivering file-stamped copies to the Purchaser and Receivables Trust Trustee.

**Section 2.01(d):** FNBO must indicate in its computer files that receivables in designated Accounts are sold to the Purchaser and transferred to the Trust, using a code. FNBO delivers an Account Schedule (computer file or tangible medium) listing each Account's number, outstanding balance, and Principal Receivables, updated for Additional or Removed Accounts.

**Prospectus for Series 2025-1 (Accession No. 0001104659-25-012228), Pages 15,16,19,20, & 120**

The applicable transferor or co-transferor that was party to the pooling and servicing agreement continued to transfer additional receivables generated in those accounts, and from time to time designated additional accounts, to First Bankcard Master Credit Card Trust until the October 2002 amendment to the pooling and servicing agreement. The amendment, among other things, designated us as the transferor replacing the bank. At the same time, we entered into a receivables purchase agreement with the bank whereby the bank designated some eligible accounts to us and transferred the receivables created in the accounts after the date of the agreement to us. Under the receivables purchase agreement, the bank will, from time to time, designate additional accounts to us and transfer additional receivables to us and will also occasionally remove accounts previously designated. Under the amended pooling and servicing agreement, in our capacity as transferor, we transferred all receivables sold to us by the bank under the receivables purchase agreement dated October 24, 2002 to the trust and designated to the trust all accounts designated to us by the bank. The receivables purchase agreement was amended and restated, in its entirety, by a first amended and restated receivables purchase agreement on December 20, 2012 and the first amended and restated receivables purchase agreement has been amended and restated, in its entirety, by a second amended and restated receivables purchase agreement on September 23, 2016. For the purposes of this prospectus, all references to the receivables purchase agreement mean the second amended and restated receivables purchase agreement.

First Bankcard Master Credit Card Trust issued a collateral certificate representing an interest in the receivables and the other assets of First Bankcard Master Credit Card Trust to us. We transferred the collateral certificate to the issuing entity, and the issuing entity transferred the collateral certificate to the indenture trustee as collateral for the notes issued by the trust. The collateral certificate was the initial primary asset of the trust.

Upon the termination of First Bankcard Master Credit Card Trust, we and the trustee transferred all of our right, title and interest in and to the receivables and other assets of First Bankcard Master Credit Card Trust to the indenture trustee, as the assignee of the collateral certificate. Upon its receipt of the assets of First Bankcard Master Credit Card Trust, the indenture trustee surrendered the collateral certificate to the registrar and paying agent under the pooling and servicing agreement for cancellation. All of the respective obligations of the servicer, the trustee and us under the pooling and servicing agreement and the collateral series supplement, respectively, were terminated on December 18, 2008 except for certain obligations of the servicer and us that expressly survive the termination of the pooling and servicing agreement and the collateral series supplement. See *"Description of the Notes—Matters Regarding the Depositor and the Servicer"* in this prospectus.

# EXHIBIT: G

The bank will continue to own the accounts that are designated to the trust.

The notes will represent the right to payments from a portion of collections on the credit card receivables held by the trust.

In addition, a portion of certain fees payable by VISA and MasterCard to the bank, which are attributable to cardholder charges for merchandise and services, known as interchange, will be treated as collections of finance charge receivables.

All new receivables generated in the designated accounts will be automatically transferred to the trust. The total amount of receivables held by the trust will fluctuate daily as new receivables are generated and payments are received on existing receivables.

The bank continues to service the receivables that are transferred to the trust pursuant to a transfer and servicing agreement dated October 24, 2002, among us, the bank, as servicer and the trust. On December 20, 2012, the transfer and servicing agreement was amended and restated, in its entirety, by a first amended and restated transfer and servicing agreement and on September 23, 2016, the first amended and restated transfer and servicing agreement was amended and restated, in its entirety, by the second amended and restated transfer and servicing agreement. For the purposes of this prospectus, all references to the transfer and servicing agreement mean the second amended and restated transfer and servicing agreement.

In addition, the bank acts as the trust's administrator pursuant to an administration agreement dated October 24, 2002, between the bank and the trust. On December 20, 2012, the administration agreement was amended and restated, in its entirety, by a first amended and restated administration agreement and on September 23, 2016, the first amended and restated trust agreement was amended and restated, in its entirety, by a second amended and restated administration agreement. For the purposes of this prospectus, all references to the administration agreement mean the second amended and restated administration agreement.

2

**Page 15: Outlines the Securitization Chain (FNBO → First National Funding LLC → Trust, with FNBO as Servicer)**

**Note: Explicitly outlines the transfer from FNBO to First National Funding LLC to the Trust and FNBO's limited servicer role, critical for proving FNBO's non-ownership and the need for Trust authorization.**

# EXHIBIT: G

The trust has granted a security interest in the receivables and its other assets to the indenture trustee for the benefit of the noteholders and any credit enhancement provider.

## Summary of Terms

| | |
|---|---|
| *Issuing Entity/Trust:* | First National Master Note Trust |
| *Depositor/Securitizer:* | First National Funding LLC |
| *Sponsor/Originator/Bank/Servicer:* | First National Bank of Omaha |
| *Administrator:* | First National Bank of Omaha |
| *Indenture Trustee:* | U.S. Bank Trust Company, National Association |
| *Owner Trustee:* | Wilmington Trust Company |
| *Asset Representations Reviewer:* | FTI Consulting, Inc. |
| *Expected Closing Date:* | February 19, 2025 |
| *Clearance and Settlement:* | DTC/Clearstream/Euroclear |
| *Servicing Fee Rate:* | 2% per annum |
| *Initial Collateral Amount:* | $512,822,000 |
| *Primary Assets of the Issuing Entity:* | Receivables originated in VISA® and MasterCard® revolving credit card accounts owned by First National Bank of Omaha. |
| *Offered Notes:* | The Class A notes are offered by this prospectus. |

### Series 2025-1

| Class | Amount | % of Series 2025-1 notes |
|---|---|---|
| Class A notes | $ 400,000,000 | 78.00% |
| Class B notes | $ 53,847,000 | 10.50% |
| Class C notes | $ 58,975,000 | 11.50% |
| Total | $ 512,822,000 | 100.00% |

3

---

**Prospectus for Series 2025-1 (Accession No. 0001104659-25-012228), Pages 15,16,19,20, & 120**

**Page 16: Identifies U.S. Bank Trust Company, National Association as the Indenture Trustee, responsible for managing Trust assets, including receivables, for note holders. This supports your demand that the debt collector show authorization from the Indenture Trustee.**

**Page 19: Confirms the Trust's structure as a Delaware statutory trust that owns the receivables and issues notes secured by them, reinforcing that the Trust, not FNBO, is the owner. Provides specific portfolio statistics, showing the Trust holds 2,279,289 accounts with $2.8 billion in receivables underscoring the need for an Account Schedule to verify the alleged debt's inclusion in the Trust's portfolio.**

**Relevance: Establishes the Trust's legal structure and the Indenture Trustee's role, requiring any debt collector to provide proof of authority from U.S. Bank Trust Company. Details account characteristics, implying a formal designation process (via an Account Schedule, as per Exhibit 4.17, Page 9), reinforcing that the debt collector must provide this schedule to prove the debt's inclusion.**

**The Issuing Entity**

The notes will be issued by <u>First National Master Note Trust, a Delaware statutory trust,</u> which is referred to in this prospectus as the issuing entity or the trust. The notes will be issued under an indenture supplement to the indenture, each between the issuing entity and the indenture trustee.

The indenture trustee is U.S. Bank Trust Company, National Association.

**Asset Representations Reviewer**

FTI Consulting, Inc., a Maryland corporation, is the asset representations reviewer. For additional information about the asset representations reviewer, see "*Asset Representations Reviewer*" in this prospectus.

**Collateral for the Notes**

The notes are secured by a pool of receivables that arise under First National Bank of Omaha's VISA and MasterCard revolving credit card accounts and other assets that the issuer has pledged as collateral for all series of notes issued by the issuing entity under the indenture. The amount of collateral allocated to support your series of notes is equal to the collateral amount for your series. For a description of the collateral amount relating to your series of notes, see "—*Allocations of Collections and Losses*" in this prospectus.

The bank has designated eligible accounts from its portfolio of VISA and MasterCard credit card accounts and has transferred the receivables in those accounts either directly to First Bankcard Master Credit Card Trust or to us. On December 18, 2008, First Bankcard Master Credit Card Trust was terminated and the receivables in the accounts that were originally transferred by the bank to First Bankcard Master Credit Card Trust were transferred to the trust. We transfer the receivables sold to us by the bank to the trust under the transfer and servicing agreement. We refer to the accounts that have been designated as trust accounts, as the trust portfolio.

The receivables in the trust portfolio as of November 30, 2024 were approximately as follows:

- total receivables: $2,800,164,463;

- principal receivables: $2,758,041,831;

- finance charge receivables: $42,122,632; and

- total accounts designated to the trust: 2,279,289.

**EXHIBIT: G**

As of November 30, 2024,

- The accounts designated for the trust portfolio had an average receivable balance of $1,229 and a weighted average credit limit of $19,170;

- The percentage of the aggregate total receivable balance to the aggregate total credit limit was 10.03%; and

- The weighted average age of the accounts was approximately 13.36 years.

**Addition of Assets to the Trust**

When an account has been designated as a trust account, <u>First National Bank of Omaha (sometimes referred to hereinafter as to the bank) continues to own the account, but we buy all receivables</u> existing at the time of designation or created later and transfer them to the trust. The bank has the option to designate additional accounts, which must meet the criteria for eligible accounts described in the definition of "Eligible Account" in the "*Glossary of Terms for Prospectus*" in this prospectus, to be included as trust accounts from time to time. If the volume of additional accounts designated exceeds specified periodic limitations, then additional new accounts can only be designated if the Rating Agency Condition is satisfied.

6

See "*Description of the Notes—Addition of Trust Assets*" in this prospectus for a more detailed description of these and other limitations on our ability to designate additional accounts. In addition, the bank is required to designate additional accounts as trust accounts if the amount of principal receivables held by the trust falls below a specified minimum or if the average transferor interest falls below the minimum transferor interest for any monthly period, as more fully described in "*Description of the Notes—Addition of Trust Assets*" in this prospectus.

**Removal of Assets from the Trust**                    # EXHIBIT: G

*Optional Removals*

We have the right to remove accounts from the list of designated accounts and to require the reassignment to us or our designee of all receivables in the removed accounts under two circumstances. First, we may remove accounts and reassign the receivables in the removed accounts to us or our designee provided the removal will not cause a pay-out event to occur for any series and the Rating Agency Condition is satisfied. Second, we may remove accounts and reassign the receivables in the removed accounts to a third party to the extent the removed accounts arose pursuant to a private-label, agent bank, co-branding or other similar contractual arrangement with such third party and the contractual arrangement, by its terms, gives such third party the right to repurchase the accounts upon the cancellation of the arrangement or the expiration of the arrangement without renewal and such third party exercises its right to repurchase the accounts. See "*Description of the Notes—Removal of Accounts*" and "*Risk Factors—Changes in, or termination of, a material co-branding or agent bank arrangement may affect the performance of the trust receivables and cardholder usage and, consequently, the timing and amount of payments on your series*" in this prospectus.

*Required Removals*

We are required to accept a reassignment of receivables from the trust if either we, the servicer, a responsible officer of the owner trustee or the indenture trustee discover that the receivables did not satisfy eligibility requirements in some material respect at the time that we transferred them to the trust, and the ineligibility results in a charge-off or an impairment of the trust's rights in the receivables or their proceeds. Except under limited circumstances, there will be a 60 day cure period. Similarly, the servicer will be required to purchase receivables from the trust if the servicer fails to satisfy any of its obligations in connection with the transferred receivables or trust accounts and such failure results in a material impairment of the receivables or subjects their proceeds to a conflicting lien. These reassignment and purchase obligations and applicable cure periods are more fully described in "*Description of the Notes—Representations and Warranties*" and "*Description of the Notes—Servicer's Representations, Warranties and Covenants*" in this prospectus.

**Review of the Pool Assets**

We have performed a review of the receivables in the trust portfolio and the disclosure required to be included in this prospectus relating to Item 1111 of Regulation AB. This review was designed and effected to provide us with reasonable assurance that the disclosure relating to the receivables in this prospectus is accurate in all material respects. For additional information, see "*Annex I: Review of Pool Asset Disclosure*" included at the end of this prospectus.

**Other Claims on the Receivables**

*Other Series of Notes*

The trust has issued other series of notes and may issue other series of notes from time to time in the future. A summary of the series of notes expected to be outstanding on the closing date is in "*Annex II: Other Securities Outstanding*" included at the end of this prospectus. Neither you nor any other noteholder will have the right to consent to the issuance of future series of notes.

7

**Prospectus for Series 2025-1 (Accession No. 0001104659-25-012228), Pages 15,16,19,20, & 120**
Page 20: Only eligible receivables are owned by the Trust, and ineligible ones revert to FNBO via repurchase. Chain of title is required to determine if the debt is FNBO or Trust-owned, invalidating collection efforts without proof of ownership.

# EXHIBIT: G

In general, the indenture trustee will enforce the rights and remedies of the holders of accelerated notes. However, noteholders will have the right to institute any proceeding with respect to the indenture if the following conditions are met:

- the noteholder or noteholders have previously given the indenture trustee written notice of a continuing event of default;

- the noteholders representing not less than 25% of the then-outstanding principal balance of each affected series have made a written request of the indenture trustee to institute a proceeding as indenture trustee;

- the noteholders offer to the indenture trustee indemnification satisfactory to it against the costs, expenses and liabilities of instituting a proceeding;

- the indenture trustee has not instituted a proceeding within 60 days after receipt of the request and offer of indemnification; and

- during the 60-day period following receipt of the written request and offer of indemnification, no direction inconsistent with the request has been given by noteholders representing more than 25% of the then-outstanding principal balance of the notes of each affected series.

If the indenture trustee receives conflicting or inconsistent requests and indemnity from two or more groups of noteholders of any affected series, each representing no more than 50% of the then-outstanding principal balance of that series, the indenture trustee in its sole discretion may determine what action, if any, will be taken, notwithstanding any other provisions of the indenture. The indenture trustee will not be deemed to have knowledge of an event of default unless a responsible officer of the indenture trustee has actual knowledge of or written notice of such event of default.

Each holder of a note will have an absolute and unconditional right to receive payment of the principal of and interest in respect of that note as principal and interest become due and payable, and to institute suit for the enforcement of any payment of principal and interest then due and payable and those rights may not be impaired without the consent of that noteholder.

If any series of notes has been accelerated following an event of default, and the indenture trustee has not received any valid directions from those noteholders relating to the time, method and place for conducting any proceeding for any remedy available to the indenture trustee with respect to such series, the indenture trustee may, but is not required to, elect to maintain possession of the portion of the trust assets that secures those notes and apply distributions on the trust assets to make payments on those notes to the extent funds are available.

Subject to the provisions of the indenture relating to the duties of the indenture trustee, if any series of notes has been accelerated following an event of default, the indenture trustee may:

- institute proceedings in its own name and as trustee for the collection of all amounts then payable on the notes of the affected series or under the indenture with respect to such series; or

- take any other appropriate action to protect and enforce the rights and remedies of the indenture trustee and the noteholders of the affected series.

Subject to the conditions described in the following sentence, the indenture trustee also may cause the trust to sell principal receivables in an amount equal to the collateral amount for the series of accelerated notes, together with related finance charge receivables. Before exercising this remedy, the indenture trustee must receive an opinion of counsel to the effect that exercise of this remedy complies with applicable federal and state securities laws and one of the following conditions must be satisfied:

- receipt by the indenture trustee of the consent of all noteholders of the affected series;



101

---

**Prospectus for Series 2025-1 (Accession No. 0001104659-25-012228), Pages 15,16,19,20, & 120**

Page 120: Confirms that the Trust's receivables are pledged to noteholders, with U.S. Bank Trust Company, National Association, as Indenture Trustee, controlling collections and remedies (Paragraphs 1-4). This, with Page 15 (securitization chain), Exhibit 4.17 (Pages 8-9, FNBO's sale), and Exhibit 4.14 (Page 10, absolute sale), proves FNBO does not own the alleged debt. Douglas L. Brooks, P.C. has failed to provide an Account Schedule (Page 19) or Trustee authorization, violating FDCPA (15 U.S.C. § 1692e) and GFBPA (O.C.G.A. § 10-1-393) by attempting unauthorized collection."

EX-4.4

## Exhibit 4.14 – Transfer and Servicing Agreement (3 pages)

ARTICLE II               **EXHIBIT: G**

### CONVEYANCE OF RECEIVABLES

**Section 2.01. Conveyance of Receivables.**

(a) Transferor does hereby transfer, assign, set over and otherwise convey to Issuer, without recourse except as provided herein, all its right, title and interest in, to and under (A) the Receivables existing at the opening of business on the Certificate Trust Termination Date, and thereafter created from time to time until the termination of Issuer, all Collections and Recoveries allocable to Issuer as provided herein and the right to any Enhancement with respect to any Series, in each case together with all monies due or to become due and all amounts received or receivable with respect thereto and all proceeds thereof and Insurance Proceeds relating thereto and (B) without limiting the generality of the foregoing or the following, all of Transferor's rights, remedies, powers and privileges under the Receivables Purchase Agreement and (C) all proceeds of any of the foregoing. Such property, together with all monies and other property credited to the Collection Account, the Series Accounts and the Excess Funding Account (including any subaccounts of any such account) and the rights of Issuer under this Agreement and the Trust Agreement shall constitute the assets of Issuer (the "Trust Assets"). The foregoing does not constitute and is not intended to result in the creation or assumption by Issuer, Owner Trustee, Indenture Trustee or any Noteholder of any obligation of any Credit Card Originator, Servicer, Transferor or any other Person in connection with the Accounts or the Receivables or under any agreement or instrument relating thereto, including any obligation to Obligors, clearance systems or insurers.

(b) Transferor agrees to record and file, at its own expense, financing statements (and continuation statements when applicable) with respect to the Receivables conveyed by Transferor existing on the Certificate Trust Termination Date and thereafter created meeting the requirements of applicable state law in such manner and in such jurisdictions as are necessary to perfect, and maintain the perfection of, the transfer and assignment of its interest in such Receivables to Issuer, and to deliver a file stamped copy of each such financing statement or other evidence of such filing (which may, for purposes of this Section 2.01 consist of telephone confirmation of such filing promptly followed by delivery to Owner Trustee of a file-stamped copy) to Owner Trustee as soon as practicable after the Certificate Trust Termination Date, and (if any additional filing is so necessary) as soon as practicable after the applicable Addition Date, in the case of Receivables arising in any Additional Accounts. Owner Trustee shall be under no obligation whatsoever to file such financing or continuation statements or to make any other filing under the UCC in connection with such transfer and assignment.

(c) Transferor further agrees, at its own expense, (i) on or prior to (w) the Certificate Trust Termination Date, (x) the applicable Addition Date, in the case of Additional Accounts and (y) the applicable Removal Date, in the case of Removed Accounts, to indicate in the appropriate computer files that Receivables created (or reassigned, in the case of Removed Accounts) in connection with the Accounts owned by FNBO have been conveyed to Issuer pursuant to this Agreement (or conveyed to

4

---

### Exhibit 4.14 – Transfer and Servicing Agreement (3 pages)

**Pages 8-9 (Section 2.01(a)-(c)):** Detail First National Funding LLC's transfer of receivables to the Trust without recourse and perfection requirements.

**Relevance:** Proves the Trust's ownership, requiring a pool schedule for debt inclusion.

Transferor or its designee in accordance with Section 2.07, in the case of Removed Accounts) by including in such computer files the code identifying each such Account (or, in the case of Removed Accounts, either by including a code identifying the Removed Accounts or by deleting the code identifying such Account) and (ii) on and prior to the Certificate Trust Termination Date, to deliver to Issuer an initial account schedule, specifying for each such Account, as of the most recent calendar month end, its account number and, the aggregate amount outstanding in such Account and the aggregate amount of Principal Receivables outstanding in such Account (the "Account Schedule"). Such Account Schedule, as supplemented from time to time to reflect Additional Accounts and Removed Accounts, shall be in the form of a computer file or tape, hard copy, compact disc or other tangible medium that is acceptable to Transferor and Issuer and shall be marked as Schedule 1 to this Agreement and is hereby incorporated into and made a part of this Agreement. Once the code referenced in clause (i) of this paragraph has been included with respect to any Account, Transferor further agrees not to alter such code during the remaining term of this Agreement unless and until (A) such Account becomes a Removed Account, or (B) Transferor shall have delivered to Issuer at least 30 days' prior written notice of its intention to do so and has taken such action as is necessary or advisable to cause the interest of Issuer in the Receivables and the other Trust Assets to continue to be perfected with the priority required by this Agreement.

(d) The parties intend that the transfer made herein shall be deemed to be a sale, but if, and to the extent that, such transfer is not deemed to be a sale, Transferor shall be deemed to have granted, and does hereby so grant, to Issuer, effective on the Certificate Trust Termination Date, a first priority perfected security interest in all of Transferor's right, title and interest, whether owned on the Certificate Trust Termination Date or thereafter acquired, in, to and under the Receivables and the other Trust Assets conveyed by Transferor, and all money, accounts, general intangibles, chattel paper, instruments, documents, goods, investment property, deposit accounts, certificates of deposit, letters of credit and advices of credit consisting of, arising from or related to the Trust Assets, to secure Transferor's obligations hereunder, and that this Agreement shall constitute a security agreement under applicable law.

(e) On or prior to each Determination Date, Transferor shall cause FNBO to notify Servicer of the amount of Interchange to be included as Collections of Finance Charge Receivables allocable to the Accounts with respect to the Related Monthly Period, which amount shall be equal to the product of:

(i) the total amount of Interchange paid or payable to FNBO with respect to such Related Monthly Period; and

(ii) a fraction the numerator of which is the volume during the Related Monthly Period of sales net of cash advances on the Accounts and the denominator of which is the amount of sales net of cash advances during the Related Monthly Period on all VISA and MasterCard accounts owned by FNBO.

5

# EXHIBIT: G

**Exhibit 4.14 – Transfer and Servicing Agreement (3 pages)**

**Page 9 (Section 2.01(d)):** Confirms the transfer is an absolute sale, not a security interest. The Second Amended and Restated Transfer and Servicing Agreement confirms the transfer of receivables to the First National Master Note Trust is an absolute sale, meaning neither FNBO nor First National Funding LLC retains ownership.
**Relevance:** Confirms the transfer to the Trust is an absolute sale, divesting First National Funding LLC of ownership

**Page 9 (Section 2.01(e)):** Shows FNBO's role as Servicer, not owner, in managing collections for the Trust. It reinforces that FNBO's involvement is limited to servicing duties, and any collections must be remitted to the Trust, further supporting the need to prove Trust authorization.
**Relevance:** Confirms FNBO's servicer role

On each Transfer Date, Transferor shall pay to Servicer, or cause FNBO to pay to Servicer, and Servicer shall deposit into the Collection Account for each outstanding Series, in immediately available funds, each Series pro rata share of such Interchange, as specified in the applicable Indenture Supplement.

**Section 2.02. Acceptance by Issuer.**

(a) Issuer hereby acknowledges its acceptance of all right, title and interest to the property, now existing and hereafter created, conveyed to Issuer pursuant to Section 2.01. Owner Trustee shall maintain a copy of Schedule 1, as delivered to it from time to time, at its Corporate Trust Office and the Indenture Trustee shall maintain a copy of Schedule 1, as delivered to it from time to time, at its Corporate Trust Office.

(b) Owner Trustee hereby agrees not to disclose to any Person any of the account numbers or other information contained in the Account Schedule marked as Schedule 1 and delivered to Owner Trustee or Issuer, from time to time, except (i) to a Successor Servicer or as required by a Requirement of Law applicable to Owner Trustee, (ii) in connection with the performance of Owner Trustee's or Issuer's duties hereunder, (iii) to Indenture Trustee in connection with its duties in enforcing the rights of Noteholders or (iv) to bona fide creditors of Servicer or Transferor for the limited purpose of enabling any such creditor to identify Receivables or Accounts subject to this Agreement or the Receivables Purchase Agreement. Owner Trustee agrees (i) to take such measures as shall be reasonably requested by Transferor to protect and maintain the security and confidentiality of such information and, in connection therewith, shall allow Transferor or its duly authorized representatives to inspect Owner Trustee's security and confidentiality arrangements as they specifically relate to the administration of Issuer from time to time during normal business hours upon prior written notice and (ii) not to use any Account Schedule information to compete, directly or indirectly, with Transferor or FNBO. Owner Trustee shall promptly notify Transferor of any request received by Owner Trustee to disclose information of the type described in this Section 2.02(b), which notice shall in any event be provided no later than five (5) Business Days prior to disclosure of any such information unless Owner Trustee is compelled pursuant to a Requirement of Law to disclose such information prior to the date that is five (5) Business Days after the giving of such notice.

(c) Indenture Trustee hereby agrees not to disclose to any Person any of the account numbers or other information contained in the Account Schedule marked as Schedule 1 and delivered to Indenture Trustee, from time to time, except (i) to a Successor Servicer or as required by a Requirement of Law applicable to Indenture Trustee, (ii) in connection with the performance of Indenture Trustee's duties hereunder or any other Transaction Document to which it is a party, including its duties in enforcing the rights of Noteholders, or (iii) to bona fide creditors of Servicer or Transferor for the limited purpose of enabling any such creditor to identify Receivables or Accounts subject to this Agreement or the Receivables Purchase Agreement. Indenture Trustee agrees (i) to take such measures as shall be reasonably requested by Transferor to protect and maintain the security and confidentiality of such information and, in connection therewith, shall allow Transferor or its duly authorized representatives to inspect

6

---

**Exhibit 4.14 – Transfer and Servicing Agreement (3 pages)**

**Page 10:** The Account Schedule is critical for proving whether the alleged debt is part of the Trust's 2,279,289 accounts (Prospectus Page 19). The debt collector's failure to provide this schedule suggests they lack evidence of the debt's inclusion, undermining their collection authority. This ties to Exhibit 4.17, Page 9 (Section 2.01(d)), which also requires an Account Schedule, and supports claim of FDCPA and GFBPA violations for unverified collection attempts. restrictions imply that any debt collector must be explicitly authorized by the Trust (e.g., as a creditor or assignee) to access or act on Schedule 1 data. If Law Offices Douglas L. Brooks, P.C. cannot produce the schedule or an assignment agreement from the Indenture Trustee, their collection efforts are likely unauthorized, potentially constituting false representations (FDCPA) or deceptive practices (GFBPA). This aligns with Prospectus Page 120, which details the Indenture Trustee's control over Trust assets.

**Section 2.02(a):** Specifies that the Owner Trustee and Indenture Trustee maintain copies of the Account Schedule (Schedule 1), which lists the accounts and receivables transferred to the Trust.

**Section 2.02(b)-(c):** Restrict disclosure of Schedule 1's information (e.g., account numbers) to limited parties, such as "bona fide creditors" for identifying receivables, under strict confidentiality measures and imposes confidentiality obligations on the Owner Trustee and Indenture Trustee, allowing Schedule 1 disclosure only to authorized parties (e.g., Successor Servicer, Indenture Trustee for note holder rights, or bona fide creditors) and requiring security measures.

# EXHIBIT: G

# EXHIBIT: G

**Item 1122 of Regulation AB. Compliance with Applicable Servicing Criteria.**

Each of FNBO and U.S. Bank Trust Company, National Association (the "Trustee") (each, a "Servicing Participant"), has been identified by the registrant as a party participating in the servicing function during the reporting period with respect to more than 5% of the pool assets held by the Trust. Each of the Servicing Participants has completed a report on an assessment of compliance with the servicing criteria applicable to such Servicing Participant (each, a "Report on Assessment") during the Trust's fiscal year ending December 31, 2024, which Reports on Assessment are attached as exhibits to this Form 10-K. In addition, each of the Servicing Participants has provided an attestation report (each, an "Attestation Report") by a registered independent public accounting firm regarding its related Report on Assessment. Each Attestation Report is attached as an exhibit to this Form 10-K. Neither the Reports on Assessment nor the Attestation Reports have identified any material instances of noncompliance with the servicing criteria applicable to the Servicing Participants.

**Item 1123 of Regulation AB. Servicer Compliance Statement.**

FNBO has been identified by the registrant as a servicer during the reporting period with respect to the pool assets held by the Trust. FNBO has provided a Servicer Compliance Statement, signed by an authorized officer, and such Servicer Compliance Statement is attached as an exhibit to this Form 10-K.

7

Confirms FNBO's role as servicer and U.S. Bank Trust Company, National Association as Indenture Trustee and establishes FNBO's limited role, requiring Trust authorization for collections.

Lists Exhibits 4.14 and 4.17 providing the legal framework for securitization.

Exhibit 4.12    Series 2025-1 Indenture Supplement, dated as of February 19, 2025, between First National Master Note Trust and U.S. Bank Trust Company, National Association, as indenture trustee (incorporated by reference from registrants' Form 8-K filed on February 19, 2025, file no. 333-1396730)

Exhibit 4.13    Risk Retention Agreement, dated as of February 19, 2025, by and among First National Bank of Omaha, First National Funding LLC and First National Master Note Trust (incorporated by reference from registrants' Form 8-K filed on February 19, 2025, file no. 333-1396730)

Exhibit 4.14    Second Amended and Restated Transfer and Servicing Agreement, dated as of September 23, 2016, among First National Funding LLC, First National Bank of Omaha and First National Master Note Trust (incorporated by reference from registrants' Form 8-K filed on September 28, 2016, file no. 333- 209738)

Exhibit 4.15    Second Amended and Restated Trust Agreement of First National Master Note Trust, dated as of September 23, 2016, between First National Funding LLC and Wilmington Trust Company (incorporated by reference from registrants' Form 8-K filed on September 28, 2016, file no. 333-209738)

Exhibit 4.16    Second Amended and Restated Administration Agreement, dated as of September 23, 2016, between First National Master Note Trust and First National Bank of Omaha (incorporated by reference from registrants' Form 8-K filed on September 28, 2016, file no. 333- 209738)

Exhibit 4.17    Second Amended and Restated Receivables Purchase Agreement, dated as of September 23, 2016, between First National Bank of Omaha and First National Funding LLC (incorporated by reference from registrants' Form 8-K filed on September 28, 2016, file no. 333- 209738)

Exhibit 4.18    Asset Representations Review Agreement, dated as of September 23, 2016, among First National Bank of Omaha, First National Funding LLC, First National Master Note Trust and FTI Consulting, Inc. (incorporated by reference from registrants' Form 8-K filed on September 28, 2016, file no. 333- 209738)

Exhibit 31.1    Certification pursuant to Rule 13a-14(d)/ 15d–14(d) of the Securities Exchange Act of 1934 (Section 302 Certification).

Exhibit 33.1    Report on Assessment of Compliance with Servicing Criteria (pursuant to Item 1122 of Regulation AB) concerning servicing activities of FNBO for the year ended December 31, 2024.

Exhibit 33.2    Report on Assessment of Compliance with Servicing Criteria (pursuant to Item 1122 of Regulation AB) concerning servicing activities of the Trustee for the year ended December 31, 2024.

Exhibit 34.1    Independent Registered Public Accounting Firm Attestation Report concerning servicing activities of FNBO for the year ended December 31, 2024.

Exhibit 34.2    Independent Registered Public Accounting Firm Attestation Report concerning servicing activities of the Trustee for the year ended December 31, 2024.

Exhibit 35.1    Servicer Compliance Statement (pursuant to Item 1123 of Regulation AB) of FNBO for the year ended December 31, 2024.

2

# EXHIBIT: G



**DEPARTMENT OF VETERANS AFFAIRS**

# EXHIBIT: __H__

July 22, 2025

Kevin Preston White
5480 Lacebark Pine Ct
Cumming, GA 30040

Dear Kevin White:

This letter is a summary of benefits you currently receive from the Department of Veterans Affairs (VA). We are providing this letter to disabled Veterans to use in applying for benefits such as state or local property or vehicle tax relief, civil service preference, to obtain housing entitlements, free or reduced state park annual memberships, or any other program or entitlement in which verification of VA benefits is required. Please safeguard this important document. This letter is considered an official record of your VA entitlement.

Our records contain the following information:

## Personal Claim Information

Your VA claim number is: xxx-xx-7543

You are the Veteran.

## Military Information

Your most recent, verified periods of service (up to three) include:

| Branch of Service | Character of Service | Entered Active Duty | Released/Discharged |
|---|---|---|---|
| Army | Honorable | August 22, 1989 | August 25, 1992 |

(There may be additional periods of service not listed above.)

## VA Benefit Information

| | |
|---|---|
| **You have one or more service-connected disabilities:** | Yes |
| **Your combined service-connected evaluation is:** | 80% |
| **You are in receipt of special monthly compensation due to the type and severity of your service-connected disabilities:** | Yes |

You should contact your state or local office of Veterans' affairs for information on any tax, license, or fee-related benefits for which you may be eligible. State offices of Veterans' affairs are available at http://www.va.gov/statedva.htm.

## How You Can Contact Us

- If you need general information about benefits and eligibility, please visit us at https://www.va.gov.

- Call us at 1-800-827-1000.

- Contact us using Telecommunications Relay Services (TTY) at 711 24/7.

- Send electronic inquiries through the Internet at https://www.va.gov/contact-us.

Sincerely Yours,                    **EXHIBIT:** __H__

**Regional Office Director**



# EXHIBIT: __J__

Alyssa Daniels
c/o 5480 Lacebark Pine Court
Cumming, Georgia [30040]

**July 18, 2025**

Georgia State Bar
Office of the General Counsel
104 Marietta Street NW, Suite 100
Atlanta, GA 30303

**Re: Formal Complaint Against Douglas L. Brooks, P.C. – Violations of Ethical and Debt Collection Laws**

To the Georgia State Bar:

I submit this formal complaint against attorney **Douglas L. Brooks, P.C. Georgia State Bar# 084725** , and his law firm, for unethical conduct in connection with Magistrate Court Case No. 25MGC-3077, *First National Bank of Omaha v. Kevin White*. This complaint cross-references a parallel filing with the Georgia Attorney General, FDIC, CFPB, FTC, and SEC (addressed separately) and incorporates by reference the attached exhibits, including:

- FNBO's June 30, 2025, admission that the debt was charged off and assigned to BQ & Associates (attached as Exhibit A);

- Brooks' failure to respond to debt validation requests (CFPB Complaint No. 250621-21731781);

- The defective, unsworn "affidavit" of Jenifer Ross (lacking notary, personal knowledge, or authentication).

**Grounds for Disciplinary Action:**

1. **Deceptive Practices (Bar Rule 1.13; O.C.G.A. § 10-1-393):** Brooks filed a collection lawsuit asserting FNBO's ownership of a debt the creditor itself disclaimed. FNBO's letter confirms the debt was charged off and transferred to BQ & Associates, rendering Brooks' claims materially false under Georgia's Fair Business Practices Act.

2. **Failure to Cease Collection Efforts Post-Validation Request (FDCPA § 1692g(b); O.C.G.A. § 10-1-393):** Brooks ignored Plaintiff's May 1, 2025, validation request for 60+ days, violating the 30-day statutory deadline. This constitutes a per-se deceptive act under *Cox v. GC Services, LP*, 296 Ga. 419 (2015).

3. **False Evidence (Bar Rule 3.3; O.C.G.A. § 9-11-11):**The unsigned, unsworn "affidavit" of Jenifer Ross violates Georgia's requirement for sworn pleadings in assigned debt cases (UMCR Rule 4) and constitutes unethical submission of false evidence.

4. **Abuse of Process (Bar Rule 3.1):**Brooks knowingly prosecuted a claim lacking factual or legal basis, exacerbating emotional distress for Kevin White, an 80% disabled Army veteran.

**Remedy Requested:**

- Immediate investigation into Douglas L. Brooks' compliance with ethical rules;

- Referral to the Special Administrative Board for potential suspension or disbarment;

- Notification to FNBO and BQ & Associates of this complaint via copy.

Respectfully submitted,


/s/ *Alyssa Daniels*

Spouse with Equitable Interest / Case No. 25MGC-3077


*Attachments: Exhibits A–K (referenced in complaint)*

# EXHIBIT:  **K**

Alyssa Daniels & Kevin White
c/o 5480 Lacebark Pine Court
Cumming, Georgia [30040]

TO:

**Georgia Attorney General's Office**
Consumer Protection Division
40 Capitol Square SW
Atlanta, GA 30334

**Securities and Exchange Commission (SEC)**
Attn: Office of Credit Ratings
100 F Street NE
Washington, DC 20549

**U.S. Attorney's Office**
Northern District of Georgia
600 U.S. Courthouse
75 Spring Street SW
Atlanta, GA 30303-3309

**Federal Trade Commission (FTC)**
Attn: Bureau of Consumer Protection
600 Pennsylvania Ave NW
Washington, DC 20580

**Consumer Financial Protection Bureau**
(CFPB) Attn: Office of Enforcement
1700 G Street NW
Washington, DC 20552

**Federal Deposit Insurance Corporation (FDIC)**
Attn: Consumer Response Center
1919 Duke Street
Alexandria, VA 22314

**July 18, 2025**

**Re: Complaint Against First National Bank of Omaha, BQ & Associates, LLC –
Fraudulent Debt Collection, Securitization Violations**

**cc: Georgia State Bar, Douglas L. Brooks, P.C.**

To the Agencies:

We formally complain about FNBO, BQ & Associates, and their counsel Douglas L. Brooks,
Georgia State Bar# 084725 for unlawful debt collection, securitization fraud, and regulatory
violations tied to Magistrate Court Case No. 25MGC-3077. This complaint cross-references a
parallel filing with the Georgia State Bar and incorporates the following exhibits:

- FNBO's admission that the debt was sold and charged off (Exhibit E);
- SEC filings showing FNBO's transfer of receivables to the First National Master Note
  Trust (Exhibit G);
- The defective Jenifer Ross affidavit (See court case 25MGC-3077).

We also include the U.S. Attorney's Office for to refer evidence of potential federal violations tied to Magistrate Court Case No. 25MGC-3077 (*First National Bank of Omaha v. Kevin White*), including:

1. **Securities Fraud**: FNBO's securitization of the debt to the First National Master Note Trust (SEC CIK: 0001396730) while continuing to litigate ownership, potentially misleading investors and consumers.
2. **Mail Fraud**: Use of unsworn, defective affidavits (e.g., Jenifer Ross) to pursue collection in violation of Georgia's Uniform Magistrate Court Rule 4 and 28 U.S.C. § 1746.
3. **RICO Predicate Acts**: A pattern of deceptive practices under O.C.G.A. § 10-1-393 and 18 U.S.C. § 1962(c), including failure to respond to debt validation requests (CFPB Complaint No. 250621-21731781).

The conduct implicates systemic risks to consumers and investors, warranting federal scrutiny.

**Key Violations:**
1. **FNBO's Lack of Standing (UCC § 11-9-109; O.C.G.A. § 9-11-12(b)(6)):**
   FNBO divested ownership via a "true sale" to a securitization trust but continues to litigate as owner, violating Georgia's real-party-in-interest rule.

2. **Securities Fraud (SEC Rule 10b-5; TILA § 1601):**FNBO failed to disclose material terms of securitization, including third-party ownership, in its Cardmember Agreement. Trust filings (Exhibit G) confirm receivables were sold, yet FNBO falsely claims enforceable rights.

3. **FDCPA & FBPA Violations (15 U.S.C. § 1692e; O.C.G.A. § 10-1-393):**BQ & Associates and Brooks engaged in deceptive practices by litigating a debt without validation, ignoring Plaintiff's written requests, and misrepresenting ownership.

4. **Unfair Banking Practices (FDIC Part 325.4):**FNBO outsourced collection to unlicensed actors (BQ & Associates, Brooks) without oversight, violating fair lending and servicing standards.

We assert an **equitable interest in all proceeds derived from the securitization, assignment, or collection of the alleged debt** (Account No. 9937), including but not limited to:

- **Receivables** generated from payments made by Kevin White and Alyssa Daniels;
- **Trust distributions** or investor profits tied to the First National Master Note Trust (SEC CIK: 0001396730);
- **Collections** pursued by BQ & Associates or Douglas L. Brooks, P.C.

**Legal Basis for Equitable Claims**

1. **Unjust Enrichment (O.C.G.A. § 44-12-78):**FNBO and its affiliated trust have been unjustly enriched by:

   - o  Accepting payments from the household, including Alyssa Daniels' marital contributions, which were securitized into tradable financial instruments without disclosure or compensation to the debtors.
   - o  Profiting from the debt's assignment to third parties (e.g., BQ & Associates) while denying the debtors' right to verify ownership or seek offsets/recoupment.
2. **Constructive Trust (O.C.G.A. § 44-12-152):** The securitization of our payment streams into the First National Master Note Trust creates a constructive trust relationship. Under Georgia law, we are entitled to:
   - o  A full accounting of all proceeds derived from the debt;
   - o  Reimbursement for uncompensated investigative labor and emotional distress (see Joint Affidavit, Exhibit I);
   - o  Set-off or recoupment of any alleged debt against damages arising from the same transaction (O.C.G.A. § 13-7-2).
3. **Restatement (Third) of Trusts § 70:** As contributors to the trust's receivables, we are equitable stakeholders entitled to disclosure of beneficial ownership and trust governance. FNBO's failure to disclose material terms of securitization (e.g., assignment to the trust) violates fiduciary duties under trust law.

## Regulatory Implications

- **SEC Violations**: FNBO's securitization disclosures (Exhibit G) omit material facts about consumer rights to proceeds, violating Regulation AB (17 C.F.R. § 229.1100).
- **CFPB/FTC Concerns**: The failure to disclose equitable claims constitutes deceptive practices under the FTC Act (15 U.S.C. § 45) and TILA (15 U.S.C. § 1601).
- **FDIC Oversight**: FNBO's outsourcing of collection to unlicensed actors (BQ & Associates, Brooks) without equitable resolution mechanisms violates fair banking standards (12 C.F.R. § 337.1).

## Relief Requested

In addition to the remedies outlined above, we demand:

- Audit BQ & Associates' compliance with debt validation laws;
- Referral to the Georgia State Bar in regards to the conduct of attorney Douglas L. Brooks who regularly engages in debt collection per his website, archived here: https://web.archive.org/web/20250722174411/https://www.douglasbrookslaw.com/
- Enforce penalties under O.C.G.A. § 10-1-399(d) ($1,000 statutory damages per violation);
- An investigation into FNBO's securitization practices and failure to disclose equitable rights;
- Investigate FNBO's securitization practices and false claims of ownership;
- Referral to U.S. Attorney for Potential Federal Violations by First National Bank of Omaha, BQ & Associates, LLC, and Douglas L. Brooks, P.C.
- A directive requiring FNBO and its agents to:
   - o  Provide a full accounting of trust proceeds derived from the debt;
   - o  Cease collection until equitable claims are resolved;

      o   Compensate us for uncompensated labor, emotional distress, and marital harm (see Affidavits, Exhibits H–I).

Respectfully submitted,

/s/ *Alyssa Daniels*

Spouse with Equitable Interest / Case No. 25MGC-3077
Ph: 470-265-1340

/s/ *Kevin White*

Defendant in Case No. 25MGC-3077
Ph: 770-530-0368

*Attachments: Exhibits A–K (referenced in complaint)*

# EXHIBIT: __L__

MAGISTRATE COURT
FORSYTH COUNTY, GEORGIA
FILED IN THIS OFFICE
6/11/2025 3:37 PM
GREG MARTIN CHAMBLESS
CHIEF MAGISTRATE

## MAGISTRATE COURT OF ___FORSYTH___ COUNTY, GEORGIA

DATE FILED _____

**STATEMENT OF CLAIM**

CASE NO. _____ 25MGC-3077

FIRST NATIONAL BANK OF OMAHA

C/O DOUGLAS L. BROOKS, P.C.

P.O. BOX 8477, ATLANTA, GA 31106

Plaintiff's Name & Address

vs.

KEVIN WHITE

5480 LACEBARK PINE CT

CUMMING, GA 30040

Defendant's Name & Address

Defendant's Name & Address (If two Defendants)

[ ] Suit on Note    [✔] Suit on Account    [ ] Other: _____

1. The Court has jurisdiction over the defendant(s) [✔] the Defendant(s) is a resident of _____County;
[ ] other (please specify) _____

2. Plaintiff(s) claims the Defendant(s) is indebted to the Plaintiff(s) as follows (You must include a brief statement giving reasonable notice of the basis for each claim contained in the Statement of Claim):

PLEASE SEE ATTACHED SUIT

3. That said claim is in the amount of $ 10315.19 _____, principal $ _____ interest, plus _____ costs to date, and all future costs of this suit.

State of Georgia, _____ County:

DOUGLAS L. BROOKS _____ being duly sworn on oath says the foregoing is a just and true statement the amount owing by defendant(s) to plaintiff(s), exclusive of all set-offs and just grounds of defense.

Sworn and subscribed before me this _____ day of _____ 20 25

Notary Public/Attesting Official

DOUGLAS L. BROOKS #084725

Plaintiff(s) or Agent
(If Agent, Title or Capacity) ATTORNEY FOR PLAINTIFF

404-442-9101

Daytime Phone Number

### NOTICE AND SUMMONS

TO: All Defendant(s) You are hereby notified that the above named Plaintiff(s) has/have made a claim and is requesting judgment against you in the sum shown by the foregoing statement. YOU ARE REQUIRED TO FILE OR PRESENT AN ANSWER (answer forms can be obtained at https://georgiamagistratecouncil.com/forms or from the clerk's office) TO THIS CLAIM WITHIN 30 DAYS AFTER SERVICE OF THIS CLAIM UPON YOU. IF YOU DO NOT ANSWER, JUDGMENT BY DEFAULT WILL BE ENTERED AGAINST YOU. YOUR ANSWER MAY BE FILED IN WRITING OR MAY BE GIVEN ORALLY TO THE JUDGE OR CLERK. If you choose to file your answer orally, it MUST BE IN PERSON and within the 30 day period. NO TELEPHONE ANSWERS ARE PERMITTED. The court will hold a hearing on this claim at a time to be scheduled after your answer is filed. You may come to court with or without an attorney. If you have witnesses, books, receipts, or other writings bearing on this claim, you should bring them to court at the time of your hearing. If you want witnesses or documents subpoenaed, see a staff person in the Clerk's office for assistance. If you have a claim against the Plaintiff(s), you should notify the court by immediately filing an answer and counterclaim. If you admit to the Plaintiffs' claim but need additional time to pay, you must come to the hearing in person and tell the court your financial circumstances. Your answer must be RECEIVED by the clerk within 30 days of the date of service. If you are uncertain whether your answer will timely arrive by mail, file your answer in person at the clerk's office during normal business hours.

This _____ day of _____, 20 ___ 23 _____

# EXHIBIT: _L_

MAGISTRATE COURT OF FORSYTH COUNTY
STATE OF GEORGIA

| | | |
|---|---|---|
| FIRST NATIONAL BANK OF OMAHA | ) | CIVIL ACTION |
| Plaintiff, | ) | FILE NO. _____ |
| | ) | |
| v. | ) | |
| | ) | |
| KEVIN WHITE | ) | |
| Defendant. | ) | |

## SUIT ON ACCOUNT

COMES NOW Plaintiff and files this its Complaint and shows as follows:

1.    Defendant is subject to the jurisdiction of this Court and venue is proper in this Court.

2.    Defendant is indebted to Plaintiff on an account in the principal amount of $10315.19.

Demand has been made upon Defendant and Defendant has refused to make payment.

WHEREFORE, Plaintiff requests that this Court grant judgment in favor of Plaintiff and

against Defendant in the principal amount of $10315.19, pre-judgment interest of $0.00 post-

judgment interest at the rate permitted by law, and court costs.

This _____30_____ day _____May_____, 2025.

Post Office Box 8477
Atlanta, Georgia 31106
404.442.9101

868.2967

**DOUGLAS L. BROOKS, P.C.**

_____
Douglas L. Brooks
Georgia Bar No. 084725
Attorneys for Plaintiff

THE PURPOSE OF THIS LETTER IS TO COLLECT A DEBT AND ANY INFORMATION WILL BE USED FOR THAT PURPOSE.
UNLESS YOU, WITHIN 30 DAYS AFTER RECEIPT OF THIS NOTICE, DISPUTE THE VALIDITY OF THE DEBT OR ANY PORTION
THEREOF, THE DEBT WILL BE ASSUMED BY US TO BE VALID. IF YOU NOTIFY US WITHIN THE 30 DAY PERIOD THAT THE
DEBT, OR ANY PORTION THEREOF IS DISPUTED, WE WILL OBTAIN VERIFICATION OF THE DEBT OR A COPY OF A JUDGMENT
AGAINST YOU, AND A COPY OF SUCH VERIFICATION OR JUDGMENT WILL BE MAILED TO YOU BY OUR CLIENT. UPON
YOUR REQUEST WITHIN THE 30-DAY PERIOD, WE WILL PROVIDE YOU WITH THE NAME AND ADDRESS OF THE ORIGINAL
CREDITOR IF THE NAME IS DIFFERENT FROM THAT OF THE CURRENT CREDITOR.

# EXHIBIT: __L__

KEVIN WHITE
BBQ-29579

## <u>AFFIDAVIT OF PLAINTIFF</u>

COUNTY OF <u>Douglas</u>

STATE OF <u>Nebraska</u>

      Personally appeared before the undersigned attesting officer, duly authorized by law to administer oaths, <u>Jenifer Ross</u>, who after being duly sworn on oath, deposed and said as follows:

1.

      My name is <u>Jenifer Ross</u>. I am over the age of eighteen (18), suffer from no legal disability, and am otherwise competent to give the testimony contained in this Affidavit. The facts contained in this Affidavit are based upon my personal knowledge and I would testify to them if called upon to do so in a court of law.

2.

      I am the <u>Recovery Representative</u> of Plaintiff. I am also the custodian of records for Plaintiff. My testimony herein is based upon my review of the business records of Plaintiff, and this testimony can be substantiated by the business records of Plaintiff.

3.

      Plaintiff is the issuer of a credit card to Defendant. Defendant used the credit card issued by Plaintiff to make purchases. Attached hereto as Exhibit "A" is a true and correct copy of a statement for amounts Defendant owes to Plaintiff for use of the credit card account. Plaintiff extended credit to Defendant as shown on Exhibit "A."

4.



**Your MGM**
**Credit Card Statement**

# EXHIBIT: L

**KEVIN WHITE**
Account number ending in 9937
For billing cycle ending 03/26/2025

| New Balance | Minimum Payment | Payment Due |
|---|---|---|
| $10,315.19 | $2,369.10 | 04/24/2025 |

## Your Account Summary

| | |
|---|---|
| Previous Balance | $10,103.74 |
| Payments | $0.00 |
| Other Credits | $0.00 |
| Purchases | $0.00 |
| Balance Transfers | $0.00 |
| Cash Advances | $0.00 |
| Fees Charged | $40.00 |
| Interest Charged | $171.45 |
| New Balance | $10,315.19 |
| | |
| Statement Closing Date | 03/26/25 |
| Days in Billing Cycle | 29 |
| | |
| Total Credit Limit | $9,400.00 |
| Available Credit | $0.00 |
| Cash Limit | $1,900.00 |
| Available Cash | $0.00 |

## Your Payment Information

| | |
|---|---|
| New Balance | $10,315.19 |
| Minimum Payment Due | $2,369.10 |
| Past Due Amount | $2,056.62 |
| Payment Due Date | 04/24/2025 |

**Late Payment Warning:** If we do not receive your minimum payment by the date listed above, you may have to pay a late fee of up to $40.

**Minimum Payment Warning:** If you make only the minimum payment each period, you will pay more in interest and it will take you longer to pay off your balance. For Example:

| If you make no additional charges using this card and each month you pay... | You will pay off the balance shown on this statement in about... | And you will end up paying an estimated total of... |
|---|---|---|
| Only the minimum payment | 22 years | $28,678 |
| $390 | 3 years | $14,040 (Savings $14,638) |

If you would like information about credit counseling services, call 1-888-466-8322.

Issued by First National Bank of Omaha (FNBO®).



Please read entire statement for additional important information about your account.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -



| Account Number XXXX-XXXX-XXXX-9937 | | |
|---|---|---|
| New Balance | Minimum Payment | Payment Due |
| $10,315.19 | $2,369.10 | 04/24/2025 |

Amount Enclosed: $

Make checks payable to FNBO or pay online at cart.fnbo.com/mgmrewards.

KEVIN WHITE
5480 LACEBARK PINE CT
CUMMING GA 30040-3611

FNBO
P.O. Box 2557
Omaha, NE 68103-2557

☑ Change of Address? If yes, please complete the reverse side of the form.



9937   0000000236910   0000001031519

# CARDMEMBER AGREEMENT

FBC317-1705
C 22186

Thank you for becoming a cardmember. This document lists the terms that apply to your credit card account. When you make transactions with your account, we will lend you money by paying for these transactions and you agree to pay us back. We agree to the terms of this Agreement. When you use the account, this means you also agree to these terms.

## CONTENTS

1 Definitions of terms used in this Agreement.
2 Account use, duties, and limits.
3 Types of transactions.
4 Credit limit.
5 Balance Categories.
6 What you will see on your statement.
7 Making payments.
8 Interest rates (APRs) and how we calculate them.
9 Interest charges.
10 Other fees.
11 Foreign currency conversion.
12 Checks and other devices.
13 Immediate payment.
14 Closing or suspending your account.
15 Changes to your account terms.
16 How we will contact you about your account.
17 Arbitration and class action waiver.
18 Other terms.
19 Billing Rights.
20 Liability for unauthorized use.

## 1 Definitions of terms used in this Agreement.

| | |
|---|---|
| "Agreement" | This means this Cardmember Agreement and the Schedule. |
| "we," "us," and "our" | These mean First Bankcard (a division of First National Bank of Omaha). |
| "you" and "your" | These mean everyone listed on the application and anyone else you allow to use the account. These include anyone who is issued a card. |
| "APR" | This means annual percentage rate which is the interest rate. |
| "Schedule" | This means the Rates and Terms Schedule that accompanies this Cardmember Agreement. |
| "Balance Category" | This means a category where we keep track of your transactions and charges. There are four main types of Balance Categories. Please see the "Balance Categories" section. |
| "New Balance" | This means the total outstanding balance on your account. It will be listed on each statement as the "New Balance". |

**EXHIBIT: L**

## 2 Account use, duties, and limits.

- You may use your account to make purchases, balance transfers, and cash advances. You may also use your account to accept special offers or promotions that we may make available at times.
- When you use your account to make transactions, you agree that you intend to and can pay us back.
- You are responsible for all transactions and charges on the account including those made by anyone you allow to use it.
- You and we agree to promptly notify each other if it is suspected that your account is being used without your consent. If unauthorized use occurs, you and we agree to work with law enforcement.
- We may decline any transaction and we will not have any liability if we do.

## 3 Types of transactions.

| | |
|---|---|
| Purchases | You may make purchases of goods and services with your account. You may make such purchases up to the amount of your available credit limit. |
| Balance transfers | • You may ask to transfer balances you owe to other credit card companies. You may ask for such balance transfers up to the amount of your credit limit available for balance transfers.<br>• Balance transfers will be charged the balance transfer fee listed in the Schedule. This fee will be added to the Balance Category we select.<br>• You may not transfer balances from other accounts you have with us or our related companies.<br>• If you ask for a balance transfer and we do not approve the full amount, we may either pay only part of it or decline it.<br>• Please consider the following when asking for a balance transfer:<br>  (a). To protect your rights, you should not transfer any amount that you dispute.<br>  (b). Continue to make all payments due on the other accounts until you receive notice from them that they have been paid in full.<br>  (c). You are still responsible for your other accounts according to their terms.<br>  (d). There is no interest-free (grace) period for balance transfers.<br>• We may, at times, allow you to extend an outstanding Balance Transfer or Special Offer promotional period and APR on your account. Any extension will be treated as a balance transfer in the amount of the outstanding balance as of the last day of the original expiration date of the promotional period and APR. A balance transfer fee will be charged for each such extension. |
| Cash advances and cash equivalent transactions | You may ask for cash advances and cash equivalent transactions. You may ask for such transactions up to the amount of your credit limit available for cash advances. Cash equivalent transactions are those transactions that occur using a merchant or service provider that Visa® or Mastercard® identifies as a seller of travelers checks, foreign currency, money orders, wire transfers, lottery tickets, funds used for wagers or gambling, or similar products or services. Cash advances and cash equivalent transactions will (a) be charged the fee listed in the Schedule and will be added to the Cash Advance Balance Category; and (b) not have an interest-free (grace) period. |

## 4  Credit limit.

- We will establish an overall credit limit for your account. It will be listed in the documents given with this Agreement and on each statement.

- We may limit the amount of credit available for balance transfers and cash advances. We may also raise or lower your credit limit at any time. You agree to not let your account balance exceed your credit limit.

- If your account balance exceeds your credit limit, you agree to immediately pay the amount needed to reduce the balance to your credit limit.

- To protect you and us from fraud, risk, loss, or unauthorized charges, we may limit or delay the availability of credit on your account.

## 5  Balance Categories.

We group transactions into one of four main Balance Categories listed below.

**EXHIBIT: L**

| | |
|---|---|
| "Purchases" | These are from purchases of goods and services you make with your account. |
| "Balance Transfers" | These are from balance transfers you make with your account. Each balance transfer may be kept track of separately on your statement and may be treated as its own Balance Category. |
| "Cash Advances" | These are from cash advances and cash equivalent transactions you make with your account. |
| "Special Offers" | These are from your use of the account to take advantage of special, introductory, or promotional offers we make available to you at times. Each such transaction may be kept track of separately on your statement and may be treated as its own Balance Category. |

## 6  What you will see on your statement.

- We will send you a statement for each billing cycle where you have a balance on your account.

- Billing cycles are mainly monthly periods of time. Each billing cycle will have about the same number of days. Your first billing cycle may be shorter or longer than your other billing cycles.

- Each statement will show:
    (a) The statement closing date;
    (b) The number of days in that billing cycle;
    (c) New transactions, fees, and interest charges;
    (d) The total outstanding balance (listed as the "New Balance");
    (e) The minimum payment due; and
    (f) The payment due date.
Your payment due date for each statement will be the same day each month (for example, the 12th of every month).

- Please review each statement and notify us of any errors right away. If we do not receive timely notice from you of any possible errors, all statement information will be deemed accurate and your obligation to pay. Please see the "Billing Rights" section.

## 7  Making payments.

- You are responsible for paying back all the money we loan to you on the account. If this is a joint account, you are each responsible for the entire amount owed.

- You promise to pay all amounts due on your account including interest and fees.

- You may pay all or part of your account balance at any time. You must at least pay the minimum payment shown on each statement by its due date.

- The minimum payment listed on each statement will be calculated as listed in the Schedule.

- Payments must be made in U.S. dollars and through a U.S. bank. You agree to follow the payment requirements listed on each statement (for example, the time by when we need to receive payment and where your payment needs to be sent). If we accept a payment that is not in U.S. dollars or not through a U.S. bank, you agree to pay any extra fees or costs. We may accept payments that are marked "payment in full" or with similar markings without losing our right to receive payment in full. Partial payments offered in full satisfaction of a disputed amount must be sent to the address listed on your statement for notifying us of billing errors.

- Each payment you make will be generally applied to your account as follows: (a) the minimum payment amount will be applied to balances with the lowest APRs before balances with higher APRs; and (b) any amount you pay in excess of the minimum payment will be applied to balances with the highest APRs before balances with lower APRs. Until a payment clears you may not be able to access the full amount of your credit limit.

- We will promptly apply other credits to your account. For example, such credits may include a credit for return of merchandise. These other credits will be applied to the Balance Category we select.

## 13  Immediate payment.

- We may require you to immediately pay all balances on your account if:
  1. You do not make a minimum payment to us when due;
  2. You exceed your credit limit;
  3. You make a payment to us that is not honored;
  4. You die or become insolvent;
  5. You give us false or misleading information;
  6. A bankruptcy, insolvency, receivership, liquidation, or similar proceeding is filed by or against you;
  7. You are not paying or have announced that you will not pay your debts as they come due;
  8. You breach any note, loan agreement, or other obligation for borrowed money to which you are a party;
  9. A material adverse change occurs in your financial or other condition;
  10. You violate this Agreement or any other agreement you make with us; or
  11. We have reason to doubt your ability to repay us.

- We may still require immediate payment of all balances even if we accept a payment from you after one of the events listed above happens.

**EXHIBIT: ___L___**

## 14  Closing or suspending your account.

We may at any time and for any reason (a) terminate this Agreement; (b) close your account; or (c) suspend your ability to make new transactions on your account. If we do any of those things, each may be done without providing you notice before it happens. You must still fulfill all your duties under the Agreement (including payment of all balances on your account).

## 15  Changes to your account terms.

We may change the terms of your account and this Agreement if the law allows us. This may include changes to your APRs, fees, and all other terms. We will inform you of any changes and also give you an opportunity to reject them as required by law. If we make any changes, they will be effective even if you don't use the account after they are effective or you don't expressly accept them.

## 16  How we will contact you about your account.

| Phone and email contact | We may call or email you (using live operators, automatic dialing devices, or recorded messages) at home or work and those calls or emails will not be considered unsolicited. If you provide a cell phone number to us, either on the application or to a customer service representative, or if you place a cell phone call to us, you agree that we may contact you (including for collection purposes) at that cell phone number. We may monitor or record any calls we make or receive. If you provide us with an email address, either on the application or to a customer service representative, or if you send us an email, you agree that we may contact you (including for collection purposes) at that email address. |
|---|---|
| Changes to mailing address | You agree to notify us of any change in your mailing address at least ten days before it changes. |
| Credit bureaus and information from third parties | We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report. We may make inquiries of other persons in connection with maintaining and collecting on your account and you authorize such other persons to release information about you to us. |

8

## 17 Arbitration and class action waiver.

**IMPORTANT NOTICE REGARDING THE MILITARY LENDING ACT THAT ONLY APPLIES TO NEW ACCOUNTS OPENED AFTER OCTOBER 2, 2017.**
This section 17 will not apply to you if, at the time you open your account, any of the below apply (see 32 C.F.R. pt. 232):
(1) You are a member of the U.S. armed forces on active duty under a call or order not specifying a period of 30 days or less;
(2) You are an active Guard or Reserve; or
(3) You are a spouse or dependent of a person who qualifies under (1) or (2).

| | |
|---|---|
| **Definitions of terms for use in this section only.** | • "AAA" means the American Arbitration Association.<br>• "AAA Rules" means the relevant AAA arbitration rules and procedures in effect when the arbitration on the Claim is filed.<br>• "Administrator" means the entity that will conduct any arbitration.<br>• "Arbitrator" means the person(s) chosen by you and us to hear and decide any arbitration.<br>• "Claim" means any claim or dispute that any way relates to or affects:<br>  ○ Your account;<br>  ○ The Agreement;<br>  ○ The solicitation for your account; or<br>  ○ The actions or omissions of you, us, or Our Related Parties related to or affects your account or Agreement.<br>A Claim also includes, but is not limited to, any Claim (a) based on contract, tort (including intentional torts); (b) based on constitutional, statutory, regulatory, or common law rights; (c) made in law or in equity; (d) for damages or penalties; or (e) for injunctive, declaratory, or equitable relief.<br>• "Class Proceedings" means any court action or arbitration where a Claim is or Claims are brought:<br>  ○ By or on behalf of a class or group;<br>  ○ In a representative capacity or otherwise on a class basis; or<br>  ○ In the form of a private attorney general action.<br>• "FAA" means the Federal Arbitration Act; 9 U.S.C. §§ 1 through 16, as amended.<br>• "Our Related Parties" mean any of the following people:<br>  ○ Our affiliated third parties such as our parent, subsidiaries, and affiliates;<br>  ○ Our unaffiliated third parties that provide any products, services, marketing, or benefits in connection with your account; and<br>  ○ The officers, directors, agents, employees, and assigns of us, our affiliated third parties, and our unaffiliated third parties.<br>• "Ordinary Claim" means a Claim that meets (1) or (2) or both below.<br>(1) A Claim where all of the following are met:<br>  (a) The only remedy sought for the Claim is monetary damages;<br>  (b) The recovery sought for the Claim is less than $25,000 excluding interest and costs; and<br>  (c) The only parties to any action to resolve the Claim will be you, us and/or Our Related Parties.<br>(2) Any individual Claim filed in small claims court within its jurisdiction, as long as the Claim remains in that court.<br>• "Rules" means the relevant arbitration rules and procedures of the Administrator in effect when the arbitration on the Claim is filed.<br>• "your" or "you" mean you and Your Related Parties.<br>• "Your Related Parties" mean any of the following people:<br>  ○ Any co-applicant, joint cardmember, authorized user, or guarantor on your account;<br>  ○ Your heirs; and<br>  ○ Your trustee in bankruptcy. |
| **Notice of Claims.** | • Prior to filing a court action or arbitration against you on a Claim, we must give you written notice of that Claim. That notice must list the amount of the Claim. If our Claim is based on your failure to pay, sending you a statement fulfills the notice requirement.<br>• Prior to filing a court action or arbitration against us on a Claim, you must give us written notice of that Claim. That notice must list the amount of the Claim. |
| **Limits on Claims.** | • **CLASS ACTION WAIVER. You and we both agree, to the fullest extent allowed by law, to all of the following (the "Class Action Waiver"):**<br>  ○ Claims will not under any circumstances be pursued in Class Proceedings;<br>  ○ We waive the right to bring or to participate in Class Proceedings against you;<br>  ○ You waive the right to bring or to participate in Class Proceedings against us;<br>  ○ If some other person initiates a Class Proceeding against you, we may not and will not join that proceeding or participate as a member of that class; and<br>  ○ If some other person initiates a Class Proceeding against us, you may not and will not join that proceeding or participate as a member of that class. |
| **Arbitration Provision (this "provision").** | • **THIS AGREEMENT CONTAINS AN ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES. PLEASE READ THE FOLLOWING PARAGRAPHS CAREFULLY.**<br>• **WITH LIMITED EXCEPTIONS, THIS ARBITRATION PROVISION ALLOWS EITHER PARTY TO REQUIRE THAT ANY "CLAIM" BE RESOLVED BY BINDING ARBITRATION.**<br>• **ARBITRATION REPLACES THE RIGHT TO GO TO COURT AND TO HAVE A CLAIM DETERMINED BY A JURY. OTHER RIGHTS YOU MAY HAVE IN COURT, SUCH AS DISCOVERY OR APPEAL RIGHTS, MAY NOT BE AVAILABLE OR MAY BE MORE LIMITED IN ARBITRATION. EXCEPT AS PROVIDED BELOW, THOSE OTHER RIGHTS ARE WAIVED.**<br>• **YOU WILL NOT BE ABLE TO DO THESE TWO THINGS (IN COURT OR IN ARBITRATION): (1) BRING A CLAIM AS A CLASS ACTION OR IN A REPRESENTATIVE CAPACITY; OR (2) PARTICIPATE IN A CLAIM AS A CLASS MEMBER.**<br>• Except as otherwise provided in this provision, you and we agree to all of the following:<br>  ○ You may choose to have any Claim we bring against you be resolved through binding arbitration;<br>  ○ We may choose to have any Claim you bring against us be resolved through binding arbitration;<br>  ○ We may choose to have any Claim you bring against us and any of Our Related Parties be resolved through binding arbitration;<br>  ○ Our Related Parties may choose to have any Claim you bring only against them and not us be resolved through binding arbitration; and<br>  ○ If a court action is filed, the party that filed it may choose to have any counterclaim, cross-claim, or third party claim brought in that action be resolved through binding arbitration.<br>• If a party chooses to have a Claim be resolved by arbitration, neither you or we will have the right to do any of the following:<br>  ○ Litigate that Claim in court;<br>  ○ Have a jury trial on that Claim; or<br>  ○ Engage in pre-arbitration discovery, except as provided in the Rules or AAA Rules, as applicable.<br>• Ordinary Claims are not subject to this provision. Ordinary Claims may be resolved through court action.<br>• Arbitrations shall be conducted through an Administrator unless one is not available. The Administrator shall be a national arbitration organization with significant experience in financial and consumer disputes. If multiple exist, the Administrator will be the one you and we mutually agree upon. If none exist, the arbitration shall be conducted through an Arbitrator without an Administrator. |

**EXHIBIT:  L**

8

## 17  Arbitration and class action waiver (continued).

**Arbitration Provision (this "provision"). (continued)**

- The Arbitrator must be impartial and neutral. The Arbitrator must also be either a lawyer with at least ten years of experience or a retired judge.
- For arbitrations with an Administrator, all of the below will apply:
  - Arbitrations shall be conducted according to the Rules;
  - The Administrator will provide a listing of possible persons to hear and decide the arbitration; and
  - The person(s) you and we mutually agree upon from that listing will be the Arbitrator.
- For arbitrations without an Administrator, all of the below will apply:
  - Arbitrations shall be conducted according to the AAA Rules;
  - The Arbitrator shall take the place of AAA in the AAA Rules; and
  - The person(s) you and we mutually agree upon will be the Arbitrator.
- Arbitrations will be filed in accord with the Rules or AAA Rules, as applicable.
- You or we may choose to have an arbitration hearing. Any hearing will take place in the federal judicial district where you live when the arbitration is filed. You and we may also agree upon a different location.
- You and we may be represented by counsel in any arbitration.
- The Arbitrator shall have no authority to award punitive damages.
- The decision of the Arbitrator will be final and binding. Any final decision of the Arbitrator is subject to judicial review only as set forth by the Federal Arbitration Act. The Arbitrator shall issue a written decision. Judgment upon an award of the Arbitrator may be entered in any court with jurisdiction.
- Any dispute as to whether a claim or dispute is a Claim shall be resolved solely by the Arbitrator except:
  - As noted below for Class Proceedings; and
  - A court will decide whether a Claim is an Ordinary Claim.
- An arbitration pursuant to this provision may decide only your Claims, our Claims, or Claims of Our Related Parties. The Arbitrator shall have no authority to entertain or determine Class Proceedings. If the Arbitrator decides they have authority to entertain or determine any Claim brought in a Class Proceeding, that decision may be appealed to a court of competent jurisdiction. If, despite this Agreement, Class Proceedings are allowed, those proceedings shall be conducted only in a court of competent jurisdiction. The claims of other persons who may (or may not) have similar claims may not be consolidated with any Claim. No arbitration will be consolidated with any other arbitration proceeding without the consent of all parties. The only Claims that may be joined under this provision are (1) those brought by us and Our Related Parties against you and Your Related Parties; or (2) those brought by you and Your Related Parties against us and Our Related Parties.
- If you file a good faith individual arbitration under this provision, we will reimburse you the initial filing fee up to $350. All other fees will be divided in keeping with applicable law and either the Rules or AAA Rules, as applicable. We will also reimburse other fees if the Arbitrator determines there is good reason or we determine there is good cause to do so. Each party will bear the expense of the fees and costs of their own attorneys, experts, witnesses, documents, and other expenses, no matter who prevails.
- If the Rules or AAA Rules are inconsistent with this provision, this provision will prevail.
- If any portion of this provision is found to be not enforceable, that portion will be severed and the rest of this provision will remain in effect. However, if the Class Action Waiver is held to be invalid with respect to any Class Proceeding, the entire provision shall be null and void.
- The terms of this arbitration provision shall survive all of the below events:
  - The repayment of your account;
  - Changes to your account or Agreement (see the "Changes to your account terms section");
  - Our assignment of your account;
  - Issuance of replacement accounts or cards;
  - The closing of your account; and
  - The bankruptcy or similar action by you or us.
- This provision is made in connection with a transaction involving interstate commerce. It shall be governed by and enforceable under the FAA. The Arbitrator shall do all the following:
  - Apply applicable substantive law consistent with the FAA, National Bank Act and agency regulations;
  - Apply applicable statutes of limitations; and
  - Honor claims of privilege recognized at law.

**EXHIBIT: ___L___**

## 18  Other terms.

**Benefits and Rewards.**
Your account may have additional rewards or benefits we or a third party provide. If it does, they will be explained in separate documents which include rewards terms and conditions or benefits guides. Any benefits or rewards are subject to change or termination without notice. If there is a rewards membership fee, it will be listed in your separate rewards terms document and added to your account as a purchase. Third parties may provide or own the benefits or rewards on your account and we are not responsible for their actions.

**Assignment.**
You may not transfer your account or your rights or obligations under this Agreement. We may transfer all or part of your account balance and account along with our rights and obligations under this Agreement to another person or entity.

**Governing Law.**
The interpretation and enforcement of this Agreement and your account will be governed in accordance with federal law and, to the extent state law applies, Nebraska law, regardless of conflict of law principles.

**Notices.**
Any notice we mail to you (including on or with a statement) will be considered given when we put in the U.S. mail addressed to the address we have for you. Any notice we send to you in electronic form is considered given when we send it to you at the most recent electronic address we have for you.

**Waiver.**
If we do not exercise or we delay exercising any right under this Agreement, we can still exercise those rights later.

**Actions.**
We may take or not take certain actions that benefit you at times and which are not required by this Agreement or law. If we do, such actions (a) can be stopped at any time; and (b) will not add to our obligations to you under this Agreement and will not constitute a course of conduct.

**Entire Agreement.**
This Agreement replaces any prior communications between you and us.

**Severability.**
If any term of this Agreement is found to violate any applicable law, that term will be deemed changed to comply with such law. Any invalid or unenforceable term of this Agreement will not affect whether any other term is valid or enforceable.

**Headings.**
The section and paragraph headings and summaries are provided for convenience purposes only.

7

## 8  Interest rates (APRs) and how we calculate them.

| | |
|---|---|
| Where to find them. | The APRs (and their daily periodic rates) in effect on your account are listed in the Schedule. |
| How we calculate variable APRs. | Each variable APR is determined by adding the margin to the Index as listed in the Schedule. An increase in the Index will increase a variable APR (and its daily periodic rate). An increase in a variable APR may increase the minimum payment due and interest charged on your account. |
| How we calculate daily periodic rates. | To determine the daily periodic rate for an APR, we divide the APR by 365 (366 in leap years). |
| Penalty rates. | We will not charge penalty rates or penalty APRs on your account. For example, if you make a late payment, your APR will not increase because you paid late. |

## 9  Interest charges.

| | |
|---|---|
| Interest charges. | Interest will be charged on your account based on the APRs and outstanding balances for each Balance Category. However, interest will not be charged on any outstanding balance that is subject to an interest-free (grace) period. Interest will be calculated separately for each Balance Category and will begin to accrue on the transaction date unless subject to an interest-free (grace) period. |
| Interest-free (grace) period. | To avoid being charged interest on new purchases, you must pay your entire statement balance (including all special offer, promotional, and introductory balances) by the due date each month. You will not be charged interest for new purchases if you (a) pay your entire outstanding balance (the "New Balance") listed on your current statement in full by its due date; and (b) paid your entire outstanding balance (the "New Balance") listed on your previous statement in full by its due date (or your previous statement had a zero or credit balance). This interest-free (grace) period applies only to purchases and does not apply to balance transfers, cash advances, or special offers. |
| Balance calculations and interest charges. | To determine interest charges on your account and the balances subject to interest, we use a method called "Average Daily Balance (including new purchases)". This method calculates balances for each Balance Category as listed below.<br>A. We first calculate the outstanding ending balance for each day in a billing cycle for each Balance Category.<br>  1. Start with the beginning balance. (This is the ending balance of the previous day plus an amount equal to the previous day's ending balance multiplied by the daily periodic rate for that Balance Category.)<br>  2. Add new transactions and fees.<br>  3. Subtract payments, credits, or credit adjustments.<br>  4. Which equals the ending balance for that day.<br>B. We next calculate the average daily balance for each Balance Category. To do that, we add all your daily ending balances for each Balance Category for a billing cycle and then divide it by the number of days in the billing cycle.<br>C. We next multiply your average daily balance for each Balance Category by its daily periodic rate. After that, we multiply that result by the number of days in the billing cycle. This will be the interest charge for that Balance Category except for minor differences due to rounding. For purposes of these calculations, we treat credit balances as a zero balance. This Agreement results in the daily compounding of interest, finance charges, and fees. |
| How this information will appear on statements. | On your statement in the "Charge Summary" section, (a) the average daily balance for each Balance Category will be listed under the "Balance Subject to Interest Rate" column; and (b) the interest charges for each Balance Category will be listed under the "Interest Charge" column. All of the interest charges will be totaled on your statement and listed as the "Total Interest". |
| Minimum Interest Charge. | If your account is subject to interest charges in a billing cycle and those interest charges are less than the Minimum Interest Charge listed in the Schedule, you will be charged the Minimum Interest Charge. Under law, the Minimum Interest Charge is treated as a fee. If the Minimum Interest Charge is charged, all the below will apply:<br>(a) It will appear under the "Fees" section of your statement.<br>(b) We will add it to the Balance Category we select.<br>(c) You will not be charged other interest charges for that statement. |
| Active duty military members. | IMPORTANT NOTICE REGARDING THE MILITARY LENDING ACT THAT ONLY APPLIES TO NEW ACCOUNTS OPENED AFTER OCTOBER 2, 2017. The additional disclosures in this part below apply to you if, at the time you open your account, any of the below apply (see 32 C.F.R. pt. 232):<br>  (1) You are a member of the U.S. armed forces on active duty under a call or order not specifying a period of 30 days or less;<br>  (2) You are an active Guard or Reserve; or<br>  (3) You are a spouse or dependent of a person who qualifies under (1) or (2).<br>  Federal law provides important protections to members of the armed forces and their dependents relating to extensions of consumer credit. In general, the cost of consumer credit to a member of the armed forces and his or her dependent may not exceed an annual percentage rate of 36 percent. This rate must include, as applicable to the credit transaction or account: The costs associated with credit insurance premiums; fees for ancillary products sold in connection with the credit transaction; any application fee charged (other than certain application fees for specified credit transactions or accounts); and any participation fee charged (other than certain participation fees for a credit card account).<br>  You may contact us at 1-855-809-8524 to listen to these disclosures and information about payments. |

**EXHIBIT: L**

## 10 Other fees.

| | |
|---|---|
| Annual fee | If your account has an annual fee, it is listed in the Schedule. This fee will be added to your Purchases Balance Category once per year until your account is closed and paid in full. |
| Monthly fee | If your account has a monthly fee, it is listed in the Schedule. This fee will be added to your Purchases Balance Category every billing cycle until your account is closed and paid in full. |
| Foreign transaction fee | We may charge a foreign transaction fee on any transaction you make (a) in currencies other than U.S. dollars; (b) with any merchant located in a country or territory outside of the United States (it does not matter if the transaction is charged in foreign currency or in U.S. dollars); or (c) while you are located outside the United States. The amount of this fee is listed in the Schedule. This fee will be determined after the transaction is converted to U.S. dollars. |
| Late fee | We may charge a late fee for every minimum payment we do not receive by its due date. The maximum amount of the late fee is listed in the Schedule. The amount of this fee depends on your account balance and how many other times a payment was late in the last 6 billing cycles. |
| Returned payment fee (payment dishonored fee) | We may charge a returned payment fee for every payment which is not honored, is returned unpaid, or cannot be processed. The maximum amount of the returned payment fee is listed in the Schedule. The amount of this fee depends on your account balance and how many other times a payment has not been honored, has been returned unpaid, or was not able to be processed in the last 6 billing cycles. |
| Stop payment fee | We may charge a stop payment fee in the amount listed in the Schedule for any (a) payment you ask us to stop or cancel on your account; or (b) check or other device that we provided to you which you ask us to stop payment on. The amount of this fee is listed in the Schedule. |
| Copy fee | If you ask for a copy of any document related to your account, we may charge a fee for each copy. Documents would include sales drafts and statements. The amount of this fee is listed in the Schedule. |
| Custom card design fee | We may charge a card design fee for every custom card design that you request. We will tell you the amount of this fee at the time you ask for a custom card design. |
| Expedited card fee | We may charge a fee for the expedited delivery of cards. We will tell you the amount of this fee at the time you ask for expedited delivery of cards. |
| Expedited payment fee | We may charge a fee if you ask for an expedited payment that involves help from a customer service representative. We will tell you the amount of this fee at the time you ask for an expedited payment. |
| ATM surcharge | If you use an ATM with your account, the ATM operator may charge a fee or surcharge. This third party fee or surcharge will be charged to your account. |
| How the fees are applied | We add the fees listed in this section to the Balance Category we select (unless we tell you differently). |

**EXHIBIT: L**

## 11 Foreign currency conversion.

Transactions made in currencies other than U.S. dollars will be converted to U.S. dollars under the regulations of Visa®, Mastercard®, or the Visa®/Plus® ATM Network. Those regulations currently provide that the conversion rate may be either (1) a wholesale market rate; or (2) a government-mandated rate. Visa® and Mastercard® currently use the rate in effect on the date they process your transaction. The Visa®/Plus® ATM Network currently uses the rate in effect on the transaction date. The currency conversion rate in effect on the date your transaction is processed may differ from the rate in effect on the transaction date or the posting date.

## 12 Checks and other devices.

- We may send you checks or other devices to use with your account. You may not use these checks or other devices to make payments on this or any other account you have with us.

- Each check or device you use will be treated as a cash advance and charged the cash advance fee (unless we tell you otherwise).

- You may ask us to stop payment on any check or device you use. We must receive your request before the check or device is presented to us. Even if you ask us to stop payment, we may still not stop the payment. If you ask us to stop payment, we may charge a stop payment fee.

## 19   Billing Rights

We want to outline your billing rights if you have an item you want to dispute on any statement or if you are dissatisfied with any purchases made with your account:

**YOUR BILLING RIGHTS**
**KEEP THIS NOTICE FOR FUTURE USE**

This notice tells you about your rights and our responsibilities under the Fair Credit Billing Act.

**What To Do If You Find a Mistake on Your Statement:**

If you think there is an error on your statement, write to us at:

First National Bank of Omaha
P.O. Box 3696
Omaha, NE 68103-0696

**EXHIBIT:  L**

In your letter, give us the following information:
- **Account information:** Your name and account number.
- **Dollar amount:** The dollar amount of the suspected error.
- **Description of problem:** If you think there is an error on your bill, describe what you believe is wrong and why you believe it is a mistake.

You must contact us:
- Within 60 days after we send you the first statement on which the error or problem appeared.
- At least 3 business days before an automated payment is scheduled, if you want to stop payment on the amount you think is wrong.

You must notify us of any potential errors in writing. You may call us, but if you do we are not required to investigate any potential errors and you may have to pay the amount in question.

**What Will Happen After We Receive Your Letter**

When we receive your letter, we must do two things:
1. Within 30 days of receiving your letter, we must tell you that we received your letter. We will also tell you if we have already corrected the error.
2. Within 90 days of receiving your letter, we must either correct the error or explain to you why we believe the bill is correct.

While we investigate whether or not there has been an error:
- We cannot try to collect the amount in question, or report you as delinquent on that amount.
- The charge in question may remain on your statement, and we may continue to charge you interest on that amount.
- While you do not have to pay the amount in question, you are responsible for the remainder of your balance.
- We can apply any unpaid amount against your credit limit.

After we finish our investigation, one of two things will happen:
- If we made a mistake: You will not have to pay the amount in question or any interest or other fees related to that amount.
- If we do not believe there was a mistake: You will have to pay the amount in question, along with applicable interest and fees. We will send you a statement of the amount you owe and the date payment is due. We may then report you as delinquent if you do not pay the amount we think you owe.
  If you receive our explanation but still believe your bill is wrong, you must write to us within 10 days telling us that you still refuse to pay. If you do so, we cannot report you as delinquent without also reporting that you are questioning your bill. We must tell you the name of anyone to whom we reported you as delinquent, and we must let those organizations know when the matter has been settled between us.

If we do not follow all of the rules above, you do not have to pay the first $50 of the amount you question even if your bill is correct.

**Your Rights If You Are Dissatisfied With Your Credit Card Purchases**

If you are dissatisfied with the goods or services that you have purchased with your credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the purchase.

To use this right, all of the following must be true:
1. The purchase must have been made in your home state or within 100 miles of your current mailing address, and the purchase price must have been more than $50.
   (Note: Neither of these are necessary if your purchase was based on an advertisement we mailed to you, or if we own the company that sold you the goods or services.)
2. You must have used your credit card for the purchase. Purchases made with cash advances from an ATM or with a check that accesses your credit card account do not qualify.
3. You must not yet have fully paid for the purchase.

If all of the criteria above are met and you are still dissatisfied with the purchase, contact us in writing at:

First National Bank of Omaha
P.O. Box 3696
Omaha, NE 68103-0696

While we investigate, the same rules apply to the disputed amount as discussed above. After we finish our investigation, we will tell you our decision. At that point, if we think you owe an amount and you do not pay, we may report you as delinquent.

## 20   Liability for unauthorized use.

If you notice the loss or theft of your credit card or a possible unauthorized use of your card, you should write to us immediately at
P.O. Box 3696
Omaha, NE 68103-0696

or call us at 1-800-688-7070. You will not be liable for any unauthorized use that occurs after you notify us. You may, however, be liable for unauthorized use that occurs before your notice to us. In any case, your liability will not exceed $50.

## IN THE MAGISTRATE COURT OF FORSYTH COUNTY
## STATE OF GEORGIA

**FIRST NATIONAL BANK OF OMAHA,**
Plaintiff,

v.                                          **Civil Action File No. 25MGC-3077**

**KEVIN WHITE,**
Defendant.

## CERTIFICATE OF SERVICE

I, Kevin White, Defendant, and Alyssa Daniels, Spouse with Equitable Interest, hereby certify that on this **24th day of July, 2025,** I have served a true and correct copy of the following documents in the above-captioned matter upon Douglas L. Brooks, P.C., Attorney for Plaintiff, at P.O. Box 8477, Atlanta, GA 31106, via United States Postal Service, Certified Mail, Return Receipt Requested and/or via email, fax, or electronic service via eFile:

- Defendant's Verified Answer, Affirmative Defenses, and Counterclaims

- Defendant's Motion to Dismiss and Counterclaim

- Memorandum of Law in Support of Motion to Dismiss and Mandatory Judicial Notice

- Affidavit of Kevin White

- Affidavit of Alyssa Daniels

- Affidavit (Joint)

- Power of Attorney and Declaration of Equitable Rights – Kevin White / Alyssa Daniels

- Exhibits A through L

This service complies with the requirements of the Georgia Civil Practice Act and Uniform Magistrate Court Rules.

Respectfully submitted,

_Kevin White_

**Kevin White**